UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 19-835 JGB (SPx)** | Date | December 6, 2019 |
| Title | *Justin Lytle, et al. v. Nutramax Laboratories, Inc., et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:   Order (1) DENYING Defendants' Motion to Dismiss (Dkt. No. 56); and (2) VACATING the December 9, 2019 Hearing (IN CHAMBERS)**

Before the Court is a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. ("Motion," Dkt. No. 56.)  The Court determines this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15.  After considering all papers filed in support of and in opposition to the Motion, the Court DENIES Defendants' Motion.  The December 9, 2019 hearing is vacated.

## I.   BACKGROUND

On May 3, 2019, Plaintiffs Justin Lytle and Christine Musthaler filed a complaint against Defendants.  ("Complaint," Dkt. No. 1.)  Plaintiffs amended their Complaint as of right, filing a First Amended Complaint on June 26, 2019.  ("FAC," Dkt. No. 40.)  Defendants moved to Dismiss the FAC on August 2, 2019.  ("FAC Motion," Dkt. No. 44.)  The Court granted-in-part and denied-in-part the FAC Motion.  ("FAC Order," Dkt. No. 52.)  Plaintiffs filed their Second Amended Complaint on October 11, 2019.  ("SAC," Dkt. No. 53.)  The SAC alleges two causes of action: (1) Violations of Cal. Civil Code § 1750 ("CLRA") and (2) Violations of Various State Consumer Protection Laws.  (See SAC.)

On November 1, 2019, Defendants filed the Motion along with a Request for Judicial Notice.[1] (Motion; "RJN," Dkt. No. 57.) Plaintiffs opposed the Motion on November 15, 2019. ("Opposition," Dkt. No. 58.) They also filed a notice of non-opposition to the RJN. (Dkt. No. 59.) Defendants filed their Reply on November 22, 2019. ("Reply," Dkt. No. 60.)

## II.     FACTUAL ALLEGATONS

All relevant factual allegations are identical to those outlined in the FAC Order. (See FAC Order at 2.) The Court will not repeat them here.

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Horosny v. Burlington Coat Factory, Inc., No. 15–05005, 2015 WL 12532178, at *3 (C.D. Cal. Oct. 26, 2015). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true

---

[1] The Court admonishes Defendants to follow the Local Rules regarding page numbering when submitting exhibits. See L.R. 11-5.2, 11-5.3. The Court requires consistent numbering to ensure accuracy in citations. Reliance on the documents' original numbering creates confusion.

must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

## IV. JUDCIAL NOTICE

Defendants request judicial notice of four studies described in the SAC:

A. M. Moreau et al., *Clinical evaluation of a nutraceutical, carprofen and meloxicam for the treatment of dogs with osteoarthritis*, 152 VETERINARY REC. 323 (2003);

B. Ruth M. Scott et al., *Efficacy of an oral nutraceutical for the treatment of canine osteoarthritis*, 30 VET COMP ORTHOP TRAUMATOL 318 (2017);

C. G. McCarthy et al., *Randomised double-blind, positive-controlled trial to assess the efficacy of Gl/Ch for the treatment of dogs with osteoarthritis*, 174 VET. J. 54 (2007);

D. R. C. Gupta, et al., *Comparative therapeutic efficacy and safety of type-II collagen (uc-II), glucosamine and chondroitin in arthritic dogs: pain evaluation by ground force plate*, 96 J. ANIM. PHYSIOL. & ANIM. NUTR. 770 (2012).

Plaintiffs do not oppose Defendants' RJN.

In a motion to dismiss under Rule 12(b)(6), a court may consider "documents incorporated by reference or matters of judicial notice" without converting the motion into a motion for summary judgment. U.S. v. Ritchie, 342 F.3d 903, 907–08 (9th Cir. 2003). A court may take judicial notice of an adjudicative fact not subject to "reasonable dispute," either because it is "generally known within the territorial jurisdiction of the trial court," or it is capable of accurate and ready determination by resort to sources whose "accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Under Federal Rule of Evidence 201, "[a] court must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

Incorporation-by-reference is a judicially created doctrine that allows a court to take judicial notice of documents that "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." Parrino v. FHP, Inc., 146 F.3d 699, 705 (9th Cir. 1998). "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018). Incorporation-by-reference is appropriate here. Not only does the SAC liberally quote from and describe the scientific articles, but Plaintiffs rely upon two of the articles to allege their claims. Accordingly, the Court takes judicial notice of Exhibits A to D of Defendants' RJN. See Otto v. Abbott Labs., Inc., 2013 WL 12132064, *3 n.4 (C.D. Cal. Mar.15, 2013).

## V.   DISCUSSION

Rule 12(g)(2) provides that "a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."[2] Every single argument made in the Motion was available to Defendants when they filed their first 12(b)(6) motion in August. (Compare FAC with SAC.) Each of the allegations they attack now as insufficient were present in the FAC, which they already moved to dismiss. Accordingly, denial of the Motion in its entirety is proper pursuant to Rule 12(g)(2). That the Plaintiffs filed an amended complaint does not give Defendants an opportunity to argue what they could have, but did not, before. See Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1388 (3d ed.) ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading.") Accordingly, the Court concludes that Defendants have waived the right to present in a Rule 12(b) motion the each of the arguments they assert now.

The Court in its discretion, however, may consider arguments waived under Rule 12(g). See In re Apple iPhone Antitrust Litigation, 2013 WL 4425720, at *13 (N.D. Cal. Aug. 15, 2013) ("Even if a party files successive motions, a court has discretion to consider the arguments to expedite final disposition on particular issues."). But the Court has already considered and rejected several of the arguments asserted by Defendants. (See generally FAC Order.) When the Court grants a plaintiff the opportunity to amend its complaint, it does not gift defendant the opportunity to relitigate issues that have already been decided. By reasserting these arguments, Defendants waste time and demonstrate a lack of respect for this Court's orders, the Plaintiffs, and the rules and standards of federal litigation. The Court declines to readdress issues decided in the FAC Order, including Rule 9(b), standing for non-purchased products, and the applicability of osteoarthritis studies to Plaintiffs' claims. The Court directs Defendants to that order as its reasoning has not changed.

Defendants make three arguments that were not addressed in the FAC Order. First, Defendants now submit the scientific studies Plaintiffs cite in the SAC and argue the actual text of those studies reveals that Plaintiffs' allegations misrepresent the studies. Second, Defendants argue that binding Ninth Circuit precedent warrants dismissal of Plaintiffs' scientific support claims. And third, Defendants argue that Plaintiffs cannot adequately represent a nationwide class.

---

[2] Under Rule 12(h)(2), Defendants can later assert failure-to-state-a-claim arguments in in "(A) any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Fed. R. Civ. Pro. 12(h); see also In re Apple iPhone Antitrust Litig., 846 F.3d 313, 318 (9th Cir. 2017) ("If a failure-to-state-a-claim defense under Rule 12(b)(6) was not asserted in the first motion to dismiss under Rule 12, Rule 12(h)(2) tells us that it can be raised, but only in a pleading under Rule 7, in a post-answer motion under Rule 12(c), or at trial.")

### A. Review of the Scientific Studies

Plaintiffs allege that Defendants make representations regarding the joint health benefits of the Cosequin ("Joint Health Representations").[3] They further allege that two studies—Scott and Moreau—looked at Cosequin and the active ingredients in Cosequin and concluded that dogs given the products showed no improvement in daily activity counts or objective gate analysis. (SAC ¶¶ 92, 96.) The Court previously concluded that as described in the FAC, the Scott and Moreau study contradict Defendants' alleged Joint Health Representations and therefore the FAC sufficiently alleged falsity. (See FAC Order at 6–8.) Defendants now argue that Plaintiffs "misconstrued" and "cherry picked" the studies cited in the SAC (and FAC) and that a review of the studies in their entirety demonstrates they are not applicable to Defendants' Joint Health Representations.[4] (Motion at 1, 6–10.)

Because this is a Rule 12(b)(6) Motion—and not a Motion for Summary Judgment, a Daubert Motion, or a trial—the Court must draw all inferences in favor of Plaintiffs and accept as true all allegations.[5] See In re Tracht Gut, LLC, 836 F.3d 1146, 1150 (9th Cir. 2016) ("At the motion to dismiss phase, the trial court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff.") In other words, it is appropriate for the Court to "believe" Plaintiffs' allegations unless judicially noticeable evidence proves those allegations to be misrepresentations or the reasonable inferences to be unreasonable. Moreover, the Ninth Circuit cautions that "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1003 (9th Cir. 2018); see also Jones v. Micron Tech.

---

[3] For example: (1) "Maintains cartilage structure and inhibits the enzymes that break down cartilage;" (2) "Keep 'em moving with Cosequin joint health supplements;" (3) "Improving mobility and comfort for over 15 years;" (4) "Supports mobility;" (5) "Use Cosequin to help you pet climb stairs, rise, and jump!" (6) "Use Cosequin to help their joints [sic] mobility!" (7) "Used to improve mobility and comfort in pets;" (8) "It's a glucosamine/chondroitin supplement that really helps maintain health joints." (SAC ¶¶ 32, 37 50, 53, 59, 63.)

[4] Defendants had the opportunity to submit these articles with their FAC Motion. They failed to do so. Doing so now wastes both the Court's and Plaintiffs' time and resources.

[5] For this reason, this Court's decision, cited by Defendants, determining whether plaintiff had established an issue of fact regarding falsity at summary judgment is inapplicable. See Reed v. NBTY, Inc., 2014 WL 12284044, at *6 (C.D. Cal. Nov. 18, 2014) (holding inconclusive evidence was insufficient to create a triable issue with regards to falsity at summary judgement). That case is also irrelevant because Plaintiffs have not alleged any studies confirming the benefits of Cosequin, so there is no issue of inconclusive results. Cf. Route v. Mead Johnson Nutrition Co., 2013 WL 658251, at *4 (C.D. Cal. Feb. 21, 2013) (holding that plaintiff failed to allege falsity where the only fact supporting falsity was the product's monograph, which included both studies confirming the products benefits and studies determining the product did not provide the represented benefits).

Inc., 400 F. Supp. 3d 897, 905–06 (N.D. Cal. 2019) ("While the Court is mindful that the incorporation by reference doctrine exists to 'prevent artful pleading by plaintiffs,' the Court must also be mindful of its duty to draw all reasonable inferences in favor of the pleadings.")

The parties quibble over the correct interpretation of Scott and Moreau: the SAC advances one interpretation, and the Motion advances another. (Compare SAC ¶¶ 92, 96 with Motion at 6–10.) To overcome the evidentiary presumptions the Court must make in favor of Plaintiffs, Defendants must do more than suggest another reasonable—or even a better—interpretation of the studies. They must demonstrate that the interpretation advanced in the SAC is inaccurate or unreasonable. They fail to meet that burden.

After a review of the full text of the articles, the Court concludes Plaintiffs' SAC does not misrepresent the Scott or Moreau studies. Plaintiffs allege that in the Scott study, "[n]o difference was found between [the group that received the supplement and the placebo group] when evaluating daily activity counts," which finds support in the text. (Compare SAC ¶ 96 with RJN, Exhibit B at 320–321.) More critically, Plaintiffs accurately quote the conclusion of the study. (Compare RJN, Exhibit B at 318 with SAC ¶ 96.) Plaintiffs allege that the Moreau study concluded that "[t]he dogs treated with CS-G-M [Cosequin DS] showed no significant response in terms of the objective gait analysis or either of the subjective assessments during the study." (SAC ¶ 92.) And again, this is an accurate, verbatim quote from the study and finds textual support therein. (Compare RJN, Exhibit A at 326 with SAC ¶ 92.) Defendants raise arguments regarding the reliability, methodology, and appropriate extrapolation of the study—but these are not the type of questions the Court resolves at the pleading stage. They are issues to be addressed later, with the benefit of fact and expert discovery. Therefore, allegations in the SAC do not misrepresent the studies, and, as the Court has already concluded, they adequately support Plaintiffs' claim that the Joint Health Representations are false.

**B. Applicability of Kwan to the Scientific Support Representations**

Plaintiffs allege that Defendants make several specific claims regarding the level of scientific support for Cosequin products, including that they are "shown to be safe, effective, and absorbable in peer-reviewed, published, controlled U.S. veterinary studies" ("Scientific Support Representations"). (SAC ¶ 43.) They further allege that these Scientific Support Representations are false because Cosequin's benefits "are not substantiated by any randomized, controlled, peer-reviewed, published studies." (Id. ¶ 6.) The Court previously concluded that these allegations sufficiently alleged falsity. (FAC Order at 6.) Defendants now argue that the Court's previous decision was erroneous and that, under Kwan, Plaintiffs' claims must be dismissed for failure to state a claim. (Motion at 17–18 (citing Kwan v. SanMedica Int'l, 854 F.3d 1088, 1095 (9th Cir. 2017)).) After a second consideration of Kwan, the Court again concludes that Plaintiffs have adequately alleged that the Scientific Support Representations are false and thereby actionable under the California consumer protection law.

First, there is a marked difference between the statement at issue in Kwan—"clinically tested"—and the representations at issue here. See id. at 1096. "Clinically tested" is nebulous

and broad, akin to "doctor recommended."  It makes no promises about the rigor of the scientific testing or even of positive findings.  Conversely, Plaintiffs allege that Defendants represented that "peer-reviewed, published, [and] controlled" studies support the efficacy of their products. (SAC ¶ 43.)  "Peer-reviewed," "published," and "controlled," are specific scientific descriptors that have a precise and widely accepted meanings in both the scientific community and the general population.  Merriam-Webster tells us that a "controlled" experiment is "an experiment in which all the variable factors in an experimental group and a comparison control group are kept the same except for one variable factor in the experimental group that is changed or altered," that "peer-review" is "a process by which something proposed (as for research or publication) is evaluated by a group of experts in the appropriate field," and that "published," means "produced or released for distribution in a book, magazine, newspaper, etc."[6]  Unlike "clinically tested," these terms, therefore, cannot truthfully be applied to just any study.  By using these specific, defined terms, the Scientific Support Representations make explicit promises about the rigor and caliber of the scientific studies finding that the Cosequin products are "safe, effective, and absorbable."  And if no such studies exist, these representations are provably false.

Second, the plaintiff in Kwan pointed to no explicit false representations.  Instead, she "acknowledge[d] that testing ha[d] been performed, but dispute[d] the adequacy of that testing." Kwan v. SanMedica Int'l, LLC, 2015 WL 848868, at *7 (N.D. Cal. Feb. 25, 2015).  She therefore argued that a true representation made by defendant implied a level of scientific substantiation. The District Court concluded that allowing a plaintiff to proceed on this theory would allow plaintiffs to subvert the limit on lack of substantiation claims by "tethering the [true] claims to an advertiser's particular substantiation."  Id.  That is not the case here, where Plaintiffs need not insist that true statements imply a level of substantiation because Defendants make explicit and specific claims about the rigor of support for their products.  And just like any other explicit statement made about a product, if a representation regarding the level of scientific support for a product is provably false, it is actionable.

Third, the argument made by the plaintiff in Kwan was "simply an assertion that Defendant's substantiation [wa]s inadequate."  Kwan, 2015 WL 848868 at *7.  Conversely, Plaintiffs do not argue that Defendants lack substantiation for their products.  Instead, they allege that the specific kind of robust scientific support that Defendants represent exists does not in fact exist.  (SAC ¶¶ 71–72, 100–102, 107.)  If that allegation proves to be true, Defendants statements are false—regardless of what other types of scientific support for the products exist.  California courts have held that "both private persons and prosecuting authorities may sue to enjoin false advertising and obtain restitution," but only "prosecuting authorities . . . have the administrative power to request advertisers to substantiate advertising claims before bringing actions for false advertisement."  See Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc., 107 Cal.

---

[6] Black's Law Dictionary tells us that a "peer-reviewed journal" is "[a] publication whose practice is to forward submitted articles to disinterested experts who screen them for scholarly or scientific reliability so that articles actually published have already withstood expert scrutiny and comment."

App. 4th 1336, 1344 (2003). Individual plaintiffs, therefore, cannot demand that a defendant substantiate their claims—they must be able to carry the burden of proof without such a request. Id. And Plaintiffs here can carry their burden by establishing that no "peer-reviewed, published, controlled" studies support the efficacy of Defendants' products, including on the "complete list" of research citations on Defendants' website. (See SAC ¶ 103.) They need not force Defendants to substantiate their claims. In fact, whether Defendants can substantiate their claims may be irrelevant if the rigorous scientific support they claim exists in fact does not. Accordingly, Plaintiffs' claim is not simply a lack of substantiation claim, but a claim that the Defendants' explicit statements regarding the scientific support for their Cosequin products are false. Therefore, the Court again concludes that Plaintiffs have adequately alleged the falsity of the Scientific Support Representations.

### C. Plaintiffs' Ability to Represent Nationwide Class

Defendants argue that Plaintiffs cannot represent a national class—first because they lack standing to do so and second because the Court lacks personal jurisdiction over the claims of non-California putative class members. Because a class has not yet been certified, the claims of putative class members are not yet before the Court. Accordingly, the Court has discretion to address these issues at class certification rather than on the pleadings. See Sotomayor v. Bank of Am., N.A., 377 F. Supp. 3d 1034, 1038 (C.D. Cal. 2019) (holding that determination of personal jurisdiction over claims of putative class members not required at the pleading stage); In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig., 295 F. Supp. 3d 927, 956 (N.D. Cal. 2018) ("District courts retain discretion to address standing before or after class certification in the 'sister state' law scenario.") The Court, therefore, choses to address these issues at that time.

## VI. CONCLUSION

For the reasons above, the Court DENIES Defendants' Motion. The December 9, 2019 hearing is VACATED.

**IT IS SO ORDERED.**