Gregory F. Coleman (*pro hac vice*)
gcoleman@milberg.com
Adam A. Edwards (*pro hac vice*)
aedwards@milberg.com
MILBERG COLEMAN BRYSON
 PHILLIPS GROSSMAN, PLLC
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

Daniel L. Warshaw
dwarshaw@pswlaw.com
PEARSON WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (310) 595-9662
Facsimile: (310) 595-9501

[Additional Counsel Listed
on Signature Page]

*Attorneys for Plaintiffs
and the Certified Class*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN LYTLE and CHRISTINE MUSTHALER,<br><br>Plaintiffs,<br><br>v.<br><br>NUTRAMAX LABORATORIES, INC. and NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC.,<br><br>Defendants. | Case No. 5:19-CV-00835-FMO-SP<br><br>Assigned to: Hon. Fernando M. Olguin<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT** |

1

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:19-CV-00835-FMO-SP

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on October 2, 2025, at 10:00 a.m. PT, or as soon thereafter that the matter may be heard, in the Courtroom of the Honorable Fernando M. Olguin, of the United States District Court for the Central District of California, located in Courtroom 6D on the 6th Floor, 350 W. 1st Street, Los Angeles, CA 90012, Plaintiffs Justin Lytle and Christine Musthaler ("Plaintiffs") will and hereby do move, pursuant to Federal Rule of Civil Procedure 23, this Court for an Order (1) preliminarily approving the Proposed Settlement settling their claims, both on behalf of themselves and on behalf of a Settlement Class of similarly situated individuals; (2) directing notice to the Settlement Class; and (3) scheduling a final approval hearing. As discussed more fully in the attached Memorandum of Points and Authorities, following the Court's certification of Plaintiffs' claims, ECF No. 146, the Parties have negotiated a Settlement that provides substantial compensation to consumers who purchased Cosequin® canine joint health supplements (the "Cosequin® Products") developed, manufactured, and sold by Defendants Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. (collectively, "Nutramax"). Plaintiffs have alleged in their Complaint that the Cosequin® Products make incomplete, inaccurate, and misleading claims, allegations that Nutramax have and continue to deny. The Proposed Settlement will provide meaningful relief to Class Members for the purchase of these Cosequin® Products. The proposed notice program, which was negotiated and agreed to by the Parties, includes social media notice, and thereby provides the best notice practicable under the circumstances, as required by Federal Rule of Civil Procedure 23. Thus, in this Motion, which is unopposed by Nutramax, Plaintiffs respectfully request that the Court grant preliminary approval of the Proposed Settlement, direct notice to the proposed Settlement Class, and schedule a final approval hearing.

Dated: July 28, 2025

/s/ Adam A. Edwards
Gregory F. Coleman (pro hac vice)
gcoleman@milberg.com

2

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:19-CV-00835-FMO-SP

Adam A. Edwards (*pro hac vice*)
aedwards@milberg.com
**MILBERG COLEMAN BRYSON
    PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

Daniel K. Bryson (*pro hac vice*)
dbryson@milberg.com
**MILBERG COLEMAN BRYSON
    PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035

Matthew D. Schultz (*pro hac vice*)
mschultz@levinlaw.com
**LEVIN PAPANTONIO**
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Telephone: (850) 435-7140
Facsimile: (850) 436-6140

Daniel L. Warshaw
dwarshaw@pswlaw.com
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (310) 595-9662
Facsimile: (310) 595-9501

*Attorneys for Plaintiffs
and the Certified Class*

3

# **TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ..................................... 1

I.      FACTUAL AND PROCEDURAL BACKGROUND.......................................... 1

        A.      Factual Background ........................................................................... 1

        B.      Procedural History ............................................................................ 2

II.     THE PROPOSED SETTLEMENT ................................................................... 3

        A.      The Class ............................................................................................ 3

        B.      Benefits to the Class Members ........................................................ 4

        C.      Release by Class Members .............................................................. 5

        D.      Settlement Administration ............................................................... 5

        E.      Class Notice ....................................................................................... 5

        F.      Opt-Outs and Objections.................................................................. 7

        G.      Attorneys' Fees and Expenses ......................................................... 7

        H.      Service Award to Named Plaintiffs ................................................. 8

        I.      *Cy Pres* Recipient ............................................................................. 8

        J.      Class Action Fairness Act ("CAFA") ............................................. 8

III.    LEGAL STANDARD....................................................................................... 9

IV.     ARGUMENT .................................................................................................. 10

        A.      The Court Should Approve the Proposed Settlement Because It Is Fair,
                Reasonable, and Adequate. ............................................................. 10

                1.      The Proposed Settlement is the result of good faith, arm's-length
                        negotiations before an experienced Mediator. ....................... 10

                2.      The Proposed Settlement falls within the range of possible
                        approval.................................................................................. 10

                        a.      The Strengths and Risks of Plaintiffs' Case and the
                                Complexity and Likely Duration of Further Litigation .............. 11

                        b.      The Risk of Maintaining Class Action Status............................. 12

                        c.      The Amount Offered in Settlement............................................... 13

                        d.      Extent of Discovery Completed and Stage of Proceedings ........ 14

                        e.      Views of Class Counsel ............................................................... 14

                        f.      Government Participation, Class Member Reactions, and
                                Other Cases Affected ................................................................... 14

i

3.    The Proposed Settlement treats Settlement Class Members equitably............................................................................... 14

4.    The proposed Fee and Expense Award is fair and reasonable................ 16

B.    The Court Should Certify the Settlement Class for Settlement Purposes............ 17

1.    The Class meets the requirements of Rule 23(a). ...................... 17

a.    The Class is sufficiently numerous. ................................ 17

b.    There are common questions of law and fact. ............................. 18

c.    The named Plaintiffs' claims are typical of other Class Members' claims....................................................... 18

d.    The Class Representatives and Class Counsel will continue to fairly and adequately protect the Class's interests................... 18

2.    The Class Meets the Requirements of Rule 23(b)(3)............................. 19

a.    Common issues of law and fact predominate. ............................. 19

b.    A class action is the superior method for adjudicating, and settling, the Plaintiffs' and the Class's claims. ............................ 19

C.    The Proposed Notice Program Provides the Best Notice Practicable.................. 20

V.    CONCLUSION.............................................................................. 21

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:19-CV-00835-FMO-SP

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Ahmed v. HSBC Bank*,
   No. ED CV 15-2057 FMO, 2019 WL 13027266 (C.D. Cal. Dec. 30, 2019) ........................... 15

*Boyd v. Bank of America Corp.*,
   No. 8:13-0561, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ................................. 16

*Carter v. Anderson Merchandisers LP*,
   No. DCV 08-0025-VAP, 2010 WL 1946784 (C.D. Cal. May 11, 2010) ................................. 17

*Churchill Village, L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ................................................................... 10, 20

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ................................................................... 9

*Fernandez v. Victoria's Secret Stores, LLC*,
   No. CV 06-04149-MMM (SHx), 2008 WL 8150856 (C.D. Cal. 2008) ................................. 17

*G. F. v. Contra Costa Cnty.*,
   No. 13-cv-03667-MEJ, 2015 WL 4606078 (N.D. Cal. July 30, 2015) ................................. 10

*Garcia v. Gordon Trucking, Inc.*,
   No. 1:10-CV-0324, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012)................................. 17

*Gold v. Lumber Liquidators, Inc.*,
   323 F.R.D. 280 (N.D. Cal. 2017)................................................................... 19

*Hillman v. Lexicon Consulting, Inc.*,
   2017 WL 10433869 (C.D. Cal. April 27, 2019) ................................................. 14

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ................................................................... 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prod. Liab. Litig.*,
   MDL No. 2672 CRB, 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016)................................. 16

*Jeter-Polk v. Casual Male, LLC*,
   No. 5:14-cv-00891, 2016 WL 9450464 (C.D. Cal. June 29, 2016)................................. 16

iii

*Kacsuta v. Lenovo (U.S.) Inc.*,
    No. SACV 13-00316-CJC(RNBx), 2014 WL 12585783 (C.D. Cal. 2014)...........................19

*Kim v. Space Pencil, Inc.*,
    No. C 11-03796 LB, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) ........................................11

*Knapp v. Art.com, Inc.*,
    283 F. Supp. 3d 823 (N.D. Cal. 2017) ...................................................................................12

*Musgrove v. Jackson Nurse Pros., LLC*,
    CV 17-6565 FMO, 2022 WL 18231364 (C.D. Cal. June 24, 2022) ......................................15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)...........................................................................11, 12, 14

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ..............................................................................................9, 11

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..............................................................................................12, 15

*Spann v. J.C. Penney Corp.*,
    314 F.R.D. 312 (C.D. Cal. 2016) ............................................................................................15

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) .................................................................................................19

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ................................................................................................................19

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ....................................................................................................9

*Wright v. Linkus Enters., Inc.*,
    259 F.R.D. 468 (E.D. Cal. 2009) ...............................................................................................9

Statutes

28 U.S.C. § 1712 ............................................................................................................................9

28 U.S.C. § 1713 ............................................................................................................................9

28 U.S.C. § 1714 ............................................................................................................................9

28 U.S.C. § 1715 ......................................................................................................................9, 21

Cal. Civ. Code § 1542 ...................................................................................................................5

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs originally filed this proposed class action against Defendants Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. (collectively, "Nutramax") on May 3, 2019. ECF No. 1. Following nearly three years of litigation, the Court granted class certification of Plaintiffs' claims. ECF No. 146. Following an appeal to the Ninth Circuit, the parties agreed to mediate their claims and eventually reached an agreement to resolve the certified claims (the "Settlement" or the "Proposed Settlement").[1] The Settlement provides for a total non-revisionary fund of $11,500,000, providing up to $25.00 per Cosequin® Product purchased and up to $150.00 total for multiple Cosequin® Products purchased. The Settlement Agreement, which is attached as **Exhibit 1** to the Joint Declaration of Class Counsel ("Counsel Decl."), was reached only after extensive litigation—both before this Court and before the Ninth Circuit—and arm's-length negotiations before the Honorable David Duncan, an experienced mediator. The Proposed Settlement is fair, reasonable, and adequate, and provides meaningful relief to the proposed Settlement Class, while balancing the risks and delays of continued, protracted litigation, including further dispositive briefing, discovery, trial, and the potential for no recovery to Plaintiffs at all. Based on an informed evaluation of the facts and governing legal principles, Plaintiffs respectfully request that the Court preliminarily approve the Proposed Settlement.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

This case involves Nutramax's alleged misrepresentations regarding its Cosequin® Products. Plaintiffs alleged that the products, which are marketed as canine joint health supplements containing glucosamine, chondroitin, and other ingredients make "incomplete and

---

[1] Unless otherwise specifically defined herein, all capitalized terms have the same meanings as those set forth in the Parties' Settlement Agreement, attached as **Exhibit 1**.

inaccurate claims . . . that would mislead and have in fact misled reasonable consumers into purchasing, using, and continuing to use Cosequin® products." Compl., ECF No. 1, ¶ 1; *see also* ECF No. 146, at 2. Plaintiffs also alleged that the products' joint health claims "are refuted by peer-reviewed, randomized, controlled clinical trials, and Nutramax's claims that the products "enhance joint flexibility and mobility and [] support or restore joint health" are unsupported. Compl., ¶¶ 1, 5; *see also* ECF No. 146, at 2. Allegedly, these misrepresentations, Plaintiffs alleged, caused Plaintiffs and other California consumers to overpay for the Cosequin® Products. Nutramax denied, and continues to deny, these allegations.

### B.    Procedural History

Plaintiffs filed their original Complaint on May 3, 2019. ECF No. 1. Following an amendment and full briefing on Nutramax's motion to dismiss the complaint, the Court granted partial dismissal with leave to amend. ECF No. 52. Plaintiffs filed the operative Second Amended Complaint on October 11, 2019. ECF No. 53. Following further briefing on another motion to dismiss, the Court denied Nutramax's motion. ECF No. 61. Nutramax filed its Answer on December 20, 2019. ECF No. 62.

The parties then engaged in significant discovery in preparation for Plaintiffs' motion for class certification. This discovery included the exchange of requests for production, interrogatories, multiple depositions, and the review of thousands of pages of documents. Counsel Decl. ¶¶ 7-12. Nutramax deposed each named Plaintiff, and Plaintiffs took depositions of Nutramax's Rule 30(b)(6) corporate representatives. *Id.* ¶¶ 9-10. The Parties also engaged in significant expert discovery on the issues of liability and damages. *Id.* ¶ 12.

Following this development of the record, Plaintiffs moved for class certification on August 23, 2021. ECF Nos. 91-92. Ultimately, the Court granted class certification on May 6, 2022, certifying a class of California consumers and allowing them to pursue claims under California's Consumer Legal Remedies Act ("CLRA") for the purchase of various Cosequin® Products. ECF No. 146, at 35.

Nutramax sought to appeal the Court's class certification under Rule 23(f), which the Ninth Circuit agreed to consider. ECF No. 147. Following full briefing and oral argument on this appeal, the Ninth Circuit affirmed the Court's decision to certify the class. ECF Nos. 157, 160.

When this case was remanded to this Court, the Parties began discussing potential settlement in light of the expense and uncertainties of continued litigation. The Parties engaged a neutral mediator, the Honorable David Duncan, to conduct mediation on April 10, 2025. Counsel Decl. ¶ 20. With the assistance of Judge Duncan, the Parties reached an agreement to settle in principle. *Id.* Since that mediation, the parties have continued to discuss and finalize the settlement terms. *Id.*

## II.    THE PROPOSED SETTLEMENT

The Proposed Settlement provides substantial, meaningful relief on a claims-made basis to California consumers who purchased canine Cosequin® Products during a six-year period by compensating them up to $25.00 per unit, with a potential maximum compensation of up to $150.00 for additional units. The Settlement Fund will contain enough funds to ensure that Class Members receive full and fair relief.

### A.    The Class

Because the Court had certified a class on May 6, 2022, the Proposed Settlement reflects that Class:

> All persons residing in California who purchased during the limitations period the following canine Cosequin® products for personal use: Cosequin® DS Maximum Strength Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Chewable Tablets; and Cosequin® DS Maximum Strength Plus MSM Soft Chews.

*Compare* Settlement Agreement ("SA"), § 1.1, *with* ECF No. 146, at 35.

The applicable limitations period for claims under the Proposed Settlement runs from May 3, 2016, through May 6, 2022 (the "Class Period"). SA § 1.2.

**B.      Benefits to the Class Members**

Nutramax will provide $11,500,000 for the Settlement Fund to cover all Class Member payments, Class Counsel's fee and expense award, service awards for the class representatives, and any other related costs of Settlement (other than administrative costs). *Id.* § 4.1. Nutramax also has agreed to pay all costs associated with the administration of the Settlement in addition to paying the amount for the Settlement Fund. *Id.* § 4.6.

Monetary relief is available to Class Members who submit a valid claim providing their name and address, and the number of units of Cosequin® Products purchased during the Class Period. *Id.* § 5.1.1. Class Members also must state, under penalty of perjury, that the Cosequin® Products were purchased in California, that the Class Member was a resident of California at the time of purchase, and that the purchases were for household use. *Id.* The Settlement Administrator will verify that the information submitted by purported Class Members meets these requirements. *Id.* § 5.1. Class Members will have 120 days after first publication of the Class Notice to submit a Valid Claim Form. *Id.* § 2.6 ("Claims Deadline").[2]

All Class Members who submit a Valid Claim Form are entitled to receive up to $25.00 per unit of Cosequin® Product purchased during the Class Period. *Id.* § 5.1.2. Class Members may submit claims for multiple units of Cosequin® Products they have purchased during the Class Period, but Class Members may receive compensation only up to $150.00 total for all units purchased. *Id.* Compensation is limited to one claim per household. *Id.* § 5.1.3 (defining "Household" as "all persons residing at the same physical address"). Class Members can elect to receive their compensation by physical check, electronic check, or through direct deposit. *Id.* § 5.1.4; *see also* §§ 5.5-5.6.

If the Settlement Fund is not exhausted after the payments to Class Members who submit valid claims, Class Counsel's fee and expense award, the service awards to the class

---

[2] The Parties are in the process of finalizing the Claim Form. Plaintiffs will file a copy of the Claim Form for the Court's consideration.

representatives, and any related costs (other than administrative costs) are paid, the remainder will be distributed to Valor Service Dogs as the *cy pres* recipient, subject to the Court's approval. *Id.* § 5.3. Under no circumstances shall any settlement funds revert to Nutramax. *See id.* § 4.1.

### C.    Release by Class Members

Through this Settlement, all Class Members—including those who do not submit claims—agree to release any claim "that have been or could have been brought regarding representations relating to joint health or mobility in connection with Nutramax's distribution, labeling, packaging, marketing, advertising, and/or sale of the Cosequin® Products during the applicable Class Period." SA § 9.1. Because the release only bars future claims relating to the Cosequin® Products sold during the Class Period, it is limited in scope. Because the Class is comprised of California citizens, the Settlement's release complies with California Civil Code § 1542. *Id.* § 9.3.

### D.    Settlement Administration

The parties have agreed to retain Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Settlement Administrator, subject to the Court's approval. *See* Counsel Decl. ¶ 29. Class Counsel considered bids from multiple settlement administration vendors before ultimately selecting Epiq. *Id.* ¶¶ 28. Epiq has substantial experience in managing class settlements nationwide. Declaration of Cameron R. Azari ("Azari Decl."), ¶¶ 4-7. All settlement administrative costs will be paid by Nutramax directly, and will *not* be paid out of the Settlement Fund. *See* SA §§ 2.2, 4.2, 6.4.

Epiq, as the proposed Settlement Administrator, will oversee notice to the Class Members and administration of the Settlement Fund, while ensuring the protection of Class Member data. *Id.* §§ 4.2, 7.2.1; Azari Decl., ¶¶ 9-16, 24-32.

### E.    Class Notice

Nutramax has provided the Settlement Administrator with a list of email addresses of Class Members, to the extent available (the "Class List"). Azari Decl., ¶ 24. Notice will be sent

via email to those Class Members whose email addresses are included on the Class List. *Id.* This Email Notice will be sent in a manner to ensure that Class Members are more likely to receive and review the Email Notice. *See id.* The Email Notice will include an embedded link to the Settlement Website. *See id.* If the Email Notice "bounces back" and is undeliverable, the Settlement Administrator will make two additional attempts to deliver Notice by email to the Class Member. *See id.* ¶ 25.

The Notice Plan also includes digital advertising through major digital advertising outlets and through social media. *See id.* ¶¶ 26-28. This Digital Notice is designed to target Class Members to encourage their participation in the Settlement. *See id.* ¶ 27. The Digital Notice will include a direct link to the Settlement Website. *Id.* Digital Notices will appear on desktop, mobile, and tablet devices, and will be displayed through digital advertising and social media advertising in California. *See id.* ¶ 30. In total, approximately 55.7 million targeted impressions will be generated by the Digital Notices over a period of approximately six weeks. *Id.* ¶ 32.

To further facilitate Class Members finding the Settlement Website, the Settlement Administrator will also sponsor search listing advertisements in California on *Google*, *Yahoo!*, and *Bing*, the three most highly-visited internet search engines. *Id.* ¶ 33. The Settlement Administrator will also issue an informational release regarding the Settlement in California over *PR Newswire's California* and *California Hispanic Newslines*, for general release. *Id.* ¶¶ 34-45.

The Settlement Administrator will establish and maintain a Settlement Website and a toll-free telephone number where Class Members can easily access information regarding the Settlement, review Settlement-related documents and deadlines, and submit claims, exclusion requests, or objections. *See, e.g.*, *id.* ¶¶ 37-38; *see also* SA §§ 2.35, 7.2.2. Moreover, the Settlement Administrator will establish a postal mailing address to provide Class Members an additional avenue for seeking and accessing information regarding the Settlement.

### F.      Opt-Outs and Objections

The Class Notice and Settlement Website will advise Class Members of their right to opt out of or object to the Settlement. *See, e.g.*, SA §§ 7.2.2, 7.3.1, 7.4.1. Class Members who wish to opt out of the Settlement must (1) either seek exclusion from the Settlement through the Settlement Website, or (2) mail a written, signed request for exclusion from the Settlement to the Settlement Administrator. *Id.* § 7.3.1. Written opt-out requests must be postmarked by the Opt-Out Deadline—ninety (90) days after Class Notice is first sent. *Id.* Opt-out requests must (1) include a handwritten signature of the Class Member; (2) provide the Class Member's legal name, mailing address, and telephone number; (3) state that the Class Member has reviewed and understands the Class Notice and wishes to exclude themself from the Settlement; (4) provide the name of the Class Member's attorney, if any; and (5) establish class membership. *Id.* § 7.3.2.

Class Members wishing to object to the Settlement must either (1) submit a written objection to the Clerk of this Court, or (2) submit a written objection to the Settlement Administrator. *Id.* § 7.4.1. Any objection must (1) attach copies in advance of any materials that the objector intends to submit to the Court or present at the Final Approval Hearing; (2) be signed by the objector and, if represented by counsel, by their counsel; (3) establish the objector's class membership; and (4) clearly state in detail the legal and factual grounds for the objection and other relevant information, including whether the objector wishes to present argument at the Final Approval Hearing. *Id.* Any Class Member objecting to the Settlement must submit their written objection by the Objection Deadline—ninety (90) days after Class Notice is first sent. *Id.* § 2.24.

### G.      Attorneys' Fees and Expenses

The Court has already appointed Plaintiffs' counsel, Milberg Coleman Bryson Phillips Grossman, PLLC and Levin Papantonio, as Class Counsel. ECF No. 146, at 36. Class Counsel intend to seek an award for reasonable attorneys' fees and expenses. The Parties did not discuss fees and expenses during the negotiations of the Settlement. Counsel Decl. ¶ 42. Following finalization of the Settlement's terms, the Parties agreed that any awarded fees and expenses

7

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:19-CV-00835-FMO-SP

would be paid from the Settlement Fund. SA § 10.1. Class Counsel intend to seek a fee and expense award of $3,795,000—or 33% of the Settlement Fund. *Id.*; *see also* Counsel Decl. ¶ 45. Nutramax reserves the right to object to or oppose Class Counsel's requests for attorneys' fees and expenses.

### H.    Service Award to Named Plaintiffs

Plaintiffs played a vital role in litigating this case, including reviewing pleadings and other filings, staying abreast of the status of the case and regularly discussing the matter with their counsel over a period of more than six years, responding to discovery, searching for and producing documents, preparing and sitting for depositions, playing an active role in considering and approving settlement terms, and ensuring the interests of putative class members were protected. *Id.* ¶¶ 34-40; *see also* Declaration of Justin Lytle (attached hereto); Declaration of Christine Musthaler (attached hereto). Therefore, Plaintiffs intend to petition the Court to award each Plaintiff $7,500—a total of $15,000—in recognition of their active role and significant time expended in furtherance of this important, multi-year litigation on behalf of the Class. *Id.* ¶ 40; *see also* SA § 10.5. Nutramax has agreed not to oppose any request for service awards up to $7,500 for each class representative. SA § 10.5. Any service award approved by the Court shall be paid from the Settlement Fund. *Id.* § 10.6.

### I.    *Cy Pres* Recipient

Following agreement of a settlement in principle, the Parties have jointly agreed to propose Valor Service Dogs as the *cy pres* recipient, pending the Court's approval. *Id.* § 5.3; *see also* Counsel Decl. ¶¶ 31-33. The Parties believe that Valor Service Dogs is an appropriate potential *cy pres* recipient in this case.

### J.    Class Action Fairness Act ("CAFA")

The Proposed Settlement fully complies with CAFA because it does not provide for a recovery of coupons, does not result in a new loss to any Class Member, and does not treat Class Members inequitably based upon geographic location or any other factor. *See* 28 U.S.C. §§ 1712-

8

14. Within ten (10) days of the submission of this Motion, the Settlement Administrator shall serve notices of the Settlement on all required state and federal regulatory authorities, pursuant to 28 U.S.C. § 1715. SA § 6.8.

## III.    LEGAL STANDARD

In the Ninth Circuit, there is a "strong judicial policy that favors settlements" of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Recognizing that "[p]arties represented by competent counsel" are "positioned . . . to produce a settlement that fairly reflects each party's expected outcome in [the] litigation," courts favor approval of settlements. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). At the preliminary approval stage, the court "evaluate[s] the terms of the settlement to determine whether they are within a range of possible judicial approval." *Wright v. Linkus Enters., Inc.* 259 F.R.D. 468, 472 (E.D. Cal. 2009). Moreover, preliminary approval should be granted where the parties have 'show[n] that the court will likely be able to . . . approve the proposal under [the final approval factors in] Rule 23(e)(2)'" and 'certify the class for purposes of judgment on the proposal.'" *Id.* (citing Fed. R. Civ. P. 23(e)(1)(B)). The relative degree of importance to be attached to any particular factor will depend upon . . . the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). In particular, determining whether a proposed settlement is fair, adequate and reasonable depends upon:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

## IV.   ARGUMENT

### A.   The Court Should Approve the Proposed Settlement Because It Is Fair, Reasonable, and Adequate.

The Proposed Settlement represents a fair, reasonable, and adequate resolution to this litigation, providing meaningful relief to consumers. The relevant considerations weigh in favor of preliminarily approving—and of finally approving—the Proposed Settlement.

#### 1.   The Proposed Settlement is the result of good faith, arm's-length negotiations before an experienced Mediator.

The Parties reached the Proposed Settlement following a day-long mediation session overseen by the Honorable David Duncan, an experienced mediator and former federal magistrate judge capable of analyzing the strengths and weaknesses of the parties' cases. Judge Duncan offered a reasonable, unbiased analysis of each party's arguments, claims, and defenses, helping the Parties to recognize the validity (and shortcomings) of their positions. Judge Duncan ensured that the Parties' negotiations were conducted in good faith and at arm's length. Through this mediation the parties reached an agreement to settle in principle. Counsel Decl. ¶ 20. "[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *See G. F. v. Contra Costa Cnty.*, No. 13-cv-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (citation omitted). This favors preliminary approval.

#### 2.   The Proposed Settlement falls within the range of possible approval.

It is axiomatic that "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Just.*, 688 F.2d at 624. The Proposed Settlement provides both injunctive relief and substantial monetary relief to the Class considering (1) the costs, risks, expenses, and delays of trial and appeal, (2) the effectiveness of the proposed distribution plan, and (3) the fair and explained terms of the substantial gross Settlement Fund

10

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:19-CV-00835-FMO-SP

1  that will sufficiently pay for all of the settlement costs, including any award of attorneys' fees and

2  expenses. Fed. R. Civ. P. 23(e)(2)(C).

3         a.       **The Strengths and Risks of Plaintiffs' Case and the Complexity**

4                  **and Likely Duration of Further Litigation**

5        The Proposed Settlement provides substantial relief to the Class in the face of the inherent

6  uncertainties of litigation. "The substantial and immediate relief provided to the Class under the

7  Settlement weighs heavily in favor of its approval compared to the inherent risk of continued

8  litigation, trial, and appeal, as well as the financial wherewithal of the defendant." *Kim v. Space*

9  *Pencil, Inc.*, No. C 11-03796 LB, 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012). "In most

10  situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable

11  to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v.*

12  *DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted).

13        This case presents significant risks to recovery. On the merits, Nutramax has denied, and

14  continues to deny, that it misrepresented any aspect of the Cosequin® Products or that consumers

15  were charged a price premium for the products. Nutramax maintains that all its representations—

16  either in marketing or on product packaging—were true and denies that it ever violated any

17  consumer protection law. Nutramax previously moved for summary judgment, which was later

18  vacated. *See* ECF Nos. 128, 140. The Court has not had an opportunity to rule on summary

19  judgment and it is likely that, if the Proposed Settlement is not approved, Nutramax would renew

20  its motion for summary judgment. Thus, this creates additional risk that, if granted, Plaintiffs'

21  claims could be dismissed and Plaintiffs and the Class Members would receive nothing.

22        And there is meaningful risk that a factfinder could agree with Nutramax at trial. Because

23  the challenged representations relate to canine joint health, both Parties will present evidence to

24  challenge or support these claims. There is a risk that a factfinder could agree with Nutramax and

25  its experts that the Cosequin® Products do provide joint health benefits, such that a reasonable

26  consumer would not be misled. Indeed, consumer class action trials are inherently risky.

27

11

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:19-CV-00835-FMO-SP

Seemingly meritorious class actions have recently gone to trial in California, with judgments returned for defendants. *See e.g., Farar v. Bayer AG*, No. 14-cv-4601 (N.D. Cal. 2017); *Allen v. Hyland's, Inc*., No. 12-cv-1150 DMG (MANx) (C.D. Cal. 2014). Even if Plaintiffs prevailed a trial, Nutramax would likely appeal that decision. "Avoiding such a trial and subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 527.

Therefore, in the face of additional months, if not years, of litigation, Plaintiffs must weigh the very real risk that the Court—or a jury—could side with Nutramax. Accordingly, while Plaintiffs vigorously dispute Nutramax's contentions on the merits, the risks of litigation weigh in favor of settlement. *See Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 832 (N.D. Cal. 2017) (approving settlement where "[c]ase law suggests that plaintiff would have faced challenges in continuing to litigate" and "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results").

### b. *The Risk of Maintaining Class Action Status*

The risk of maintaining class action status through trial supports preliminary approval. Counsel Decl. ¶¶ 23, 26. Although a class has been certified in this case, ECF No. 146, Nutramax opposed certification. Even following certification, Nutramax appealed and continued to challenge the Court's determination. *See, e.g.*, ECF No. 147. Thus, if litigation continued, it is likely that Nutramax would move to decertify. *See, e.g., Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (discussing the risk that a "district could may decertify a class at any time"). There remains a risk that Plaintiffs will not be able to maintain class action status through trial. If the class were decertified, the Class Members would receive nothing. The Proposed Settlement allows Plaintiffs and Class Members to avoid these risks, additional expenses, and delays in favor of immediate recovery.

### c.    *The Amount Offered in Settlement*

Plaintiffs and their counsel secured for the Class a gross Settlement Fund of $11,500,000, which is reasonable in relation to potential trial damages for the Class. Plaintiffs' counsel closely examined the potential damages available if they continued litigating this case through to a successful verdict at trial. When comparing this aspirational view of the available damages against the risks, time, and costs of continued litigation, Plaintiffs' counsel believes that this Settlement represents a fair and reasonable result that provides meaningful relief to Class Members. Plaintiffs have proposed (and the Court approved) a conjoint analysis methodology as capable of calculating class-wide damages. *E.g.*, ECF No. 146, at 10-11. Through a conjoint analysis, Plaintiffs' damages expert would survey consumers to analyze how they view—and worth they give—the challenged claims regarding the Cosequin® Products' representations on canine joint health.

Prior to mediation, Class Counsel worked closely with their damages' expert, renowned economist Professor Jean-Pierre H. Dubé, to estimate a reasonable price premium that could be calculated in this case, if the conjoint survey were fielded. Dr. Dubé brought his significant survey and economics knowledge and experience to bear when estimating that a likely price premium could be calculated in the range of 25% to 35%. Given that the Cosequin® Products are marketed as a canine joint health supplement, and given that Plaintiffs' claims challenged that central representation, Dr. Dubé estimated that the price premium would likely be significant. Class Counsel then closely examined, with the aid of Dr. Dubé, Nutramax's wholesale sales data attributable to California purchasers. Applying a well-reasoned estimated price premium of 30%, Class Counsel calculated damages for the certified California Class at approximately $17,112,007.

The $11,500,000 Settlement Fund represents 67.2% of these estimated damages. Given that this Settlement prevents further risk, cost, and time of protracted litigation, achieving 67.2%

of a plaintiff's "best-day" damages represents an exceedingly reasonable—if not excellent—result.

### d. *Extent of Discovery Completed and Stage of Proceedings*

The Parties have been engaged in discovery since 2019. Counsel Decl. ¶ 7. The Parties have exchanged written discovery, produced and reviewed thousands of pages of documents, and engaged in multiple party, fact witness, and expert depositions. *Id.* ¶¶ 7-12. Plaintiffs conducted sufficient discovery, including from Nutramax and third-party retailers, to permit Plaintiffs' counsel and the Court to intelligently and fairly evaluate the fairness and adequacy of this Settlement. Indeed, Plaintiffs proposed—and the Court approved, ECF No. 146, at 10-11—a methodology for calculating class-wide damages. *See* Counsel Decl. ¶¶ 24-25. This factor favors preliminary approval.

### e. *Views of Class Counsel*

Class Counsel, who are experienced in consumer class action litigation, believe the Proposed Settlement represents an outstanding recovery for the Class Members given the risks of continuing the litigation. *Id.* ¶¶ 23, 26. "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

### f. *Government Participation, Class Member Reactions, and Other Cases Affected*

There is no government participant and, because the Court has not yet approved Notice, the Class has not had an opportunity to react, so these factors are neutral. *See Hillman v. Lexicon Consulting, Inc.*, 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2019). Moreover, Class Counsel is aware of no other cases that will be affected by the Settlement. Counsel Decl. ¶ 27.

### 3. The Proposed Settlement treats Settlement Class Members equitably.

The Proposed Settlement provides benefits to all Class Members who submit Valid Claim Forms, without any preferential treatment of Class Representatives or any segment of the Class.

14

*See* Fed. R. Civ. P. 23(e)(2)(D). Every Class Member suffered the same harm and is, thus, capable of submitting a claim for the same monetary relief based on the total number of Cosequin® Products purchased. Further, because all Class Members are California residents who purchased the Cosequin® Products within the Class Period, the Settlement does not treat any Class Member inequitably.

Class Counsel intends to apply for a $7,500 service award (also called an incentive award) for each of the Plaintiffs for their dedication to and time expended during this litigation and in furtherance of putative class members' interests. Such service awards "are fairly typical in class action cases" and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). These service awards are appropriate given the effort expended by the class representatives, including working closely with Plaintiffs' counsel during discovery and sitting for depositions. *See, e.g.*, *Musgrove v. Jackson Nurse Pros., LLC*, CV 17-6565 FMO, 2022 WL 18231364, at *9 (C.D. Cal. June 24, 2022) (Olguin, J.) (finding $7,500 service award to be appropriate); *Ahmed v. HSBC Bank*, No. ED CV 15-2057 FMO, 2019 WL 13027266, at *7 (C.D. Cal. Dec. 30, 2019) (Olguin, J.) (finding $5,000 service awards to be paid from a $2,400,000 settlement fund reasonable). Such a service award, if awarded here, would not constitute preferential treatment. *See Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 328-29 (C.D. Cal. 2016) (Olguin, J.). Plaintiffs were not promised that they would receive such an award for their participation in this litigation, and their agreement to serve as class representatives was not conditioned on receiving such an award. Counsel Decl. ¶ 41. If granted, such an award would be offered for the significant time the Class Representative expended in this litigation, working tirelessly on behalf of the Class; it would be separate from and not replace their recovery as Class Members, should they qualify. *See id.* ¶ 40.

This factor favors preliminary approval.

15

### 4.    The proposed Fee and Expense Award is fair and reasonable.

Class Counsel intends to seek $3,795,000 in attorneys' fees and expenses, which represents a 33% benchmark. *Id.* ¶ 45. Should the Court award Class Counsel attorneys' fees and expenses, they will be paid from the Settlement Fund. SA § 10.1. However, the Settlement is not contingent on Class Counsel's fee and expense request, and the Settlement will remain intact regardless of the amount of fees and expenses ultimately awarded. *Id.* § 10.7. Further, the $11,500,000 gross Settlement Fund is designed to contain funds sufficient to cover Class Counsel's requested fees and expenses (and service awards to the class representatives), while still ensuring that the Class is fairly and adequately compensated. Nutramax reserves the right to object to or oppose Class Counsel's requests for attorneys' fees and expenses.

Courts routinely favor parties who fully negotiate and finalize Settlement terms with non-contingent class counsel fees. *E.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prod. Liab. Litig.*, MDL No. 2672 CRB, 2016 WL 6248426, at *23 (N.D. Cal. Oct. 25, 2016). Here, while an award of reasonable attorneys' fees and expenses affects the net Settlement amount, Class Counsel intend only to seek an award of fees and expenses that would ensure the Class Members may still be fairly compensated, while weighing the risks borne and significant work and time expended by Class Counsel in this multi-year litigation. *See Jeter-Polk v. Casual Male, LLC*, No. 5:14-cv-00891, 2016 WL 9450464, at *7-8 (C.D. Cal. June 29, 2016) (awarding a fee equivalent to one-third of the settlement fund where class counsel achieved a settlement equal to 46% of the calculated damages); *Boyd v. Bank of America Corp.*, No. 8:13-0561, 2014 WL 6473804, at *9-10 (C.D. Cal. Nov. 18, 2014) (awarding a fee equivalent to one-third of the settlement fund where class counsel achieved a settlement equal to 36% of the full possible relief available); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324, 2012 WL 5364575, at *11 (E.D. Cal. Oct. 31, 2012) (awarding a fee equivalent to one-third of the settlement fund where class counsel achieved a settlement equal to approximately 65% of the maximum potential value of the payout to class members); *Fernandez v. Victoria's Secret Stores, LLC*, No. CV 06-04149-MMM

16

1  (SHx), 2008 WL 8150856, at \*11-16 (C.D. Cal. 2008) (awarding a fee equivalent to 34% of the

2  settlement fund where class counsel achieved a "generous" and "extremely favorable result for

3  the class" despite facing "substantial risk litigating [the] case").[3] The Settlement is not contingent

4  on Class Counsel's fees and expenses and will ensure the Class is fairly compensated regardless

5  of the fees and expenses ultimately awarded. Accordingly, this favors preliminary approval.

6  **B.    The Court Should Certify the Settlement Class for Settlement Purposes.**

7  Where a court has previously granted class certification, it need not reconsider class

8  certification within the settlement context, absent relevant evidence suggesting that

9  reconsideration of the Rule 23 factors is necessary. *Carter v. Anderson Merchandisers LP*, No.

10  DCV 08-0025-VAP, 2010 WL 1946784, at \*4 (C.D. Cal. May 11, 2010) ("[T]he Court is not

11  required to revisit certification absent any evidence suggesting reconsideration is necessary.").

12  Because the Court here has already rigorously considered the Rule 23 factors, finding that they

13  support certification—and because the Proposed Settlement and Notice Plan adopt the Court's

14  certified class definition and no other significant developments have occurred—the Court need

15  not (and should not) disturb its previous certification order. Nevertheless, a concise overview of

16  the Rule 23 factors illustrates that certification is proper under the Proposed Settlement.

17  **1.    The Class meets the requirements of Rule 23(a).**

18  **a.    *The Class is sufficiently numerous.***

19  Here, the precise number of Class Members is not known, but as Plaintiffs indicated at

20  class certification, "general knowledge and common sense indicate [the Class] is large." ECF No.

21

---

22  [3] Class Counsel seek this Fee and Expense Award based upon the extensive time and effort
expended in this litigation—including in obtaining class certification in this Court and

23  maintaining certification through Nutramax's appeal to the Ninth Circuit. Moreover, compared

24  to Plaintiffs' calculation of damages, the Settlement Fund represents approximately 67% of the
total damages available the case continued to trial, while avoiding the significant risks of further

25  litigation and assuring relief to Class Members. *See supra* Section IV.A.2.c.; *see also* Counsel
Decl. ¶¶ 24-25. The case law favors a fee and expense award exceeding the typical 25%

26  benchmark under these circumstances. Class Counsel will fully brief these issues in their

27  forthcoming motion requesting fee and expenses.

120, at 11. Notably, Nutramax has not challenged numerosity in this case. The Court previously found that numerosity had been satisfied, ECF No. 146, at 11, and there is no reason to disturb that finding.

**b.**    *There are common questions of law and fact.*

The Court previously noted that there were common questions of law and fact regarding whether consumers were likely to be deceived by representations relating to the joint health benefits of the Cosequin® Products, whether Nutramax communicated these benefits, and whether such representations were material to a reasonable consumer. ECF No. 146, at 12. These questions "not only address required elements of [P]laintiffs' CLRA claim, but they also are susceptible to common proof." *Id.* at 12-13 (citations omitted). The Court correctly found then that commonality had been satisfied, and it should reaffirm that decision for purposes of settlement.

**c.**    *The named Plaintiffs' claims are typical of other Class Members' claims.*

As the Court explained, "plaintiffs' claims are based on the same facts, that they 'relied upon defendants' representations in purchasing Cosequin® and expected the Products to be effective as claimed on the packaging,' and [are based on] the same legal and remedial theories as the claims of the rest of the class members." ECF No. 146, at 20. This remains true.

**d.**    *The Class Representatives and Class Counsel will continue to fairly and adequately protect the Class's interests.*

As the Court previously found, Plaintiffs has no conflicts of interests with the Class Members and they have—and will continue to—zealously advocate on behalf of and serve the interests of the Class. Likewise, Plaintiffs' counsel (whom the Court appointed as Class Counsel) have vigorously represented the interests of the Class and will continue to do so through the final approval of this Settlement. *See* ECF No. 146, at 21-22. Adequacy remains clear.

18

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:19-CV-00835-FMO-SP

**2.**    **The Class Meets the Requirements of Rule 23(b)(3).**

**a.**    *Common issues of law and fact predominate.*

Rule 23(b)(3) first requires "predominance," which tests the cohesion of the class, "ask[ing] whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). Predominance is ordinarily satisfied, for settlement purposes, when the claims arise out of the defendant's common conduct. *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 288 (N.D. Cal. 2017) (predominance satisfied where claims were based on "the same deceptive conduct"); *Kacsuta v. Lenovo (U.S.) Inc.*, No. SACV 13-00316-CJC(RNBx), 2014 WL 12585783, at *3 (C.D. Cal. 2014) (common issues "significantly outweigh any individual questions" where the claims arise out of the "same alleged course of conduct" by the defendant).

For a CLRA claim, predominance is satisfied where "causation, on a classwide basis, may be established by materiality," meaning that "[i]f the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class." ECF No. 146, at 24 (quoting *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011)). The Court has already found that the alleged misrepresentations by Nutramax are material—relating to central contentions of the Cosequin® Products' functionality as a joint health supplement—and Class Members were uniformly exposed to the claims when purchasing the products. *Id.* at 24-26. These questions, which impact the Class as a whole, predominate over any individualized ones that may exist, as the Court has already correctly found. *Id.* at 29-30. It should not disturb that determination.

**b.**    *A class action is the superior method for adjudicating, and settling, the Plaintiffs' and the Class's claims.*

As the Court previously noted, other courts considering similar cases have "routinely" found that the class action is the superior form of adjudication. ECF No. 146, at 34 (citing cases).

19

Here, Class Members' potential damages are relatively small, which render the costs of litigation prohibitive for most. Moreover, Nutramax has not identified any manageability issues that would preclude maintaining the case as a class action, and that certainly is not the case under the Proposed Settlement. Particularly for the purposes of settlement, and for the reasons the Court has already addressed, maintaining a class action is superior.

**C.    The Proposed Notice Program Provides the Best Notice Practicable.**

For a settlement class, the Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice should "generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The proposed notice program accomplishes that.

The Parties jointly developed the proposed notice program with the aid of the Settlement Administrator, Epiq, an experienced firm specializing in the management of class settlements. The Notice program includes an email and long form notice, a toll-free phone number, and a comprehensive settlement website, all of which provide clear, complete instructions to Settlement Class Members of how to submit valid payment information. For those Class Members for whom Nutramax has provided contact information, the Settlement Administrator will send Email Notice. Azari Decl. ¶ 24. The Settlement Administrator will also initiate a digital advertising and social media campaign to provide notice to as many other Class Members as possible. This Digital Notice will appear on desktop, mobile, and tablet devices, and is designed to target Class Members, generating approximately 55.7 million targeted impressions over a period of approximately six weeks. *Id.* ¶¶ 30, 32. Additionally, the Settlement Administrator will establish a case-specific toll-free number and a settlement website, to host important Settlement information. Long Form notices will be available on the settlement website and upon request from the Settlement Administrator. The notice program informs Settlement Class Members of their

right to opt-out from or object to the Settlement. This notice program provides for the best notice

practicable under the circumstances and meets the requirements of Rule 23(c)(2)(B).

Further, the Settlement Administrator will provide notice to all necessary government

officials, as required by CAFA, 28 U.S.C. § 1715. SA § 6.8.

**V.    CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that the Court (1) preliminarily

approve the Proposed Settlement; (2) certify the Class for Settlement Purposes; (3) direct notice

to the Class through the proposed notice program; and (4) schedule the final approval hearing.


Dated: July 28, 2025                                  /s/ *Adam A. Edwards*

Gregory F. Coleman (*pro hac vice*)
gcoleman@milberg.com
Adam A. Edwards (*pro hac vice*)
aedwards@milberg.com
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049


Daniel K. Bryson (*pro hac vice*)
dbryson@milberg.com
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035


Matthew D. Schultz (*pro hac vice*)
mschultz@levinlaw.com
**LEVIN PAPANTONIO**
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Telephone: (850) 435-7140
Facsimile: (850) 436-6140

Daniel L. Warshaw
dwarshaw@pswlaw.com
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (310) 595-9662
Facsimile: (310) 595-9501

*Attorneys for Plaintiffs*
*and the Certified Class*

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:19-CV-00835-FMO-SP

## **CERTIFICATE OF COMPLIANCE**

I, Adam A. Edwards, hereby certify that the foregoing Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement contains <u>6,926 words</u>, which complies with the word limit of Local Rule 11-6.1.

/s/ *Adam A. Edwards*
Adam A. Edwards

*Attorney for Plaintiffs*
*and the Certified Class*

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:19-CV-00835-FMO-SP

## CERTIFICATE OF SERVICE

I, Adam A. Edwards, hereby certify that on July 28, 2025, I caused a true and correct copy of the foregoing Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement to be served upon the following by electronic mail:

Kathy J. Huang (SBN 240677) (kathy.huang@alston.com)
John E. Stephenson, Jr. (john.stephenson@alston.com)
Scott A. Elder (scott.elder@alston.com)
Jason D. Rosenberg (jason.rosenberg@alston.com)
Jenny A. Hergenrother (jenny.hergenrother@alston.com)
Alan F. Pryor (alan.pryor@alston.com)
Kara L. McCall (kara.mccall@alston.com)
Joshua A. Glikin (jglikin@shulmanrogers.com)

*Attorneys for Defendants*

/s/ *Adam A. Edwards*
Adam A. Edwards

*Attorney for Plaintiffs*
*and the Certified Class*