Gregory F. Coleman (*pro hac vice*)
gcoleman@milberg.com
Adam A. Edwards (*pro hac vice*)
aedwards@milberg.com
MILBERG COLEMAN BRYSON
 PHILLIPS GROSSMAN, PLLC
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

Daniel L. Warshaw
dwarshaw@pswlaw.com
PEARSON WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (310) 595-9662
Facsimile: (310) 595-9501

*Attorneys for Plaintiffs
and the Certified Class*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN LYTLE and CHRISTINE MUSTHALER,<br><br>Plaintiffs,<br><br>v.<br><br>NUTRAMAX LABORATORIES, INC. and NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC.,<br><br>Defendants. | Case No. 5:19-CV-00835-FMO-SP<br><br>Assigned to: Hon. Fernando M. Olguin<br><br>**DECLARATION OF CLASS COUNSEL IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

I, Adam A. Edwards, declare as follows:

1. I represent Plaintiffs Justin Lytle and Christine Musthaler ("Plaintiffs" or "Class Representatives") in the above-captioned class action. I have worked on this litigation since the case was first filed in May 2019 through to the present. I, along with other Plaintiffs' counsel, have led Plaintiffs' efforts in this case and my firm, Milberg Coleman Bryson Phillips Grossman PLLC, along with the firm Levin Papantonio, were appointed as Class Counsel in this Action. ECF No. 146, at 36. I have personal knowledge of all matters addressed in this Declaration, including the negotiations that culminated with the filing of the Proposed Settlement now pending before the Court.

2. Given the significant amount of effort and resources expended in this multi-year litigation, if the Proposed Settlement is approved, consumers who purchased Cosequin® Products in California will receive meaningful cash benefits. I offer this Declaration in support of preliminary approval of the Proposed Settlement. In support, an overview of the litigation and the Proposed Class Counsel's qualifications, as well as the named Plaintiffs' efforts throughout this litigation, are included below.

### *Overview of this Litigation*

3. Throughout the litigation, Defendants Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. (collectively, "Nutramax") have denied Plaintiffs' allegations and continue to deny that the Cosequin® Products are marketed, packaged, or labeled in a misleading manner.

4. Throughout all phases of this litigation, Plaintiffs' counsel and their respective law firms have undertaken an enormous amount of work, effort, and expense in this litigation, demonstrating a serious devotion to see this Action through to a successful outcome. Collectively, thus far in this litigation, which has spanned more than six years, Plaintiffs' counsel (whom the Court appointed Class Counsel) have invested thousands of hours, as well as significant costs and expenses, in this pursuit.

5. Plaintiffs' counsel pledge to continue this work, effort, and expenditure through

to the final approval of this Proposed Settlement, including through the settlement administration and distribution process.

6.  On the pleadings, Plaintiffs' counsel engaged in substantial research and hard-fought motion practice. For example, prior to filing, Plaintiffs' counsel performed extensive research regarding the Cosequin® Products, working closely with consulting experts regarding whether the products' claims regarding canine joint health were potentially misleading. After the filing of the Complaint, Plaintiff amended as of right based upon an early meet-and-confer with Nutramax. The Parties fully briefed two motions to dismiss and a motion to strike the national class allegations, and Plaintiffs amended their complaint twice. Plaintiffs' counsel engaged in similar efforts regarding each amendment. The Court denied Nutramax's motions as to Plaintiff's CLRA claim and transferred the action to this Court. *See* ECF Nos. 61, 66.

7.  After the pleadings closed in December 2019, the Parties began to engage in discovery. Plaintiffs served interrogatories, requests for admission and three sets of requests for production of documents to each Nutramax Defendant, which included extensive meet-and-confer efforts with Nutramax's counsel and negotiation of both an ESI protocol and Protective Order. Likewise, Nutramax served requests for admission, three sets of interrogatories, and five sets of requests for production of documents to each of the named Plaintiffs. Nutramax produced approximately 12,000 documents, totaling more than 50,000 pages, which Plaintiffs' counsel reviewed.

8.  Further, Plaintiffs' counsel issued subpoenas for the production of relevant sales and price data to various third-party retailers, who sold the Cosequin® Products at issue as well as comparator products. Plaintiffs' subpoena to IRI for comparator products alone resulted in production of a dozen spreadsheets comprised of more than 2.3 million rows of sales and price data that had to be reviewed and analyzed. The IRI data for Nutramax sales and pricing comprised an additional 191,000 rows and 130 columns (24.8 million cells) of data for attorney and expert analysis. Plaintiffs' counsel engaged in extensive meet-and-confer efforts regarding these third-party subpoenas and reviewed all documents produced pursuant to those subpoenas.

Defendants also issued third-party subpoenas, including subpoenas to Amazon, PetSmart, Ralph's Supermarkets and to Plaintiffs' respective veterinary care providers.

9. The Parties also engaged in depositions. Plaintiffs' counsel took depositions of Nutramax's identified Rule 30(b)(6) designees and other Nutramax-affiliated and third-party fact witnesses, including:

    a. Elizabeth Barrett – a third-party marketing consultant involved in Cosequin® consumer market research;

    b. Jeffrey Creech – Nutramax's Chief Operating Officer and Rule 30(b)(6) designee;

    c. David Griffin, DVM – Nutramax's Vice President of Innovation;

    d. Susanne Kempf – Project Manager for the Cosequin® brand;

    e. Eric Linn – Nutramax's Director of Regulatory Compliance

    f. David Moore – Nutramax's Vice President of Sales and Rule 30(b)(6) designee;

    g. Godwin Omorogieva – Nutramax's Vice President of Quality; and

    h. Rachel Tuz – Plaintiff Musthaler's veterinarian.

10. Nutramax took both Plaintiffs' depositions as well as the deposition of Pam Lytle (Plaintiff Justin Lytle's mother). Plaintiffs' counsel worked closely with each Plaintiff to prepare them for deposition, including closely reviewing all discovery responses and produced documents relating to each Plaintiff. Plaintiffs' counsel defended each Plaintiff's deposition.

11. Plaintiffs' counsel undertook testing of the Cosequin® Products as it related to their allegations. The case also included extensive review of the scientific literature on canine joint health and joint health supplements. In addition to the numerous scientific publications cited on Nutramax's website, Plaintiffs' counsel reviewed more than 175 scientific publications in preparing the case and deposing fact and expert witnesses.

12. The Parties also engaged in significant expert discovery. Plaintiffs' counsel worked with their liability and damages experts, overseeing their review of pertinent documents

and working closely with the experts as they drafted their reports. Plaintiffs' counsel prepared each expert for deposition by Nutramax, including closely reviewing documents and relevant expert reports. Plaintiffs' counsel defended each deposition of their experts and deposed Nutramax's experts, which required significant preparation. For example, Nutramax's expert reports totaled more than 3,500 pages (excluding additional documents produced in advance of depositions). Expert depositions taken by the Parties included:

  a. Howard Beales – Nutramax's expert on claim substantiation and advertising regulations;
  b. Randolph Bucklin – Nutramax's economics and damages rebuttal expert;
  c. George Dodge – Nutramax's expert on veterinary medicine and claims substantiation for glucosamine/chondroitin formulations;
  d. Bernard Jansen – Nutramax's social media expert opining on traffic to Nutramax websites nationally and within California;
  e. Denis Marcellin-Little – Nutramax's expert on canine orthopedic medicine and medical interventions;
  f. Carol Scott – Nutramax's consumer market survey and marketing expert (two reports);
  g. Olivier Toubia – Nutramax's economics and damages expert (two reports);
  h. Jean-Pierre Dubé – Plaintiffs' expert on economics and damages (two reports);
  i. Richard Evans – Plaintiffs' expert on veterinary study design and statistics; and
  j. Bruce Silverman – Plaintiffs' marketing expert.

13. Plaintiffs' counsel then moved for class certification. *See* ECF No. 91-94. In so moving, Plaintiffs' counsel carefully reviewed all relevant discovery, combing through thousands of documents and consulting with their experts, to draft the Motion for Class Certification and related filings (including *Daubert* motions and full briefing on Plaintiffs' experts Jean-Pierre Dube and Bruce Silverman). Nutramax opposed that motion, and the Parties fully briefed the issues for the Court via a joint brief that the Parties submitted. ECF No. 92.

Although Plaintiffs noticed the Motion for Class Certification for a hearing, the Court *sua sponte* vacated the hearing on the Motion and placed it under submission. ECF No. 108.

14. Nutramax also moved for summary judgment and brought various motions in limine to exclude expert testimony. *See* ECF Nos. 128, 131, 135. Plaintiffs' counsel opposed these motions, and the Parties briefed the issues for the Court via joint briefs that they submitted.

15. Shortly thereafter, the Court granted certification, certifying a class of California consumers and appointing Plaintiffs' counsel as Class Counsel and the named Plaintiffs as Class Representatives. ECF No. 146.

16. Following certification, Nutramax sought permission from the Ninth Circuit to appeal that Court's order pursuant to Rule 23(f). Plaintiffs' counsel responded to this request to appeal, which the Ninth Circuit granted. The Parties then fully briefed the issues of class certification on appeal. Oral argument was held and, ultimately, the Ninth Circuit affirmed class certification. ECF Nos. 157, 160. Nutramax sought review in the Supreme Court of the United States via a petition for certiorari, which was denied.

17. Upon remand of the case to the district court, Plaintiffs' counsel drafted a proposed Notice Plan to provide notice to the certified Class Members. ECF No. 165.

18. At that point, the Parties re-opened informal settlement negotiations after having reached an impasse at mediation earlier in the case. Shortly thereafter, the Parties agreed to mediate before the Honorable David Duncan, a respected, experienced mediator that the Parties jointly selected.

### *Settlement Negotiations and Mediation*

19. On October 6, 2018, the Parties attended mediation with the Honorable Dickran Tevrizian. This mediation did not result in settlement.

20. Following further litigation, on April 10, 2025, the Parties attended mediation with the Honorable David Duncan. Judge Duncan scrutinized the Parties' claims and defenses, working cooperatively with the Parties to help them reach a resolution. Following these efforts, the Parties reached an agreement in principle to settle, with the aid of Judge Duncan.

21. Following the mediation, the Parties continued to finalize the Proposed Settlement, while ensuring that it continued to align with their agreement in principle. On July 28, 2025, the Parties finalized and fully executed the Settlement. This Settlement, which the Parties now propose to the Court for preliminary approval, was memorialized in the Settlement Agreement, which is attached as **Exhibit 1** and includes the proposed Notice forms (which were previously presented to the Court, see ECF No. 165).

### *Class Recovery and Views of Class Counsel*

22. The Proposed Settlement provides for a total net fund of $11,500,000, providing Class Members who submit a valid claim up to $25.00 per unit of Cosequin® Product purchased in California during the Class Period. Class Members may submit a claim for multiple purchased units, with a maximum compensation of up to $150.00 for multiple purchased units of Cosequin® Products per household.

23. Weighing the benefits of the Proposed Settlement against the risks of continuing litigation supports a finding that the Proposed Settlement is an excellent result for Settlement Class Members, and is within the range of reasonableness required for preliminary approval.

24. In first considering potential settlement, Plaintiffs' counsel worked closely with Plaintiffs' damages expert to estimate a likely price premium that could be calculated in this case based upon Plaintiffs' allegations that the Cosequin® Products, which advertise canine joint health benefits, are misleading. Plaintiffs' expert, Professor Jean-Pierre H. Dubé calculated a likely price premium in the range of 25% to 35%. Applying an average 30% price premium, which Dr. Dubé considered to be reasonable in his experience for a case like this, measured against Nutramax's available California sales data, yielded estimated class-wide damages of $17,112,007.

25. A Settlement Fund of $11,500,000 represents 67.2% of these estimated damages. When weighed against the significant risks, time, and expenses of further litigation—including the risk that Plaintiffs' claims fail entirely, or that the price premium and damages are found to be lower—the Proposed Settlement is a reasonable, if not an excellent compromise.

26. While the Court has certified a Class here, significant risks remain for Plaintiffs. Indeed, Nutramax will likely re-raise its motion for summary judgment. *See* ECF No. 128. While Plaintiffs would oppose summary judgment, there remains a risk that the Court could be persuaded to grant it in whole or in part, potentially leading to dismissal of all or part of Plaintiffs' claims or proof. Plaintiffs would also continue to face the risk that a class could be decertified. Further, if the case proceeded to trial, Plaintiffs would face the significant risk that a jury could or would be unconvinced of their claims. The Proposed Settlement allows Plaintiff and Settlement Class Members to avoid these risks, additional expenses, and delays in favor of immediate recovery.

27. Plaintiffs' counsel are unaware of any other cases impacted by this Settlement.

### ***Settlement Administrator and* Cy Pres *Selection***

28. In preparation for filing for preliminary approval of the Proposed Settlement and direction of notice to the proposed Settlement Class, the Parties considered multiple experienced notice and settlement administration vendors, fielding bids from three vendors.

29. Following review of materials and meetings with each of the potential vendors, and considering the costs associated with these vendors and the efforts required to present notice to the Class in this Action, Plaintiffs' counsel ultimately selected Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the proposed Settlement Administrator, pending the Court's approval. Nutramax has raised no objections or concerns with Epiq's selection as Settlement Administrator (pending the Court's approval).

30. Nutramax has agreed to pay all administrative costs related to the settlement in addition to the amount that represents the Settlement Fund. Thus, the ultimate costs for administration of the Proposed Settlement will *not* be paid from or impact the Settlement Fund and the benefits to Class Members.

31. The Parties also cooperatively considered the *cy pres* recipient. Recognizing its unique mission, which was particularly relevant to the facts of this case, the Parties jointly selected Valor Service Dogs as the proposed *cy pres* recipient, pending the Court's approval.

32. Valor Service Dogs is a national, non-profit organization that "helps wounded post-9/11 veterans and first responders regain their independence, return to civilian life, and maintain successful partnerships through the training and placing of mobility assistance and PTSD service dogs." https://valorservicedogs.org (last accessed July 28, 2025).

33. Plaintiffs' counsel do not have any interest in or pre-existing relationship with the proposed *cy pres* recipient. Plaintiffs' counsel also has confirmed that none of the named Plaintiffs have any interest in or relationship with the proposed *cy pres* recipient.

### *Contributions of Class Representatives*

34. Each of the named Plaintiffs have expended serious time and effort in helping Plaintiffs' counsel litigate this case. Throughout this six-year litigation, they have maintained an active role in the litigation to ensure that all Class Members' interests are protected.

35. Prior to both filing the original complaint and amending the complaint, each named Plaintiff provided extensive information regarding their purchase of Cosequin® Products. Each of the Plaintiffs reviewed and approved these filings.

36. During discovery, each of the Plaintiffs carefully reviewed discovery requests directed to them, spoke extensively with Plaintiffs' counsel regarding these requests, performed a diligent and exhaustive search to comply with these requests, and, where applicable, produced documents in response to these requests.

37. Moreover, each of the named Plaintiffs spent significant time preparing for their depositions, working closely with Plaintiffs' counsel to review all relevant filings, their discovery responses, and any document productions that may be addressed during a deposition. And each of them sat for a deposition.

38. Indeed, in recognition of the named Plaintiffs' efforts and contributions to this Action, the Court has already appointed them as Class Representatives. ECF No. 146, at 36.

39. The Plaintiffs' active roles continued during negotiations of the Settlement. These named Plaintiffs remained in regular contact with Plaintiffs' counsel regarding the status of potential settlement. The Plaintiffs, where necessary, asked questions and discussed specific

terms of the Proposed Settlement, to ensure the interests of all Class Members affected by the Settlement were protected. And ultimately, each of the Plaintiffs carefully reviewed the Proposed Settlement, including discussing it with Plaintiffs' counsel, before signing and executing the Settlement Agreement.

40. Given the substantial discovery undertaken in this six-year long litigation, each of the named Plaintiffs have spent many hours reviewing, preparing for, and contributing to the prosecution of this case on behalf of impacted consumers. In light of this significant commitment of time, effort, and dedication to the interests of absent class members, Plaintiffs' counsel believe it is appropriate under applicable law that each of the named Plaintiffs (the already-appointed Class Representatives) be awarded an incentive award in the amount of $7,500 each. If awarded, this award would be paid by Nutramax from the net Settlement Fund.

41. At no point were any of the named Plaintiffs ever promised any such award, nor did either condition their representation, service, or support on the expectation of receiving money. Further, Plaintiffs' counsel did not promise or guarantee any named Plaintiff (or any other Class Member or potential class member) that they would receive such an award.

### *Attorneys' Fees and Costs*

42. The Parties did not discuss fees or expenses until after negotiating the material terms of the Settlement.

43. Plaintiffs' counsel has diligently tracked their time and expenses throughout the case and will continue to do so through the remainder of this Action.

44. Plaintiffs' counsel expects to spend significant additional time throughout the approval process, notice, and claims administration.

45. Plaintiffs' counsel will separately move the Court for an order of Attorneys' Fees and Expenses for $3,795,000, which is equivalent to 33% of the Settlement Fund.

46. Plaintiffs' counsel intend to present for the Court a detailed report of their time, lodestar, and expenses when formally seeking an Attorneys' Fees and Expenses award.

### *Efforts and Qualifications of Class Counsel*

47.   Plaintiffs are represented by Milberg Coleman Bryson Phillips Grossman PLLC ("Milberg") and Levin Papantonio. The Court has already appointed Milberg and Levin Papantonio as Class Counsel. ECF No. 146, at 36.

48.   Plaintiffs' counsel previously presented their firm resumes for the Court's consideration. *See* ECF No. 145. Should the Court require Plaintiffs' counsel to present updated firm resumes, they would be happy to do so.

49.   This Action required a considerable amount of effort and resources expended jointly by Milberg and Levin Papantonio. Prior to filing the original complaint, Plaintiffs' counsel performed extensive research regarding the facts and potential claims, and developing the legal theories Plaintiffs pursued. Plaintiffs' counsel also expended great time and effort working closely with the Plaintiffs, as well as in preparing and issuing discovery requests and reviewing discovery responses and Nutramax's considerable document production.

50.   The Court properly recognized Milberg's and Levin Papantonio's significant class action knowledge and experience, as well as their substantial work in supporting this litigation on behalf of Plaintiffs and the Class, when appointing them as Class Counsel. ECF No. 146, at 36. They will continue to bring to bear their knowledge and experience in support of the certified Class. It is therefore appropriate for the Court to maintain Plaintiffs' counsel as Class Counsel through the approval and administration of this Settlement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28th day of July, 2025, at Knoxville, Tennessee.

/s/ *Adam A. Edwards*
Adam A. Edwards