UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN LYTLE, et al., Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>NUTRAMAX LABORATORIES, INC., et al.,<br><br>Defendants. | Case No. ED CV 19-0835 FMO (SPx)<br><br>**ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

Having reviewed and considered all the briefing filed with respect to plaintiffs' Amended Motion for Preliminary Approval of Class Action Settlement (Dkt. 213, "Motion"), and the oral argument presented at the hearings on October 30, 2025, and January 8, 2026, the court concludes as follows.

## BACKGROUND

On October 11, 2019, Justin Lytle ("Lytle") and Christine Musthaler ("Musthaler") (collectively "plaintiffs"), on behalf of themselves and all others similarly situated, filed the operative Second Amended Complaint ("SAC") against Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. (collectively "Nutramax" or "defendants"), asserting claims for: (1) violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; and (2) violations of various state consumer protection laws. (See Dkt. 53, SAC at ¶¶ 142-169).

Defendants research, develop, manufacture, and sell supplements for both humans and household pets, including Cosequin canine joint health supplements that contain glucosamine and chondroitin ("Gl/Ch") as the main active ingredient. (See Dkt. 53, SAC at ¶¶ 2, 17). Plaintiffs allege that in marketing Cosequin, defendants "make incomplete and inaccurate claims – both in advertising and on the packaging and packages – that would mislead and have in fact misled reasonable consumers into purchasing, using, and continuing to use [Cosequin] Products." (Id. at ¶ 1). According to plaintiffs, defendants' joint health claims "are refuted by peer-reviewed, randomized, controlled clinical trials[.]" (Id.). Also, defendants' claims that Cosequin products "enhance joint flexibility and mobility and [] support or restore joint health" are unsupported "by any reliable science." (Id. at ¶ 5). Neither plaintiff "saw improvements in their pets" after giving them Cosequin, and both plaintiffs were "still in possession of unused" Cosequin at the time the SAC was filed. (Id. at ¶ 128). If not for defendants' misrepresentations, plaintiffs and the putative class members either "would not have bought" Cosequin or were charged a "price premium" above comparable generic products. (Id. at ¶ 123).

On May 6, 2022, the court granted plaintiffs' motion for class certification, (see Dkt. 146, Court's Order of May 6, 2022, at 35), and certified the following class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure[1] with respect to plaintiffs' claim under the CLRA:

> All persons residing in California who purchased during the limitations period the following canine Cosequin products for personal use: Cosequin DS Maximum Strength Chewable Tablets; Cosequin DS Maximum Strength Plus MSM Chewable Tablets; and Cosequin DS Maximum Strength Plus MSM Soft Chews.

(See id.). The court excluded from the class: defendants, defendants' officers, directors, agents or affiliates; defendants' past and present employees; and the judge who presides over the case. (See id. at 36). The court appointed Lytle and Musthaler as class representatives, and Milberg

---

[1] Unless otherwise indicated, all "Rule" references are to the Federal Rules of Civil Procedure.

2

Coleman Bryson Phillips Grossman, PLLC and Levin Papantonio Rafferty ("Levin Papantonio") as class counsel.  (See id.).

Defendants sought and obtained leave to appeal the court's class certification order pursuant to Rule 23(f).  (See Dkt. 213, Motion at 3); (Dkt. 213-1, Amended Declaration of Adam A. Edwards in Support of Motion for Preliminary Approval ("Edwards Decl.") at ¶ 16); (Dkt. 147, Order of the Ninth Circuit) (granting petition for permission to appeal).  After briefing and oral argument, the Ninth Circuit affirmed the court's order granting class certification.[2]  See Lytle v. Nutramax Laboratories, Inc., 114 F.4th 1011 (9th Cir. 2024).

The parties participated in a mediation on April 10, 2025, where they reached an agreement to settle in principle.  (See Dkt. 213, Motion at 3); (Dkt. 213-1, Edwards Decl. at ¶ 20).  Plaintiffs filed a Notice of Settlement on April 15, 2025.  (See Dkt. 196, Notice of Settlement).  Pursuant to the settlement, defendants will pay a non-reversionary gross settlement amount of $11.5 million, (see Dkt. 217-1, Exh. A, Agreement at § 2.33), which will be used to pay the class members, the class representatives' service awards, and attorney's fees and costs.  (Id. at §§ 2.33, 4.1, 10.1, 10.5).  The settlement provides for up to 33.33% of the gross settlement amount in attorney's fees, (id. at § 10.1); (Dkt. 213, Motion at 8), and an incentive payment of $7,500 for each plaintiff.  (See Dkt. 217-1, Exh. A, Agreement at § 10.5).  The proposed settlement administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), will be paid by defendants directly, and not out of the settlement fund.  (Dkt. 217-1, Exh. A, Agreement at §§ 2.2, 4.1, 6.4); (Dkt. 213, Motion at 5); (Dkt. 213-1, Edwards Decl. at ¶ 30).  The applicable limitations period is from May 3, 2016, through May 6, 2022 ("Class Period").  (Dkt. 217-1, Exh. A, Agreement at §§ 1.2, 2.10).

Class members who timely submit valid claim forms may receive up to $25.00 per unit of Cosequin products purchased during the Class Period, with a maximum recovery of $150 for multiple Cosequin products purchased.  (Dkt. 217-1, Exh. A, Agreement at § 5.1.2).  Recovery is limited to one claim per household, which is defined as "all persons residing at the same physical address."  (Id. at § 5.1.3).  If the amount of valid claims exceeds the amount of the settlement

---

[2] Defendants also filed a petition for a writ of certiorari, which was denied by the U.S. Supreme Court.  (Dkt. 213-1, Edwards Decl. at ¶ 16).

fund, each payment will be reduced pro rata until the remaining settlements fund are exhausted. (See id. at § 5.2). Any such pro rata adjustment will be calculated before settlement funds are distributed. (See id.).

In addition to monetary relief, the settlement provides for injunctive relief. (Dkt. 217-1, Exh. A, Agreement at § 4.6). Under the settlement, defendants agree that they will not include the following statements on future packaging for the Cosequin products: "(1) Mobility, Cartilage and Joint Health Support;" (2) "Supports Mobility for a Healthy Lifestyle;" and (3) "Use Cosequin to help your pet Climb stairs, Rise and Jump!" (Id.). Defendants may use the statement, "Joint Health Supplement" on Cosequin products, and the settlement does not limit labeling of non-Cosequin products. (Id.).

In their Motion, plaintiffs seek an order: (1) preliminarily approving the proposed settlement agreement; (2) approving and directing notice to the settlement class through the proposed notice program; and (3) scheduling a final approval hearing. (See Dkt. 213, Motion at 21).

## LEGAL STANDARD

Rule 23 provides that "[t]he claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Just. v. Civ. Serv. Comm'n of the City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (internal quotation marks omitted).

Approval of a class action settlement requires a two-step process – preliminary approval and the dissemination of notice to the class, followed by a later final approval. See Spann v. J.C. Penney Corp. ("Spann II"), 314 F.R.D. 312, 319 (C.D. Cal. 2016). "[T]he showing at the preliminary approval stage – given the amount of time, money, and resources involved in, for example, sending out . . . class notice[] – should be good enough for final approval." Id.; see also 4 Newberg on Class Actions § 13:10 (6th ed. 2024) ("[S]ending notice to the class costs money

and triggers the need for class members to consider the settlement, actions which are wasteful if the proposed settlement [is] obviously deficient from the outset."). The court may grant preliminary approval and direct notice in a reasonable manner to all class members who would be bound by the settlement if the parties provide sufficient information to show that the court will likely be able to: (1) "approve the proposal under Rule 23(e)(2);" and (2) "certify the class for purposes of judgment on the [settlement] proposal." Fed. R. Civ. P. 23(e)(1)(B); see Macy v. GC Servs. Ltd. P'ship, 2019 WL 6684522, *1 (W.D. Ky. 2019) ("The standard for preliminary approval was codified in 2018, with Rule 23 now providing for notice to the class upon the parties' showing that the court will likely be able to approve the proposed settlement under the final-approval standard contained in Rule 23(e)(2).") (internal quotation marks omitted); 4 Newberg on Class Actions § 13:10 (6th ed. 2024) ("In 2018, Congress codified this approach into Rule 23. Rule 23(e)(1)(B) now sets forth the grounds for the initial decision to send notice of a proposed settlement to the class[.]").

"At this stage, the court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." Spann II, 314 F.R.D. at 319 (internal quotation marks omitted); see Bronson v. Samsung Elecs. Am., Inc., 2019 WL 5684526, *7 (N.D. Cal. 2019) (same); see also 2018 Adv. Comm. Notes to Rule 23(e)(1) Amendments (The types of information that should be provided to the court in deciding whether to send notice – i.e., that it will likely approve the settlement under Rule 23(e)(2) and certify the class for purposes of settlement – "depend on the specifics of the particular class action and proposed settlement." "[G]eneral observations" as to the types of information that should be provided include, but are not limited to, the following: (1) "the extent and type of benefits that the settlement will confer on the members of the class" and if "funds are . . . left unclaimed, the settlement agreement ordinarily should address the distribution of those funds"; (2) "information about the likely range of litigated outcomes, and about the risks that might attend full litigation"; (3) "[i]nformation about the extent of discovery completed in the litigation or

in parallel actions"; (4) "information about the existence of other pending or anticipated litigation on behalf of class members involving claims that would be released under the proposal"; (5) "[t]he proposed handling of an award of attorney's fees under Rule 23(h)"; (6) "any agreement that must be identified under Rule 23(e)(3)"; and (7) "any other topic that [the parties] regard as pertinent to the determination whether the proposal is fair, reasonable, and adequate.").

## DISCUSSION

I.   CLASS CERTIFICATION.

As noted above, the court previously certified a Rule 23(b)(3) class. (See Dkt. 146, Court's Order of May 6, 2022, at 35). The settlement agreement adopts and incorporates the certified class definition in the Court's Order of May 6, 2022.[3] (Dkt. 217-1, Exh. A, Agreement at § 1.1). The applicable Class Period is from May 3, 2016, through May 6, 2022. (Id. at §§ 1.2, 2.10). Given the court's prior determination, (see Dkt. 146, Court's Order of May 6, 2022, at 35), and that "no . . . significant developments have occurred[,]" (Dkt. 213, Motion at 17), the court need not revisit its prior certification order. See, e.g., Carter v. Anderson Merchandisers, LP, 2010 WL 1946784, *5 (C.D. Cal. 2010) ("The Court's certification of the Rule 23 California class was a final certification, and thus the Court need not revisit the certification of that class, absent any evidence suggesting a change in the Rule 23 factors."); Munoz v. Giumarra Vineyards Corp., 2017 WL 1293240, *5 (E.D. Cal. 2017) ("Because the Court previously determined the Rule 23 requirements were satisfied by these classes, and there has not been any change in circumstances, the Court need not re-evaluate the Rule 23 requirements, and simply affirms its prior orders."); Adoma v. University of Phoenix, Inc., 913 F.Supp.2d 964, 974 (E.D. Cal. 2012) (same).

---

[3] Plaintiffs note that, consistent with defendants' label changes over time, additional products beyond those listed in the certified class definition were sold as Cosequin products. (See Dkt. 213, Motion at 4 n. 3). Accordingly, under the settlement, class members may submit claim forms for purchases of any Cosequin product listed in the settlement agreement during the limitations period. (See id.); (Dkt. 217-1, Exh. A, Agreement at § 2.37).

II. **FAIRNESS, REASONABLENESS, AND ADEQUACY OF THE PROPOSED SETTLEMENT.**

A. The Settlement is the Product of Arm's-Length Negotiations.

Pursuant to Rule 23(e)(2)(B), the court must evaluate whether the settlement was negotiated at arm's length. Here, the settlement proceedings were supervised by a mediator and were conducted "in good faith and at arm's length." (Dkt. 213, Motion at 1, 10-11); (see Dkt. 213-1, Edwards Decl. at ¶¶ 19-20). The mediator "offered a reasonable, unbiased analysis of each Party's arguments, claims, and defenses[,]" (Dkt. 213, Motion at 10), which in turn assisted the parties in reaching a settlement. (See id.).

Based on the evidence and record before the court, the court is persuaded that the parties thoroughly investigated and considered their own and the opposing party's positions. The parties had a sound basis for measuring the terms of the settlement against the risks of continued litigation, and there is no evidence that the settlement is the product of fraud or overreaching by, or collusion between, the negotiating parties. See, e.g., Spann II, 314 F.R.D. at 323-25 (finding no evidence that a class action settlement was the product of fraud or collusion between the parties); Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) (affirming final approval of class action settlement where there was "no evidence of fraud, overreaching, or collusion").

B. The Amount Offered in Settlement Falls Within a Range of Possible Judicial Approval and is a Fair and Reasonable Outcome for Class Members.

1. **Recovery for Class Members.**

As noted above, class members will share in a non-reversionary gross settlement amount of $11.5 million. (See Dkt. 217-1, Exh. A, Agreement at §§ 2.33, 4.1). The settlement amount represents 67.2% of the estimated calculated damages ($17,112,007).[4] (See Dkt. 213, Motion

---

[4] Through a conjoint analysis, plaintiffs' damages expert estimated that on average customers probably paid 25% to 35% more (the "price premium") because the Cosequin products were marketed as a canine joint health supplement. (Dkt. 213, Motion at 13-14). Plaintiffs' counsel, with the aid of plaintiffs' expert, then reviewed defendants' wholesale sales data for California customers to get the total damages amount based on the estimated price premium. (Id.). "Applying a well-reasoned estimated price premium of 30%, Class Counsel calculated damages for the certified California Class at approximately $17,112,007." (Id. at 14).

at 14). Class members who submit valid claim forms may receive up to $25.00 per unit of Cosequin products purchased during the Class Period, with a maximum recovery of $150 for multiple Cosequin products purchased. (Dkt. 217-1, Exh. A, Agreement at § 5.1.2). Recovery is limited to one claim per household, which is defined as "all persons residing at the same physical address." (Id. at § 5.1.3). Recovery is also subject to a pro rata reduction if the total amount claimed exceeds the settlement fund. (See id. at § 5.2).

Under the circumstances, the court is persuaded that the settlement is fair, reasonable, and adequate, particularly when viewed in light of the risks, costs, and time associated with protracted litigation. See Fed. R. Civ. P. 23(e)(1)(B)(i) & (e)(2)(C)(i); 2018 Adv. Comm. Notes to Rule 23(e)(1) (noting the types of information that should be provided to the court deciding whether to grant preliminary approval includes, among other things: (1) "the extent and type of benefits that the settlement will confer on the members of the class"; and (2) "information about the likely range of litigated outcomes, and about the risks that might attend full litigation"). According to plaintiffs, the settlement amount "provides substantial relief to the Class in the face of the inherent uncertainties of litigation[,]" including the fact that defendants continue to deny that they misrepresented any aspect of the Cosequin products, and may renew their motion for summary judgment if the settlement is not approved, creating the risk that plaintiffs claims could be dismissed or that they will not be able to maintain a class action. (Dkt. 213, Motion at 1, 11-13). Given the significant risks of litigation coupled with the delays associated with continued litigation, the court is persuaded that the settlement benefits to the class fall within the range of reasonableness. See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (holding that "the [s]ettlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, [was] fair and adequate"); Rodriguez, 563 F.3d at 964 (affirming settlement approval where the settlement represented 30% of the damages estimated by the class expert); In re Uber FCRA Litig., 2017 WL 2806698, *7 (N.D. Cal. 2017) (granting preliminary approval of settlement that was worth "7.5% or less" of the expected value); see also Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and

8

of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted).

    2.    **Release of Claims**.

The court must also consider whether the settlement contains an overly broad release of liability. See 4 Newberg on Class Actions § 13:15 (6th ed. 2024) ("Beyond the value of the settlement, courts have rejected preliminary approval when the proposed settlement contain[s] obvious substantive defects such as . . . overly broad releases of liability."); see, e.g., Fraser v. Asus Comput. Int'l, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying preliminary approval of proposed settlement that provided defendant a "nationwide blanket release" in exchange for payment "only on a claims-made basis[,]" without the establishment of a settlement fund or any other benefit to the class).

Here, class members who do not exclude themselves from the settlement will:

> release and forever discharge the Released Parties[5] from any liability for all claims of any nature whatsoever in law or in equity, past and present, and whether known or unknown, suspected or claimed, relating to or arising under any federal, state, local, or international statute, regulation, or law (including state consumer fraud, warranty, unjust enrichment laws, codal law, adjudication quasi-adjudication, tort claims, contract claims, actions, causes of action, declaratory judgment actions, cross-claims, counterclaims, third-party claims, demands, and claims for damages, compensatory damages, liquidated damages, punitive damages, exemplary damages, multiple damages, and other noncompensatory damages or penalties of any kind, fines, equitable relief, injunctive relief, conditional or other payments or interest of any type, debts, liens, costs, expenses, and/or attorneys' fees,

---

[5] The Released Parties include: Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc., along with their parent(s), and each of their predecessors, affiliates, assigns, successors, related companies, subsidiary companies, holding companies, insurers, reinsurers, current and former attorneys, and their current and former members, partners, officers, directors, agents, and employees. (Dkt. 217-1, Exh. A, Agreement at § 2.31).

interest, or liabilities) that have been or could have been brought regarding representations relating to joint health or mobility in connection with Nutramax's distribution, labeling, packaging, marketing, advertising, and/or sale of the Cosequin Products during the applicable Class Period[.]"

(Dkt. 217-1, Exh. A, Agreement at § 9.1) (footnote added).

With the understanding that, under the release, settlement class members are not giving up any claims unrelated to those asserted in this action, the court finds that the release adequately balances fairness to absent class members and recovery for the class with defendants' business interest in ending this litigation. See Fraser, 2012 WL 6680142, at *4 (recognizing defendant's "legitimate business interest in 'buying peace' and moving on to its next challenge" as well as the need to prioritize "[f]airness to absent class member[s]").

### C. The Settlement Agreement Does Not Improperly Grant Preferential Treatment to the Class Representatives.

Pursuant to Rule 23(e)(2)(D), the court must evaluate whether the settlement "treats class members equitably relative to each other." The Ninth Circuit has "repeatedly held that reasonable incentive awards to class representatives are permitted," In Re Apple Inc. Device Performance Litig., 50 F.4th 769, 785 (9th Cir. 2022) (internal quotation marks omitted), and has instructed "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013). The court must examine whether there is a "significant disparity between the incentive awards and the payments to the rest of the class members" such that it creates a conflict of interest. See, e.g., id. at 1165 (noting that the court cast doubt, but did not rule on, "whether class representatives could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement value when they would receive $5,000 incentive awards"). "In deciding whether [an incentive] award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998).

  Here, the settlement agreement provides for a service payment of up to $7,500 for each plaintiff. (See Dkt. 217-1, Exh. A, Agreement at § 10.5). Plaintiffs "played a vital role" throughout this case, including reviewing pleadings and other filings; engaging in regular discussions with counsel over a period of more than six years; responding to discovery and producing documents; preparing for and sitting for depositions; actively participating in the approval of settlement terms; and "ensuring the interests of putative class members were protected." (Dkt. 213, Motion at 8-9); (see Dkt. 213-4, Declaration of Justin Lytle in Support of Settlement ("Lytle Decl.") at ¶ 2); (Dkt. 213-5, Declaration of Christine Musthaler in Support of Settlement ("Musthaler Decl.") at ¶ 2). Under the circumstances, the court finds that the requested incentive payments are reasonable.

  D. <u>Class Notice and Notification Procedures</u>.

  Upon settlement of a certified class, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information. See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

  "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." <u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.</u>, 396 F.3d 96, 113 (2d Cir. 2005), <u>superseded by rule on other grounds by</u>, <u>Moses v. N.Y. Times Co.</u>, 79 F.4th 235, 243 (2d Cir. 2023); <u>Low v. Trump Univ., LLC</u>, 881 F.3d 1111, 1117 (9th Cir. 2018) ("The yardstick against which we measure the sufficiency of notices in class action proceedings is one of reasonableness.") (internal quotation marks omitted). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." <u>Churchill Vill., L.L.C. v. Gen. Elec.</u>, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks omitted); see also <u>Gooch v. Life Invs. Ins. Co. of Am.</u>, 672 F.3d 402, 423 (6th Cir. 2012) (noting settlement notices "are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, [and] that any class member may appear and be heard at the hearing[.]")

(internal quotation marks omitted). The notice should provide sufficient information to allow class members to decide whether they should accept the benefits of the settlement, opt out and pursue their own remedies, or object to the terms of the settlement but remain in the class. See In re Integra Realty Res., Inc., 262 F.3d 1089, 1111 (10th Cir. 2001) ("The standard for the settlement notice under Rule 23(e) is that it must 'fairly apprise' the class members of the terms of the proposed settlement and of their options.") (internal quotation marks omitted).

Here, class members will receive notice either via email, or through publication in various newspapers, digital advertising, and via a long-form notice on the settlement website (collectively, "Notices"). (See Dkt. 213, Motion at 20-21); (Dkt. 217-1, Exh. A, Agreement at § 2.23); (id., Exh. A-1, Publication Notice at ECF 55); (id., Exh. A-2, Email Notice at ECF 57-58); (id., Exh. A-3, Posted Notice at ECF 60-67); (Dkt. 213-3, Declaration of Cameron R. Azari, Esq. ("Azari Decl.") at ¶¶ 24-43); see also Cal. Gov't Code § 6064. The Notices describe the nature of the action and the claims asserted in the operative complaint. (Dkt. 217-1, Exh. A-1, Publication Notice at ECF 55); (id., Exh. A-2, Email Notice at ECF 57); (id., Exh. A-3, Posted Notice at ECF 60-61); see also Fed. R. Civ. P. 23(c)(2)(B)(i) & (iii). They provide the definitions of the classes, (see Dkt. 217-1, Exh. A-1, Publication Notice at ECF 55); (id., Exh. A-2, Email Notice at ECF 57); (id., Exh. A-3, Posted Notice at ECF 60); see also Fed. R. Civ. P. 23(c)(2)(B)(ii), and explain the terms of the settlement, including the settlement amount, the distribution of that amount, and the release, as well as the proposed attorney's fees and expenses, and incentive payments. (See Dkt. 217-1, Exh. A-1, Publication Notice at ECF 55); (id., Exh. A-2, Email Notice at ECF 57-58); (id., Exh. A-3, Posted Notice at ECF 60-65). The Posted Notice includes an explanation that lays out the class members' options under the settlement: they may remain in the class, object to the settlement but still remain in the class, or exclude themselves from the settlement and pursue their claims separately against defendant. (See id., Exh. A-3, Posted Notice at ECF 64-67); see also Fed. R. Civ. P. 23(c)(2)(B)(v) & (vi). Finally, the Posted Notice explains the procedures for objecting to the settlement and provides information about the Final Fairness Hearing. (See Dkt. 217-1, Exh. A-3, Posted Notice at ECF 65-67).

Based on the foregoing, the court finds there is no alternative method of distribution that would be more practicable here, or any more reasonably likely to notify the class members. In addition, the court finds that the procedure for providing notice and the content of the class Notices constitute the best practicable notice to class members and comply with the requirements of due process.

E.      Summary.

The court's preliminary evaluation of the settlement does not disclose grounds to doubt its fairness "such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, . . . or excessive compensation for attorneys." Manual for Complex Litig. § 21.632 at 321 (4th ed. 2023); see also Spann II, 314 F.R.D. at 323 (same).

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiffs' Amended Unopposed Motion for Preliminary Approval of Class Action Settlement **(Document No. 213)** is **granted** upon the terms and conditions set forth in this Order.

2. The court preliminarily appoints plaintiffs Justin Lytle and Christine Musthaler as class representatives for settlement purposes.

3. The court preliminarily appoints Milberg Coleman Bryson Phillips Grossman, PLLC and Levin Papantonio as class counsel for settlement purposes.

4. The court preliminarily finds that the terms of the settlement are fair, reasonable and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

5. The court approves the form, substance, and requirements of the proposed notice plan. (Dkt. 217-1, Exh. A, Agreement at § 2.23); (id., Exh. A-1, Publication Notice at ECF 55); (id., Exh. A-2, Email Notice at ECF 57-58); (id., Exh. A-3, Posted Notice at ECF 60-67). The proposed manner of notice of the settlement set forth in the settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

6. The court appoints Epiq as settlement administrator. Epiq shall complete dissemination of class notice, in accordance with the proposed notice plan, no later than **March 23, 2026**.

7. Plaintiffs shall file a motion for attorney's fees and costs, as well as any incentive payments, no later than **April 23, 2026**, and notice it for hearing for the date of the final approval hearing set forth below.

8. Any class member who wishes to either (a) object to the settlement, including the requested attorney's fees, costs and incentive awards, or (b) exclude him or herself from the settlement, must file his or her objection to the settlement or request exclusion no later than **June 22, 2026**, in accordance with the notice plan and this Order.

9. Plaintiffs shall, no later than **July 13, 2026**, file and serve a motion for final approval of the settlement and a response to any objections to the settlement. The motion shall be noticed for hearing for the date of the final approval hearing set forth below.

10. Defendants may file and serve a memorandum in support of final approval of the settlement Agreement and/or in response to objections no later than **July 20, 2026.**

11. Any class member who wishes to appear at the final approval (fairness) hearing, either on his or her own behalf or through an attorney, to object to the settlement, including the requested attorney's fees, costs or incentive awards, shall, no later than **July 27, 2026**, file with the court a Notice of Intent to Appear at Fairness Hearing.

12. A final approval (fairness) hearing is hereby set for **August 13, 2026**, at **10:00 a.m.** in Courtroom 6D of the First Street Courthouse, to consider the fairness, reasonableness, and adequacy of the Settlement Agreement as well as the award of attorney's fees and costs to class counsel, and incentive awards to the named plaintiffs.

13. All proceedings in the Action, other than proceedings necessary to carry out or enforce the settlement Agreement or this Order, are stayed pending the final fairness hearing and the court's decision whether to grant final approval of the settlement.

Dated this 2nd day of February, 2026.

/s/
Fernando M. Olguin
United States District Judge