# EXHIBIT 1

Adam A. Edwards (*pro hac vice*)
aedwards@milberg.com
**MILBERG COLEMAN**
**BRYSON PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049

*Attorneys for Plaintiffs and the Proposed*
*Settlement Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN LYTLE, et al., Individually and on Behalf of all Others Similarly Situated, | CASE NO. ED CV 19-0835 FMO (SPx) |
| Plaintiffs, | **DECLARATION OF ADAM A. EDWARDS IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS** |
| v. | |
| NUTRAMAX LABORATORIES, INC., et al., | |
| Defendants. | |

Adam A. Edwards declares:

1.     I, along with other Class Counsel, represent Plaintiffs Justin Lytle and Christine Musthaler ("Plaintiffs" or "Class Representatives") in the above-captioned class action. I have worked on this case since it was first filed in May 2019 through to the present. Along with co-counsel, I have led Plaintiffs' efforts, on behalf of Class Members, in this case and have been preliminarily appointed Class Counsel for settlement purposes. I have personal knowledge of all matters addressed in this Declaration.

2.     Following years of litigation, the Parties negotiated and reached a settlement, which this Court preliminarily approved on February 2, 2026 (the "Settlement"). Order, ECF No. 218 (the "Preliminary Approval Order"). In the Preliminary Approval Order, the Court preliminarily appointed Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg") and Levin Papantonio as Class Counsel for settlement purposes.[1] *Id.* ¶ 3. The Court also preliminarily appointed Justin Lytle and Christine Musthaler as Class Representatives for settlement purposes. *Id.* ¶ 2.

3.     Given the significant amount of effort and resources expended in this multi-year litigation and the favorable results obtained, which ensure purchasers of the Cosequin® Products will receive meaningful cash benefits, I offer this Declaration in support of Plaintiffs' Motion for Attorneys' Fees and Costs and Class Representative Service Awards. In support, I include: (1) an overview of the litigation, (2) an updated listing of my qualifications, (3) an overview of Class Counsel's efforts and expenditures of time and costs during the litigation, and (4) an overview of the named Plaintiffs' efforts throughout this litigation.

### ***Overview of This Litigation***

4.     Throughout the litigation, Defendants Nutramax Laboratories, Inc. and

---

[1] Additionally, Daniel L. Warshaw, of Pearson Warshaw, LLP, served as local counsel on behalf of Class Counsel in this case.

DECLARATION OF ADAM A. EDWARDS IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS

Nutramax Laboratories Veterinary Sciences, Inc. (collectively, "Nutramax") have vehemently denied Plaintiffs' allegations and continue to deny that the Cosequin® Products are marketed, packaged, or labeled in a misleading manner.

5.    Throughout all phases of this litigation, Milberg has undertaken an enormous amount of work, effort, and expense and devoted whatever resources necessary to see this Action through to a successful outcome. Milberg, thus far in this litigation, which has spanned nearly seven years, has invested 2,241.1 total hours, and expended $249,170.43 in total costs, in this pursuit.

6.    Class Counsel pledge to continue this work, effort, and expenditure through to the final approval of this Settlement, including through the remainder of the Settlement administration and distribution process.

7.    Prior to first filing, Class Counsel engaged in substantial research and hard fought motion practice. For example, prior to filing, Class Counsel performed extensive research regarding the Cosequin® Products, working closely with consulting experts regarding whether the products' claims regarding canine joint health were potentially misleading. After the filing of the Complaint, Plaintiffs amended as of right based upon an early meet-and-confer with Nutramax. The Parties fully briefed two motions to dismiss and a motion to strike the national class allegations, and Plaintiffs amended their complaint twice. Class Counsel engaged in similar efforts regarding each amendment. The Court denied Nutramax's motions as to Plaintiff's CLRA claim and transferred the action to this Court. *See* ECF Nos. 61, 66.

8.    After the pleadings closed in December 2019, the Parties began to engage in discovery. Class Counsel served 34 interrogatories, 31 requests for admission and 150 requests for production of documents to each Nutramax Defendant, which included extensive meet-and confer efforts with Nutramax's counsel and negotiation of both an ESI protocol and Protective Order. Likewise, Nutramax served requests for admission, three sets of interrogatories, and five sets of

2

DECLARATION OF ADAM A. EDWARDS IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS

requests for production of documents to each of the named Plaintiffs, which they each responded to. Nutramax produced approximately 12,000 documents, totaling more than 50,000 pages, many of which were highly scientific, which Class Counsel reviewed.

9.    Further, Class Counsel issued subpoenas for the production of relevant sales and price data to various third-party retailers, who sold the Cosequin® Products at issue as well as comparator products. Class Counsel's subpoena to IRI for comparator products alone resulted in production of a dozen spreadsheets comprised of more than 2.3 million rows of sales and price data that had to be reviewed and analyzed. The IRI data for Nutramax sales and pricing comprised an additional 191,000 rows and 130 columns (24.8 million cells) of data for attorney and expert analysis. Class Counsel engaged in extensive meet-and-confer efforts regarding these third-party subpoenas and reviewed all documents produced pursuant to those subpoenas. Defendants also issued third-party subpoenas, including subpoenas to Amazon, PetSmart, Ralph's Supermarkets and to Plaintiffs' respective veterinary care providers.

10.    The Parties also engaged in 21 depositions. Class Counsel took depositions of Nutramax's identified Rule 30(b)(6) designees and other Nutramax-affiliated and third-party fact witnesses, including:

a. Elizabeth Barrett – a third-party marketing consultant involved in Cosequin® consumer market research;

b. Jeffrey Creech – Nutramax's Chief Operating Officer and Rule 30(b)(6) designee;

c. David Griffin, DVM – Nutramax's Vice President of Innovation;

d. Susanne Kempf – Project Manager for the Cosequin® brand;

e. Eric Linn – Nutramax's Director of Regulatory Compliance;

f. David Moore – Nutramax's Vice President of Sales and Rule 30(b)(6) designee;

3

DECLARATION OF ADAM A. EDWARDS IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS

g.  Godwin Omorogieva – Nutramax's Vice President of Quality; and

h.  Rachel Tuz – Plaintiff Musthaler's veterinarian.

11.  Nutramax took both Plaintiffs' depositions as well as the deposition of Pam Lytle (Plaintiff Justin Lytle's mother). Class Counsel worked closely with each Plaintiff to prepare them for deposition, including closely reviewing all discovery responses and produced documents relating to each Plaintiff. Class Counsel defended each Plaintiff's deposition.

12.  Class Counsel undertook testing of the Cosequin® Products as it related to their allegations. The case also included extensive review of the scientific literature on canine joint health and joint health supplements. In addition to the numerous scientific publications cited on Nutramax's website, Class Counsel reviewed more than 175 scientific publications in preparing the case and deposing fact and expert witnesses.

13.  The Parties also engaged in significant expert discovery. Class Counsel worked with their liability and damages experts, overseeing their review of pertinent documents and working closely with the experts as they drafted their reports. Class Counsel prepared each expert for deposition by Nutramax, including closely reviewing documents and relevant expert reports. Class Counsel defended each deposition of their experts and deposed Nutramax's experts, which required significant preparation. For example, Nutramax's expert reports totaled more than 3,500 pages (excluding additional documents produced in advance of depositions). Expert depositions taken by the Parties included:

a.  Howard Beales – Nutramax's expert on claim substantiation and advertising regulations;

b.  Randolph Bucklin – Nutramax's economics and damages rebuttal expert;

c.  George Dodge – Nutramax's expert on veterinary medicine and claims substantiation for glucosamine/chondroitin formulations;

4

DECLARATION OF ADAM A. EDWARDS IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS

d. Bernard Jansen – Nutramax's social media expert opining on traffic to Nutramax websites nationally and within California;

e. Denis Marcellin-Little – Nutramax's expert on canine orthopedic medicine and medical interventions;

f. Carol Scott – Nutramax's consumer market survey and marketing expert (two reports);

g. Olivier Toubia – Nutramax's economics and damages expert (two reports);

h. Jean-Pierre Dubé – Plaintiffs' expert on economics and damages (two reports; proposed a conjoint analysis which was necessary to prove damages could be calculated in this case and obtain class certification);

i. Richard Evans – Plaintiffs' expert on statistics (analyzed scientific studies to support Plaintiffs' claim that Nutramax's product labels contained statements that were not supported by scientific evidence);

j. Bruce Silverman – Plaintiffs' marketing expert (prepared a report to support Plaintiffs' contention that a reasonable consumer would be misled by such labeling); and

k. Steve Budsberg – Plaintiffs' expert in veterinary orthopedics and study design (analyzed medical and scientific studies to support Plaintiffs' claim that Nutramax's product labels contained statements that were not supported by scientific evidence).

14. Class Counsel then moved for class certification. *See* ECF No. 91-94. In so moving, Class Counsel carefully reviewed all relevant discovery, combing through thousands of documents and consulting with their experts, to draft the Motion for Class Certification and related filings (including *Daubert* motions and full briefing on Plaintiffs' experts Jean-Pierre Dube and Bruce Silverman). Nutramax opposed that

5

DECLARATION OF ADAM A. EDWARDS IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS

motion, and the Parties fully briefed the issues for the Court via a joint brief that the Parties submitted. ECF No. 92. Although Class Counsel noticed the Motion for Class Certification for a hearing, the Court *sua sponte* vacated the hearing on the Motion and placed it under submission. ECF No. 108.

15.    Nutramax also moved for summary judgment and brought various motions *in limine* to exclude expert testimony. *See* ECF Nos. 128, 131, 135. Class Counsel opposed these motions, and the Parties briefed the issues for the Court via joint briefs that they submitted.

16.    Shortly thereafter, the Court granted certification, certifying a class of California consumers and appointing Plaintiffs' counsel as Class Counsel and the named Plaintiffs as Class Representatives. ECF No. 146.

17.    Following certification, Nutramax sought permission from the Ninth Circuit to appeal that Court's order pursuant to Rule 23(f). Class Counsel responded to this request to appeal, which the Ninth Circuit granted. The Parties then fully briefed the issues of class certification on appeal. Oral argument was held and, ultimately, the Ninth Circuit affirmed class certification. ECF Nos. 157, 160. Nutramax sought review in the Supreme Court of the United States via a petition for certiorari, which was denied.

18.    Upon remand of the case to the district court, Plaintiffs' counsel drafted a proposed Notice Plan to provide notice to the certified Class Members. ECF No. 165.

19.    At that point, the Parties re-opened informal settlement negotiations after having reached an impasse at mediation earlier in the case. Shortly thereafter, the Parties agreed to mediate before the Honorable David Duncan, a respected, experienced mediator that the Parties jointly selected.

### Settlement Negotiations and Mediation

20.    On October 6, 2018, the Parties attended mediation with the Honorable Dickran Tevrizian. This mediation did not result in settlement.

6

DECLARATION OF ADAM A. EDWARDS IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS

21. Following further litigation, on April 10, 2025, the Parties attended mediation with the Honorable David Duncan. Judge Duncan scrutinized the Parties' claims and defenses, working cooperatively with the Parties to help them reach a resolution. Following these efforts, the Parties reached an agreement in principle to settle, with the aid of Judge Duncan.

22. Following the mediation, the Parties continued to finalize the Proposed Settlement, while ensuring that it continued to align with their agreement in principle. On July 28, 2025, the Parties finalized and fully executed the Settlement. This Settlement, which this Court preliminarily approved (ECF No. 218), was filed as Exhibit 1 to the Amended Declaration of Class Counsel in Support of Preliminary Approval of Class Action Settlement (ECF No. 213-2).

23. The Settlement provides for a total net fund of $11,500,000, providing Class Members who submit a valid claim up to $25.00 per unit of Cosequin® Product purchased in California during the Class Period. Class Members may submit a claim for multiple purchased units, with a maximum compensation of up to $150.00 for multiple purchased units of Cosequin® Products per household.

### *Settlement Administrator and* Cy Pres *Selection*

24. In preparation for filing for preliminary approval of the Proposed Settlement and direction of notice to the proposed Settlement Class, the Parties considered multiple experienced notice and settlement administration vendors, fielding bids from three vendors.

25. Following review of materials and meetings with each of the potential vendors, and considering the costs associated with these vendors and the efforts required to present notice to the Class in this Action, Class Counsel ultimately selected Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the proposed Settlement Administrator. Nutramax raised no objections or concerns with Epiq's selection as Settlement Administrator, and this Court appointed Epiq as the Settlement Administrator in the Preliminary Approval Order. ECF No. 218 at ¶ 6.

7

26.    Nutramax has agreed to pay all administrative costs related to the settlement in addition to the amount that represents the Settlement Fund. Thus, the ultimate costs for administration of the Proposed Settlement will not be paid from or impact the Settlement Fund and the benefits to Class Members.

27.    The Parties also cooperatively considered the *cy pres* recipient. Recognizing its unique mission, which was particularly relevant to the facts of this case, the Parties jointly selected Valor Service Dogs as the proposed *cy pres* recipient, pending the Court's approval.

28.    Valor Service Dogs is a national, non-profit organization that "helps wounded post-9/11 veterans and first responders regain their independence, return to civilian life, and maintain successful partnerships through the training and placing of mobility assistance and PTSD service dogs." https://valorservicedogs.org (last accessed April 21, 2025).

29.    Class Counsel do not have any interest in or pre-existing relationship with the proposed *cy pres* recipient. Class Counsel also has confirmed that none of the named Plaintiffs have any interest in or relationship with the proposed *cy pres* recipient.

30.    Class Counsel worked extensively to draft the Motion for Preliminary Approval of Class Settlement, a Declaration of Class Counsel in support of that motion, and Declarations of each named Plaintiff in support of that motion. ECF Nos. 203, 203-1, 203-3, and 203-4. On October 30, 2025, the Court held a hearing on that Motion, during which the Court identified certain issues concerning the proposed settlement that the Parties should further address. ECF No. 208. The Court denied the Motion without prejudice and granted the Parties leave to file a renewed motion for preliminary approval by December 4, 2025. ECF No. 210.

31.    Following that hearing, the Parties met and conferred to address the issues identified by the Court. On December 4, 2026, Class Counsel filed an Amended Motion for Preliminary Approval of Class Settlement, an Amended Declaration of

8

Class Counsel in support of that Motion, and Declarations of the named Plaintiffs in support of that Motion. ECF Nos. 213, 213-1, 213-4, 213-5. Class Counsel also worked with the Settlement Administrator to draft an Amended Declaration of Cameron R. Azari, Esq. Regarding Notice Plan in support of that Motion. ECF No. 213-3.

32. On February 2, 2026, the Court granted preliminary approval of the Settlement, approved the notice plan, preliminarily appointed Plaintiffs Justin Lytle and Christine Musthaler as Class Representatives, and preliminarily appointed Milberg and Levin Papantonio as Class Counsel for settlement purposes. ECF 218 at ¶¶ 2-5. The Court also established a schedule for final approval of the Settlement, including setting the Final Approval Hearing on August 13, 2026. *Id.* ¶ 12.

### *Contributions of Class Representatives*

33. Each of the named Plaintiffs have expended serious time and effort in helping Class Counsel litigate this case. Throughout this six-year litigation, they have maintained an active role in the litigation to ensure that all Class Members' interests are protected.

34. Prior to both filing the original complaint and amending the complaint, each named Plaintiff provided extensive information regarding their purchase of Cosequin® Products. Each of the Plaintiffs reviewed and approved these filings.

35. During discovery, each of the Plaintiffs carefully reviewed discovery requests directed to them, spoke extensively with Plaintiffs' counsel regarding these requests, performed a diligent and exhaustive search to comply with these requests, and, where applicable, produced documents in response to these requests.

36. Moreover, each of the named Plaintiffs spent significant time preparing for their depositions, working closely with Class Counsel to review all relevant filings, their discovery responses, and any document productions that may be addressed during a deposition. And each of them sat for a deposition.

37. Indeed, in recognition of the named Plaintiffs' efforts and contributions

9

to this Action, the Court appointed them as Class Representatives. ECF No. 146, at 36.

38.    The Plaintiffs' active roles continued during negotiations of the Settlement. These named Plaintiffs remained in regular contact with Class Counsel regarding the status of potential settlement. The Plaintiffs, where necessary, asked questions and discussed specific terms of the Proposed Settlement, to ensure the interests of all Class Members affected by the Settlement were protected. And ultimately, each of the Plaintiffs carefully reviewed the Proposed Settlement, including discussing it with Class Counsel, before signing and executing the Settlement Agreement.

39.    At no point were any of the named Plaintiffs ever promised any such award, nor did either condition their representation, service, or support on the expectation of receiving money. Further, Plaintiffs' counsel did not promise or guarantee any named Plaintiff (or any other Class Member or potential class member) that they would receive such an award.

40.    In the Preliminary Approval Order, the Court found that the requested service awards were reasonable under the circumstances in this Action. ECF No. 218 at 11.

41.    Given the substantial discovery undertaken in this six-year long litigation, each of the named Plaintiffs have spent many hours reviewing, preparing for, and contributing to the prosecution of this case on behalf of impacted consumers. In light of this significant commitment of time, effort, and dedication to the interests of absent class members, Plaintiffs' counsel believe it is appropriate under applicable law that each of the named Plaintiffs (the already-appointed Class Representatives) be awarded an incentive award in the amount of $7,500 each. If awarded, this award would be paid by Nutramax from the net Settlement Fund.

### *Efforts, Work, and Qualifications of Milberg*

42.    I am a Senior Partner at Milberg. I was first admitted to practice law in

10

DECLARATION OF ADAM A. EDWARDS IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS

2001 in Missouri (Bar No. 52734) and in 2004 in Tennessee (Bar No. 23253). I am a graduate of Washburn University School of Law (J.D., 2000) and the University of Tennessee, Knoxville (B.A., 1997). I also maintain admissions in various federal district and appellate courts nationwide, and am approved to practice law in England and Wales. I have been in private practice at Milberg since it was formed in 2021. Immediately prior to my work at Milberg, I was a Senior Partner of Greg Coleman Law PC, which merged with other firms to form Milberg. My practice focuses on representing plaintiffs in complex and class action litigation. I also have extensive trial experience, trying over 10 jury trials in my career.

43. I have been appointed Class Counsel or Settlement Class Counsel in numerous class actions, including, for example, *Tabak, et al. v. Apple, Inc.*, No. 4:19-cv-02455-JST, ECF No. 213 (N.D. Cal. Oct. 30, 2024); *Julian v. TTE Technology, Inc.*, No. 20-cv-02857, ECF No. 152 (N.D. Cal. Jan. 23, 2023); *Bailey v. Rite Aid Corp.*, No. 4:18-cv-6926, ECF No. 178 (N.D. Cal. Dec. 16, 2022); *Johnson v. Nissan N. Am., Inc.*, No. 17-cv-00517, 2022 WL 2869528 (N.D. Cal. July 21, 2022); *Koenig v. Vizio, Inc.*, No. BC702266, Order Granting Preliminary Approval (Cal. Sup. Ct., Cnty. of Los Angeles, Nov. 30, 2023).

44. In this Action, I have personally dedicated 878.8 hours on behalf of Plaintiffs and Class Members. Below is a summary of the key tasks I handled over the course of this litigation:

    a.    Along with other Class Counsel, I conducted intensive research and analysis as to the proper damages methodologies and to support our liability and damages theories.

    b.    Working extensively with economics and damages expert, Dr. Jean-Pierre Dube, to gather the appropriate data required to support his proposed damages methodology.

    c.    Preparing for and taking the depositions of multiple Nutramax witnesses.

DECLARATION OF ADAM A. EDWARDS IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS

d.  Preparing Dr. Dube for and defending him in his deposition.

e.  Conducting research and analysis as to the appropriate evidence needed to support our claims of materiality.

f.  Locating and working extensively with branding expert, Bruce Silverman.

g.  Preparing Mr. Silverman and defending him in his deposition.

h.  Reviewing and analyzing the rebuttal reports and supporting materials from defendant's experts challenging the opinions of Dr. Dube and Mr. Silverman.

i.  Preparing for and taking the depositions of Dr. Carol Scott and Dr. Olivier Toubia.

j.  Working closely with co-counsel to develop all appellate arguments related to damages.

k.  Alongside co-counsel, developing the strategy for Plaintiffs' motions practice (including for the drafting of Plaintiffs' opposition to the motions to dismiss, motion for class certification, and motions relating to the exclusion of experts) selection of experts, damages models, appellate briefing, settlement negotiations, and for approval and administration of the settlement.

l.  Alongside co-counsel, attending mediation and negotiating settlement.

m.  Acting as lead for all matters relating to the finalization of the Settlement Agreement and approval of the Settlement, including motions practice for approval; Class Counsel's oversight of the administration of the Settlement, notice, and claims processing; and attending all approval hearings.

45.  Additional Milberg attorneys and paralegals also contributed time and

12

DECLARATION OF ADAM A. EDWARDS IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS

work in this litigation. Because Milberg attorneys have been heavily involved in this litigation since its inception, Milberg attorneys' efforts include the work outlined above, contributing time, effort, and work in every stage of litigation. The background, experience, and biography of Adam Edwards, as well as background and successful results for the firm, are included in the Milberg Firm Résumé, attached as Exhibit A.

46.     Milberg has been named Class Counsel or Settlement Class Counsel in consumer class actions nationwide, including several in the Ninth Circuit. *See, e.g.*, *Tabak, et al. v. Apple, Inc.*, No. 4:19-cv-02455-JST, ECF No. 213 (N.D. Cal. Oct. 30, 2024) (approving $8,750,000 in fees and expenses); *Julian v. TTE Technology, Inc.*, No. 20-cv-02857, ECF No. 152 (N.D. Cal. Jan. 23, 2023) (approving $725,000 in fees and $148,085 in expenses in a $2,500,000 common fund settlement, to be paid separately from the common fund); *Bailey v. Rite Aid Corp.*, No. 4:18-cv-6926, ECF No. 178 (N.D. Cal. Dec. 16, 2022) (approving $361,666.66 in fee and expenses in an injunctive relief settlement); *Chess v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-07287, 2022 WL 4133300, at *10 (N.D. Cal. Sept. 12, 2022) (approving $992,533.80 in fees and $25,908.65 in expenses); *In re Yahoo! Inc. Customer Data Breach Sec. Litig.*, No. 16-md-02752, 2020 WL 4212811, at *45 (N.D. Cal. July 22, 2020) (approving $22,763,642.70 in fees and $1,477,609.54 in expenses); *Glenn v. Hyundai Motor Am.*, No. 8:15-cv-02052, ECF No. 272 (C.D. Cal. Aug. 26, 2019) (approving $5,400,000 in fees and $738,226 in expenses); *Roberts v. Electrolux Home Prods.*, No. SACV12-1644, 2014 WL 4568632, at *8 (C.D. Cal. Sept. 11, 2014) (approving $8,000,000 in fees and $627,000 in expenses in a settlement valued at $35,500,000, including approximately $15,800,000 in injunctive relief). Each of these actions has resulted in a settlement that has been finally approved.

47.     Courts in the Ninth Circuit and throughout the country have previously approved Milberg's billing rates based on the Adjusted *Laffey* Matrix and requested attorneys' fees. *E.g.*, *Bailey v. Rite Aid Corp.*, No. 4:18-cv-6926, ECF No. 178, at 9

13

(N.D. Cal. Dec. 16, 2022) (approving requested fees and holding that Milberg's rates were "commensurate with their experience and with the legal market in [the Northern District of California]"); *see also Spencer v. Knix Wear, Inc.*, No. 23-cv-07823, ECF No. 52 (S.D.N.Y. Apr. 24, 2024); *Comin v. Int'l Bus. Machines Corp. (IBM)*, No. 19-cv-07261, ECF No. 146 (N.D. Cal. Oct. 20, 2023); *Dickens v. Thinx, Inc.*, No. 22-cv-04286, ECF No. 56 (S.D.N.Y. June 8, 2023); *Julian v. TTE Technology, Inc.*, No. 20-cv-02857, ECF No. 152 (N.D. Cal. Jan. 23, 2023); *Chess v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-07287, 2022 WL 4133300, at *10 (N.D. Cal. Sept. 12, 2022); *Glenn v. Hyundai Motor Am.*, No. 8:15-cv-02052, ECF No. 272 (C.D. Cal. Aug. 26, 2019); *Roberts v. Electrolux Home Prods.*, No. SACV12-1644, 2014 WL 4568632, at *8 (C.D. Cal. Sept. 11, 2014); *Koenig v. Vizio, Inc.*, No. BC702266, Order Granting Preliminary Approval (Cal. Sup. Ct., Cnty. of Los Angeles, Nov. 30, 2023) (approving $9,975,000 in fees and expenses, subject to final approval).

### *Attorneys' Fees and Costs*

48.    The Parties did not discuss fees or expenses until after negotiating the material terms of the Settlement.

49.    Class Counsel has diligently tracked time throughout the case. As of April 23, 2026, Class Counsel in total has spent 3,868.8 hours litigating this Action, totaling $4,122,581.93 in lodestar. *See also* Declaration of Matthew D. Schultz ("Schultz Decl."); Declaration of Daniel L. Warshaw ("Warshaw Decl.").

50.    Further, as of April 23, 2026, Class Counsel has accrued $385,945.97 in total litigation expenses in this Action. *See also* Schultz Decl. ¶ 8.

51.    Although Class Counsel have completed the majority of their work in this case, Class Counsel will continue its work in this Action throughout the remainder of the approval process, notice and Settlement administration, and the distribution process. Class Counsel does not include the time and effort that will be expended in such future efforts in their request for attorneys' fees and expenses. Thus, Class Counsel's requested award for fees and expenses is inherently *conservative*, as Class

14

Counsel's total lodestar and expenses will continue to grow through the conclusion of this Action.

### *Milberg's Hours, Billing Rates, and Total Lodestar*

52.    Milberg has devoted significant time and resources to this case on behalf of Plaintiffs and the putative Class Members. Milberg has worked closely with other Class Counsel through all phases of litigation, including in motions practice, appearing before the Court, discovery, document review, depositions, working with experts, settlement negotiations, and overseeing notice and settlement administration. Given the substantial work involved and the technical complexities at issue, numerous Milberg attorneys have contributed to this case.

53.    Milberg has maintained contemporaneous time records in this case. Since 2019, senior partners, partners, senior associates, associates, and law clerks at Milberg spent more than 1,913 hours litigating this case. In addition, Milberg paralegals spent more than 155 hours providing necessary case support. The time spent by attorneys and staff of Milberg was reasonable and necessary. Indeed, by prosecuting this case purely on a contingent-fee basis and not being paid by the hour, Milberg attorneys and staff worked efficiently and avoided unnecessary work. Milberg attorneys were also forced to forgo other cases in order to manage the burdens of litigating this case.

54.    Milberg applies "Adjusted *Laffey* Rates" for billing purposes, which account for each billing professional's experience (typically based on the date of law school graduation), adjusted for inflation. For this request, Milberg has applied the 2026 Adjusted *Laffey* Rates (in effect for June 1, 2025, to May 31, 2026), as reflected in the "*Laffey* Matrix."[2]

55.    Each Milberg attorney's total hours spent on this case, their applicable billing rate, and their total lodestar for this case are included below.

---

[2] *Laffey* Matrix, http://www.laffeymatrix.com/see.html (last visited Apr. 21, 2026).

15

DECLARATION OF ADAM A. EDWARDS IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS

| Timekeeper | Position | Hours | Rate | Total |
|---|---|---|---|---|
| Edwards, Adam | Senior Partner | 878.8 | $1,227.00 | $1,078,287.60 |
| Coleman, Gregory* | Senior Partner | 75.8 | $1,227.00 | $93,006.60 |
| Breit, Mitchell | Senior Partner | 0.8 | $1,227.00 | $981.60 |
| Cohen, Jonathan* | Partner | 333 | $1,019.00 | $339,327.00 |
| Sigmon, Mark* | Partner | 326.6 | $1,141.00 | $372,650.60 |
| Ladnier, William | Partner | 192.5 | $1,019.00 | $196,157.50 |
| Hathaway, Andrew* | Partner | 56.8 | $829.00 | $47,087.20 |
| Stock, Arthur* | Partner | 32 | $1,227.00 | $39,264.00 |
| White, Lisa* | Partner | 17.2 | $759.00 | $13,054.80 |
| Geer, Martha* | Partner | 6.3 | $1,141.00 | $7,188.30 |
| Straus, Alex | Partner | 3.4 | $1,019.00 | $3,464.60 |
| Silvey, Mark* | Partner | 2.9 | $919.00 | $2,665.10 |
| Soffin, Rachel* | Partner | 1.8 | $759.00 | $1,366.20 |
| Wallace, Pat* | Partner | 1.5 | $468.00 | $702.00 |
| Whitener, Virginia | Senior Associate | 56.3 | $625.00 | $35,187.50 |
| Spangenburg, Sarah* | Associate | 56.8 | $381.00 | $21,640.80 |
| Davies, Kelsey* | Associate | 32.1 | $625.00 | $20,062.50 |
| Glaspie, Jeffrey* | Associate | 0.7 | $455.00 | $318.50 |
| Smartt, Ethan* | Associate | 0.5 | $455.00 | $227.50 |
| Holt, Dawn | Senior Litigation Specialist | 44.2 | $277.00 | $12,243.40 |

16

DECLARATION OF ADAM A. EDWARDS IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS

| | | | | |
|---|---|---|---|---|
| Bryant, Cathy* | Senior Litigation Paralegal | 60.8 | $258.00 | $15,686.40 |
| Heldman, Scott* | Paralegal | 23.1 | $258.00 | $5,959.80 |
| Maxwell, Lisa* | Paralegal | 11.7 | $258.00 | $3,018.60 |
| Pickett, Gina* | Paralegal | 9.4 | $206.00 | $1,936.40 |
| Pothier, Renee* | Paralegal | 11.7 | $208.00 | $2,433.60 |
| Spencer, Tara* | Paralegal | 2 | $206.00 | $412.00 |
| Steen, Jeff* | Paralegal | 2.4 | $258.00 | $619.20 |
| **Total:** | | **2,241.1** | | **$2,314,949.30** |

\* Timekeeper no longer employed with Milberg. Their billing rate is the last rate (based on *Laffey* matrix rates) applicable when they left the firm.

56.     In order to adjust Milberg's billing rates to align with the billing rates in the Los Angeles area and within this District, Milberg applies a 10.6% upward adjustment, which accounts for the increased cost of living in the Los Angeles, as compared to the Washington, D.C. area (where *Laffey* matrix rates are calculated).[3]

57.     This 10.6% upward adjustment applies to all Milberg timekeepers. Thus, Milberg increases it's total lodestar by 10.6% to account for this adjustment. Following this adjustment, Milberg's lodestar totals $2,560,333.93.

### Class Counsel's Total Hours and Lodestar

58.     Class Counsel covered all costs of litigation. Based upon the above accounting, as well as the accompanying Declarations of Matthew D. Shultz and

---

[3]     *See, e.g.,*    https://www.apartments.com/cost-of-living/washington-dc-vs-los-angeles-ca (last visited Apr. 22, 2026) (noting that the "cost of living in Los Angeles, CA is 10.6% higher").

17

Daniel L. Warshaw, Class Counsel's total lodestar (for Milberg, Levin Papantonio, and Pearson Warshaw) is included below:

| Firm | Hours | Lodestar |
|---|---|---|
| Milberg | 2,241.1 | $2,560,333.93 |
| Levin Papantonio | 1,745.5 | $1,664,570.00 |
| Pearson Warshaw, LLP | 53.9 | $74,602.50 |
| **Total:** | **4,040.5** | **$4,299,506.43** |

59.    This total lodestar calculation does *not* include the substantial amount of time that Class Counsel will be required to devote to (1) overseeing the remainder of the Settlement administration process, (2) drafting the Motion for Final Approval and appearing for the Final Approval Hearing, (3) responding to objections to the Settlement, if necessary,[4] and (4) overseeing the distribution of Settlement fund to the Settlement Class.

### *Milberg's Expenses*

60.    Given the substantial work required for this Action, Milberg accrued costs in furtherance of this litigation, as detailed below.

| Category | Amount |
|---|---|
| Alternate Dispute Resolution | $5,330.00 |
| Copying, Printing, Mailing, and Computer Research | $346.94 |
| Court Fees (Pro Hac Vice Applications, Filing Fees) | $1,375.94 |
| Deposition Recordings and Transcripts | $3,454.31 |
| Expert Fees | $29,368.24 |

[4] As of the date of this filing, there are no objections to or opt-outs from the Settlement.

18

DECLARATION OF ADAM A. EDWARDS IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS

| | |
|---|---|
| Miscellaneous/Other | $906.27 |
| Travel | $9,420.84 |
| **Total:** | **$50,202.54** |

61.     Milberg also contributed $198,967.89 to the litigation fund, which was managed by Levin Papantonio. *See* Schultz Decl. ¶ 8. The breakdown of all litigation fund expenses are reflected in the Declaration of Matthew Schultz. *Id.* Milberg does not include these contribution expenses in its list of costs.

62.     When including Milberg's litigation fund contribution, Milberg's total expenses are $249,170.43.

### *Class Counsel's Expenses*

63.     Based upon the above, as well as the accompanying Declarations of Matthew D. Shultz and Daniel L. Warshaw, Class Counsel's *total* expenses (for Milberg, Levin Papantonio, and Pearson Warshaw LLP) in this Action is included below:

| Firm | Expenses |
|---|---|
| Milberg | $249,170.43 |
| Levin Papantonio | $134,856.71 |
| Pearson Warshaw, LLP | $1,918.83 |
| **Total:** | **$385,945.97** |

64.     These expenses are of the same kind that would typically be billed to paying clients.

65.     Put simply, over the nearly seven years of the litigation, Class Counsel have expended a total of 3,868.8 hours in this case, amounting to a total lodestar of $4,299,506.43. Further, they have accrued a total of $385,945.97 in litigation-related expenses. This amounts to a grand total of $4,685,452.40 in attorneys' fees and costs.

19

DECLARATION OF ADAM A. EDWARDS IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS

66.    Class Counsel have conferred with Nutramax's counsel regarding Plaintiffs' Motion for Attorneys' Fees and Costs and Class Representative Service Awards. Class Counsel provided a copy of the Motion to determine whether Nutramax would oppose the Motion and requested fees and costs. Nutramax's counsel does not oppose the Motion or the requested fees and costs.

67.    I have taken an active role in this Action since its inception. I am well-aware of the history of this litigation and Class Counsel and the Class Representatives' efforts. I am qualified to speak on the efforts undertaken in developing Plaintiffs' legal theories, the status of discovery in this Action, and negotiations of the Proposed Settlement. I respectfully submit that Class Counsel have diligently served the interests of the Class, including in negotiating the Settlement and in overseeing the notice and claims administration of the Settlement. Further, I submit that all work undertaken in this litigation was reasonably necessary and justified to further the interests of Plaintiffs and the putative Class Members. Likewise, I respectfully submit that the Class Representatives have diligently served the interests of putative Class Members and have expended significant time in furtherance of this litigation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 23rd day of April, 2026, at Knoxville, Tennessee.


/s/ Adam A. Edwards
Adam A. Edwards

20

DECLARATION OF ADAM A. EDWARDS IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS

# EXHIBIT A



# MILBERG.

## FIRM RESUME



Milberg PLLC ("Milberg") is an AV-rated international law firm with over 50 attorneys and offices across the United States, the European Union, and South America.

Milberg prides itself on providing thoughtful and knowledgeable legal services to clients worldwide across multiple practice areas. The firm represents plaintiffs in the areas of antitrust, securities, financial fraud, consumer protection, automobile emissions claims, defective drugs and devices, environmental litigation, financial and insurance litigation, and cyber law and security.

For over 50 years, Milberg and its affiliates have been protecting victims' rights. We have recovered over $50 billion for our clients. Our attorneys possess a renowned depth of legal expertise, employ the highest ethical and legal standards, and pride ourselves on providing stellar service to our clients. We have repeatedly been recognized as leaders in the plaintiffs' bar and appointed to numerous leadership roles in prominent national mass torts and class actions.

*Milberg challenges corporate wrongdoing through class action, mass tort, consumer and shareholder right services, both domestically and globally.*

In the United States, Milberg currently holds more than 100 court-appointed full- and co-leadership positions in state and federal courts across the country. Our firm has offices in California, Florida, Georgia, Illinois, New Jersey, New York, Tennessee, Washington, Washington D.C., and Puerto Rico. Milberg's commitment to its clients reaches beyond the United States, litigating antitrust, securities, and consumer fraud actions in Europe and South America, with offices located in the United Kingdom, and the Netherlands.

Milberg prides itself on providing excellent service worldwide.

The firm's lawyers have been regularly recognized as leaders in the plaintiffs' bar by the National Law Journal, Legal 500, Chambers USA, Time Magazine, Lawdragon, and Super Lawyers, among others.

*"A powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."*
- THE NEW YORK TIMES

# PRACTICE AREAS

## SECURITIES FRAUD

Milberg pioneered the use of class action lawsuits to litigate claims involving investment products, securities, and the banking industry. Fifty years ago, the firm set the standard for case theories, organization, discovery, methods of settlement, and amounts recovered for clients. Milberg remains among the most influential securities litigators in the United States and internationally.

Milberg and its attorneys were appointed Lead Counsel and Co-Lead Counsel in hundreds of federal, state, and multidistrict litigation cases throughout its history.

## ANTITRUST & COMPETITION LAW

For over fifty years, Milberg's Antitrust Practice Group has prosecuted complex antitrust class actions against defendants in the healthcare, technology, agriculture, and manufacturing industries engaged in price-fixing, monopolization and other violations of antitrust law and trade restraints.

## FINANCIAL LITIGATION

For over fifty years, Milberg's Antitrust Practice Group has prosecuted complex antitrust class actions against defendants in the healthcare, technology, agriculture, and manufacturing industries engaged in price-fixing, monopolization and other violations of antitrust law and trade restraints.

## CONSUMER PROTECTION

Milberg's Consumer Protection Practice Group focuses on improving product safety and protecting those who have fallen victim to deceptive marketing and advertising of goods and services and/or purchased defective products. Milberg attorneys have served as Lead Counsel and Co-Lead Counsel in hundreds of federal, state, and multidistrict litigation cases alleging the sale of defective products, improper marketing of products, and violations of consumer protection statutes.

## DANGEROUS DRUGS & DEVICES

Milberg is a nationally renowned firm in mass torts, fighting some of the largest, wealthiest, and most influential pharmaceutical and device companies and corporate entities in the world. Our experienced team of attorneys has led or co-led numerous multidistrict litigations of defective drugs and medical devices.

## EMPLOYMENT & CIVIL RIGHTS

Milberg's Employment & Civil Rights attorneys focus on class actions and individual cases nationwide arising from discriminatory banking and housing practices, unpaid wages and sales commissions, improperly managed retirement benefits, workplace discrimination, and wrongful termination.

## ENVIRONMENTAL LITIGATION & TOXIC TORTS

Milberg's Environmental Litigation & Toxic Torts Practice Group focuses on representing clients in mass torts, class actions, multi-district litigation, regulatory enforcement, citizen suits, and other complex environmental and toxic tort matters. Milberg and its attorneys have held leadership roles in all facets of litigation in coordinated proceedings, with a particular focus on developing the building blocks to establish general causation, which is often the most difficult obstacle in an environmental or toxic tort case.

## STATE & LOCAL GOVERNMENTS

Milberg attorneys are dedicated to defending the Constitutional and statutory rights of individuals and businesses that are subjected to unlawful government exactions and fees by state and local governments or bodies.

## CYBERSECURITY & DATA PRIVACY

Milberg is a leader in the fields of cyber security, data breach litigation, and biometric data collection, litigating on behalf of clients — both large and small — to change data security practices so that large corporations respect and safeguard consumers' personal data.

## APPELLATE

Consisting of experienced appellate advocates and former law clerks who understand how best to present compelling arguments to judges on appeal and secure justice for our clients beyond the trial courts, Milberg's Appellate Practice Group boasts an impressive record of success on appeal in both state and federal courts.

# LEADERSHIP ROLES

In re: Google Play Consumer Antitrust Litigation

In re: Elmiron (Pentosan Polysulfate Sodium) Products Liability Litigation

In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices & Products Liability Litigation

In re: Blackbaud Inc., Customer Data Breach Litigation

In re: Paragard IUD Products Liability Litigation

In re: Seresto Flea & Tick Collar, Marketing Sales Practices & Product Liability Litigation

In re: All-Clad Metalcrafters, LLC, Cookware Marketing and Sales Practices Litigation

In re: Allergan Biocell Textured Breast Implant Products Liability Litigation

In re: Zicam Cold Remedy Marketing, Sales Practices and Products Liability Litigation

In re: Guidant Corp. Implantable Defibrillators Product Liability Litigation

In re: Ortho Evra Products Liability Litigation

In re: Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Products Liability Litigation

In re: Kugel Mesh Hernia Patch Products Liability Litigation

In re: Medtronic, Inc. Sprint Fidelis Leads Products Liability Litigation

In re: Stand 'N Seal Products Liability Litigation

In re: Chantix (Varenicline) Products Liability Litigation

In re: Fosamax (alendronate Sodium) Products Liability Litigation

In re: Benicar (Olmesartan) Products Liability Litigation

In re: Onglyza (Saxagliptin) & Kombiglyze Xr (Saxagliptin & Metformin) Products Liability Litigation

In re: Risperdal and Invega Product Liability Cases

In re: Mirena IUS Levonorgestrel-Related Products Liability Litigation

In re: Incretin-based Therapies Product Liability Litigation

In re: Reglan/Metoclopromide

In re: Levaquin Products Liability Litigation

In re: Zimmer Nexgen Knee Implant Products Liability Litigation

In re: Fresenius Granuflo/NaturaLyte Dialysate Products Liability Litigation

In re: Propecia (Finasteride) Products Liability Litigation

In re: Transvaginal Mesh (In Re C. R. Bard, Inc., Pelvic Repair System Products Liability Litigation; In Re Ethicon, Inc., Pelvic Repair System Products Liability Litigation; In Re Boston Scientific, Inc., Pelvic Repair System Products Liability; In Re American Medical Systems, Pelvic Repair System Products Liability, and others)

In re: Fluoroquinolone Product Liability Litigation

In re: Depuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability Litigation

In re: Recalled Abbott Infant Formula Products Liability Litigation

Home Depot, U.S.A., Inc. v. Jackson

Webb v. Injured Workers Pharmacy, LLC

# NOTABLE RECOVERIES

### $4 Billion Settlement

In re: Prudential Insurance Co. Sales Practice Litigation

### $3.2 Billion Settlement

In re: Tyco International Ltd., Securities Litigation

### $1.14 Billion Settlement

In Re: Nortel Networks Corp. Securities Litigation

### $1 Billion-plus Trial Verdict

Vivendi Universal, S.A. Securities Litigation

### $1 Billion Settlement

NASDAQ Market-Makers Antitrust Litigation

### $1 Billion Settlement

W.R. Grace & Co.

### $1 Billion-plus Settlement

Merck & Co., Inc. Securities Litigation

### $775 Million Settlement

Washington Public Power Supply System Securities Litigation

### $586 Million Settlement

In re: Initial Public Offering Securities Litigation

# LOCATIONS

## PUERTO RICO
1311 Avenida Juan Ponce de León
San Juan, Puerto Rico 00907

### CALIFORNIA
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212

### FLORIDA
333 SE 2nd Avenue, Suite 2000
Miami, Florida 33131

### ILLINOIS
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606

### NEW JERSEY
1 Bridge Plaza North, Suite 675
Fort Lee, New Jersey 07024

### NEW YORK
100 Garden City Plaza, Suite 408
Garden City, New York 11530

### TENNESSEE
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929

### WASHINGTON
1420 Fifth Ave, Suite 2200
Seattle, Washington 98101

17410 133rd Avenue, Suite 301
Woodinville, Washington 98072

### WASHINGTON, D.C.
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015

### NETHERLANDS

### UNITED KINGDOM



www.milberg.com



## ADAM EDWARDS
### Senior Partner

**Mr. Adam Edwards** is a Senior Partner at Milberg and acts as a group leader for Consumer Products litigation. He also serves as a primary litigator in many of the firm's class action matters involving false advertising and product defects.

Mr. Edwards attended The University of Tennessee as an undergraduate, where he received his degree in political science and served as a field office intern for United States Senator and former Senate Majority Leader, Dr. Bill Frist.

After graduating from UT, Mr. Edwards was accepted into the Juris Doctor program at the Washburn University School of Law. He was awarded an academic merit scholarship after his first year of coursework, selected as the President of the Moot Court Counsel on Oral Advocacy, and chosen as a member of the Order of Barristers. He received his J.D. after graduating with Deans Honors in 2000.  Mr. Edwards has served as first chair in dozens of jury trials.

**Class Actions**

Mr. Edwards has successfully argued complex legal issues related to class certification in front of courts throughout the country. He has a reputation as one of the most knowledgeable litigators in the country with respect to class action damages and is frequently asked to speak to fellow lawyers with regard to class action damages models, most recently at Mass Torts Made Perfect in Las Vegas. Mr. Edwards has worked with numerous survey experts, marketing professionals, and economists to create robust damages models to support class certification in a variety of consumer product class actions cases. Recent examples include:

*Lisa Tabak, et al. v. Apple, Inc.; USDC N.D. Ca., No. 19-cv-02455-JST*

*Johnson v. Nissan North America, Inc.; USDC N.D. Ca., No. 3:17-cv-00517*

*Jeffrey Koenig, et al. v. Vizio, Inc.; Superior Court of California, County of Los Angeles, Case No. BC708866*

*Thomas Bailey, et al. v. Rite Aid Corporation; USDC N.D. Ca., No. 4:18-cv-06926-YGR*

*Jennifer Braun v. Dolgencorp, LLC d/b/a Dollar General, MID-L-950-25 (N.J. Sup. Ct. Law Div. March 19, 2026)*

**Awards**

Most recently, Mr. Edwards was recognized in the 2026 edition of the Best Lawyers in America.

He has been selected twice by fellow members of the Knoxville Bar as a "Top Attorney," an honor described in CityView Magazine's annual Top Attorneys issue. He was also selected for membership into the Million Dollar Advocates Forum, an honor reserved for those trial lawyers who have secured a settlement or verdict in excess of one million dollars; less than 1% of U.S. lawyers are members.

He was additionally invited to join The National Trial Lawyers: Top 100, an invitation-only group comprised of premier trial lawyers from each state or region who meet strict qualifications.