Adam A. Edwards (*pro hac vice*)
aedwards@milberg.com
MILBERG COLEMAN BRYSON
  PHILLIPS GROSSMAN, PLLC
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

Daniel L. Warshaw
dwarshaw@pwfirm.com
PEARSON WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

[Additional Counsel Listed
on Signature Page]

*Attorneys for Plaintiffs
and the Settlement Class*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN LYTLE and CHRISTINE MUSTHALER,<br><br>Plaintiffs,<br><br>v.<br><br>NUTRAMAX LABORATORIES, INC. and NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC.,<br><br>Defendants. | Case No. 5:19-CV-00835-FMO-SP<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>**Judge:** Hon. Fernando M. Olguin<br>**Date:**  August 13, 2026<br>**Time**: 10:00 a.m.<br>**Place**: Courtroom 6D, 6th Floor<br>350 W. 1st Street<br>Los Angeles, CA 90012 |

# NOTICE OF MOTION

PLEASE TAKE NOTICE THAT, on August 13, 2026, at 10:00 a.m. PT, or as soon thereafter that the matter may be heard, in the Courtroom of the Honorable Fernando M. Olguin, of the United States District Court for the Central District of California, located in Courtroom 6D on the 6th Floor, 350 W. 1st Street, Los Angeles, CA 90012, Plaintiffs Justin Lytle and Christine Musthaler ("Plaintiffs") will and hereby do move, pursuant to Federal Rule of Civil Procedure 23, this Court for an Order (1) finally approving the preliminarily approved Settlement settling their claims, both on behalf of themselves and on behalf of a Settlement Class of similarly situated individuals; (2) certifying the Settlement Class for settlement purposes only; (3) appointing Plaintiffs' counsel as Class Counsel and Plaintiffs as Class Representatives; (4) directing payment to Settlement Class Members who timely submitted valid claims; (5) granting Plaintiffs' request for attorneys' fees and costs to Class Counsel and incentive award payments to the Class Representatives, ECF No. 219; and (6) directing that final judgment be entered herein. As discussed more fully in the attached Memorandum of Points and Authorities, following the Court's certification of Plaintiffs' claims, ECF No. 146, the Parties negotiated a Settlement that provides substantial compensation to consumers who purchased Cosequin® Products (defined herein), which were developed, manufactured, and sold by Defendants Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. (collectively, "Nutramax"). On February 2, 2026, the Court granted preliminary approval to the Settlement. Following completion of the notice program to Settlement Class Members, Settlement Class Members were afforded a fair and reasonable opportunity to submit claims under the Settlement.

1

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:19-CV-00835-FMO-SP

Moreover, following the June 22, 2026 deadline to submit requests to opt out of or object to the Settlement, *zero* Settlement Class Members have sought exclusion from the Settlement and *zero* individuals have objected to the Settlement.

Plaintiffs bring this Motion, which remains unopposed by Nutramax, to respectfully request that the Court grant final approval of the Settlement; direct payment to Settlement Class Members; grant Plaintiffs' motion for the requested attorneys' fees, costs, and class representative service awards, ECF No. 219; and enter final judgment.

Dated: July 13, 2026

/s/ *Adam A. Edwards*

Adam A. Edwards (*pro hac vice*)
aedwards@milberg.com
**MILBERG COLEMAN BRYSON
  PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

Matthew D. Schultz (*pro hac vice*)
mschultz@levinlaw.com
**LEVIN PAPANTONIO**
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Telephone: (850) 435-7140
Facsimile: (850) 436-6140

Daniel L. Warshaw
dwarshaw@pwfirm.com
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:19-CV-00835-FMO-SP

Facsimile: (818) 788-8104

*Attorneys for Plaintiffs*
*and the Settlement Class*

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:19-CV-00835-FMO-SP

## TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT.............................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ...................................2

    A.    Factual Background..........................................................................2

    B.    Procedural History...........................................................................3

III.    THE SETTLEMENT.............................................................................4

    A.    The Class .........................................................................................5

    B.    Benefits to the Class Members........................................................5

    C.    Release by Class Members...............................................................7

IV.     SETTLEMENT ADMINISTRATION AND CLASS RESPONSE ..............7

    A.    Settlement Administration................................................................7

    B.    Class Notice.....................................................................................7

    C.    Settlement Class Members' Response .............................................9

V.      ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS ......................9

    A.    Attorneys' Fees and Expenses.........................................................9

    B.    Service Award to Named Plaintiffs.................................................10

VI.     LEGAL STANDARD .............................................................................11

VII.    ARGUMENT.........................................................................................12

    A.    The Court Should Approve the Settlement Because It Is Fair, Reasonable, and Adequate. ..............................................................12

        1.    The Settlement is the result of good faith, arm's-length negotiations before an experienced Mediator...........................12

        2.    The Settlement falls within the range of possible approval......13

            a.    The Strengths and Risks of Plaintiffs' Case and the Complexity and Likely Duration of Further Litigation 13

            b.    The Risk of Maintaining Class Action Status ............. 14

            c.    The Amount Offered in Settlement ............................. 15

            d.    Extent of Discovery Completed and Stage of Proceedings................................................................ 16

i

e.     Views of Class Counsel ................................................. 16

f.     Overwhelmingly Positive Reception by Settlement Class Members ................................................................. 17

g.     No Governmental Entity Has Objected to the Settlement .................................................................. 18

3.     The Settlement treats Settlement Class Members equitably. ..18

4.     The proposed Fee and Expense Award is fair and reasonable. .......................................................................19

B.     The Court Should Certify the Settlement Class for Settlement Purposes ......................................................................20

1.     The Settlement Class meets the requirements of Rule 23(a)....20

2.     The Class Meets the Requirements of Rule 23(b)(3). ..............22

C.     The Notice Program Has Provided the Best Notice Practicable.........23

VIII.  CONCLUSION................................................................................24

ii

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Carter v. Anderson Merchandisers LP*,
  No. DCV 08-0025-VAP, 2010 WL 1946784 (C.D. Cal. May 11, 2010) .............20

*Churchill Village, L.L.C. v. General Electric*,
  361 F.3d 566 (9th Cir. 2004)........................................................................ 12, 23

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992)...........................................................................11

*Edwards v. Andrews*,
  846 Fed. App'x 538 (9th Cir. 2021).................................................................17

*Edwards v. Nat'l Milk Producers Fed'n*,
  No. 11-CV-04766, 2017 WL 3623734 (N.D. Cal. June 26, 2017).......................17

*Evon v. Law Offices of Sidney Mickell*,
  688 F.3d 1015 (9th Cir. 2012)...........................................................................22

*G. F. v. Contra Costa Cnty.*,
  No. 13-cv-03667-MEJ, 2015 WL 4606078 (N.D. Cal. July 30, 2015)................12

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)............................................................... 11, 22, 24

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995).............................................................................11

*Kim v. Space Pencil, Inc.*,
  No. C 11-03796 LB, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012)...................13

*Knapp v. Art.com, Inc.*,
  283 F. Supp. 3d 823 (N.D. Cal. 2017) ......................................................... 14, 17

*LaGarde v. Support.com, Inc.*,
  No. C 12-0609, 2013 WL 1283325 (N.D. Cal. Mar. 26, 2013)..........................18

iii

*Musgrove v. Jackson Nurse Pros., LLC*,
    CV 17-6565 FMO, 2022 WL 18231364 (C.D. Cal. June 24, 2022)....................19

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................ 13, 14, 16

*Noll v. eBay, Inc.*,
    309 F.R.D. 593 (N.D. Cal. 2015) ........................................................17

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982)........................................................13

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ........................................................24

*Rieckborn v. Velti PLC*,
    2015 WL 468329 (N.D. Cal. Feb. 3, 2015)........................................................12

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)........................................................ 15, 19

*Spann v. J.C. Penney Corp.*,
    211 F. Supp. 3d 1244 (C.D. Cal. 2016)........................................................23

*Spann v. J.C. Penney Corp.*,
    314 F.R.D. 312 (C.D. Cal. 2016) ........................................................19

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011)........................................................22

*Stonehocker v. Kindred Healthcare Operating LLC*,
    No. 19-CV-2494, 2021 WL 1643226 (N.D. Cal. Apr. 27, 2021) ........................17

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ........................................................22

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976)........................................................11

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010)........................................................21

iv

**Statutes**

Cal. Civil Code § 1542.................................................................................7

Cal. Gov't Code § 6064 ...............................................................................8

v

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs originally filed this proposed class action against Defendants Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. (collectively, "Nutramax") on May 3, 2019. ECF No. 1. Following nearly three years of litigation, the Court granted class certification of Plaintiffs' claims. ECF No. 146. Following an appeal to the Ninth Circuit, the parties agreed to mediate their claims and eventually reached an agreement to resolve the certified claims (the "Settlement").[1] The Settlement provides for a total non-reversionary fund of $11,500,000, providing up to $25.00 per Cosequin® Product purchased and up to $150.00 total for multiple Cosequin® Products[2] purchased. The Settlement was reached only after extensive litigation and arm's-length negotiations before mediator David Duncan and additional meet-and-confer efforts between the parties. Following two hearings, the Court provided input on certain proposed Settlement terms, and following additional discussions by the Parties, the proposed Settlement was submitted for the Court's consideration. ECF No. 217-1. On February 2, 2026, the Court granted preliminary approval of the Settlement. ECF No. 218.

Following preliminary approval, email, digital, and publication notice was issued to Settlement Class Members over an approximately four-month-long notice

---

[1] Unless otherwise specifically defined herein, all capitalized terms have the same meanings as those set forth in the Parties' Amended Agreement of Compromise and Settlement. ECF No. 217-1.

[2] "Cosequin® Products" include: Cosequin® DS Maximum Strength Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Soft Chews; Cosequin® Maximum Strength Plus MSM Chewable Tablets; Cosequin® with MSM Chewable Tablets; Cosequin® Maximum Strength Plus MSM Soft Chews; and Cosequin® with MSM Soft Chews.

1

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:19-CV-00835-FMO-SP

period. Settlement Class Members were afforded 120 days from the initial notice to timely submit valid claims. Declaration of Cameron R. Azari, Esq. Regarding Implementation and Adequacy of Notice Plan ("Azari Decl."), ¶¶ 13-31.  During that period, 664,857 claims were submitted—as of the date of this Motion. *Id.* ¶ 34. The period to submit valid claims formally ends on July 21, 2026.[3] Azari Decl. ¶ 34.

Further, the deadline to either object to or seek exclusion from the Settlement passed on June 22, 2026. To date, *zero* Settlement Class Members have sought exclusion from the Settlement, and *zero* individuals have objected to the Settlement. *Id.* ¶ 32. The Settlement is fair, reasonable, and adequate and provides meaningful relief to the Settlement Class, while balancing the risks and delays of continued, protracted litigation, including further dispositive briefing, discovery, trial, and the potential for no recovery to Plaintiffs at all. Based on an informed evaluation of the facts and governing legal principles, and given the decidedly positive response by Settlement Class Members to this Settlement, Plaintiffs respectfully request that the Court grant Final Approval of the Settlement.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

This case involves Nutramax's alleged misrepresentations regarding its Cosequin® Products. Plaintiffs alleged that the products, which are marketed as

---

[3] Accordingly, this figure is preliminary and remains subject to a review for fraud. The Settlement Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), has begun the process of reviewing all submitted claims to analyze whether any claims should be rejected as fraudulent. Azari Decl. ¶¶ 35-36. This fraud review process is ongoing, and Plaintiffs will submit a supplement prior to the final approval hearing detailing the results of this process and the final tally of valid, accepted claims.

2

canine joint health supplements containing glucosamine, chondroitin, and other ingredients make "incomplete and inaccurate claims . . . that would mislead and have in fact misled reasonable consumers into purchasing, using, and continuing to use Cosequin® products." Compl., ECF No. 1, ¶ 1; *see also* ECF No. 146, at 2. These misrepresentations, Plaintiffs alleged, caused Plaintiffs and other California consumers to overpay for the Cosequin® Products. Nutramax denied, and continues to deny, these allegations.

### B.    Procedural History

Plaintiffs filed their original Complaint on May 3, 2019. ECF No. 1. Following an amendment and full briefing on Nutramax's motion to dismiss the complaint, the Court granted partial dismissal with leave to amend. ECF No. 52. Plaintiffs filed the operative Second Amended Complaint on October 11, 2019. ECF No. 53. Following further briefing on another motion to dismiss, the Court denied Nutramax's motion. ECF No. 61. Nutramax filed its Answer on December 20, 2019. ECF No. 62.

The Parties then engaged in significant class and merits discovery. This discovery included the exchange of requests for production, interrogatories, multiple depositions, and the review of thousands of pages of documents. Counsel Decl. ¶¶ 7-12. Nutramax deposed each named Plaintiff, and Plaintiffs took depositions of Nutramax's Rule 30(b)(6) corporate representatives. *Id.* ¶¶ 9-10. The Parties also engaged in significant expert discovery. *Id.* ¶ 12.

Plaintiffs moved for class certification on August 23, 2021. ECF Nos. 91-92. The Court granted class certification on May 6, 2022, certifying a class of California consumers and allowing them to pursue claims under California's Consumer Legal Remedies Act ("CLRA"). ECF No. 146, at 35. Nutramax appealed the Court's class

3

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:19-CV-00835-FMO-SP

certification under Rule 23(f), and following full briefing and oral argument the Ninth Circuit affirmed class certification. ECF Nos. 157, 160.

Upon remand, the Parties began discussing potential settlement in light of the expense and uncertainties of continued litigation. The Parties engaged a neutral mediator, the Honorable David Duncan, to conduct mediation on April 10, 2025. Counsel Decl. ¶ 19. With Judge Duncan's assistance, the Parties reached an agreement to settle in principle. *Id.*

On July 28, 2025, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement. ECF No. 203. On October 30, 2025, the Court held a hearing on that Motion, during which the Court identified certain items for the Parties to address further before it granted preliminary approval. ECF No. 208; *see also* ECF No. 210 (denying the Motion without prejudice and with leave to refile). The Parties met and conferred to revise the proposed Settlement and address each of the issues identified by the Court. The Court held another hearing on January 8, 2026, where the Court asked the Parties to submit another revised settlement agreement, which they presented for the Court's consideration on January 13, 2026. ECF No. 217-1. On February 2, 2026, the Court granted preliminary approval of the Settlement. ECF No. 218. And on April 23, 2026, Plaintiffs filed their Motion for Attorneys' Fees, Costs, and Class Representative Service Awards. ECF No. 219.

## III. THE SETTLEMENT

The Settlement provides substantial, meaningful relief on a claims-made basis to California consumers who purchased Cosequin® Products during a six-year period by compensating them up to $25.00 per unit, with a potential maximum compensation of up to $150.00 for additional units. The Settlement Fund will

4

contain enough funds to ensure that Class Members receive meaningful and fair relief.

## A.    The Class

Because the Court had certified a class on May 6, 2022, the Settlement reflects that Class:

> All persons residing in California who purchased during the limitations period the following canine Cosequin® products for personal use: Cosequin® DS Maximum Strength Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Chewable Tablets; and Cosequin® DS Maximum Strength Plus MSM Soft Chews.

*Compare* Jan. 13, 2026 Amended Settlement Agreement ("SA"), § 1.1, *with* ECF No. 146, at 35.[4]

The applicable limitations period for claims under the Settlement runs from May 3, 2016, through May 6, 2022 (the "Class Period"). SA § 1.2.

## B.    Benefits to the Class Members

Nutramax is providing $11,500,000 for the Settlement Fund to cover all Class Member payments, Class Counsel's fee and expense award, and service awards for the class representatives. *Id.* § 4.1. Nutramax agrees to pay all costs associated with the administration of the Settlement in addition to paying the amount for the Settlement Fund. *Id.* § 4.3.

Monetary relief is available to Class Members who submit a valid claim providing their name and address, and the number of units of Cosequin® Products

---

[4] Consistent with Nutramax's label changes over time, additional products beyond those listed in the certified class definition were sold as Cosequin® Products. Accordingly, under the Settlement, Class Members may submit a Valid Claim Form and obtain recovery for their purchase of any Cosequin® Product listed in the Settlement Agreement during the Class Period. *See* SA § 2.37; *see also supra* note 2.

purchased during the Class Period. *Id.* § 5.1.1. Class Members also must state, under penalty of perjury, that the Cosequin® Products were purchased in California, that the Class Member was a resident of California at the time of purchase, and that the purchases were for household use. *Id.* Each submitted claim is subject to review by Epiq. *Id.* § 5.1. Class Members have 120 days after initial notice—or until July 21, 2026—to submit a Valid Claim Form. *Id.* § 2.

All Class Members who submit a Valid Claim Form are entitled to receive up to $25.00 per unit of Cosequin® Product purchased during the Class Period. *Id.* § 5.1.2. Class Members may submit claims for multiple units of Cosequin® Products they have purchased during the Class Period, but Class Members may receive compensation only up to $150.00 total for all units purchased. *Id.* Compensation is limited to one claim per household. *Id.* § 5.1.3. Class Members can elect to receive a physical check, electronic check, or direct deposit. *Id.* § 5.1.4; *see also* §§ 5.5-5.6.

If the Settlement Fund is not exhausted after the payments to Class Members who submit valid claims, Class Counsel's fee and expense award, the service awards to the class representatives, and any related costs (other than administrative costs) are paid, the remainder will be distributed to Valor Service Dogs as the *cy pres* recipient, subject to the Court's approval. *Id.* § 5.3. No settlement remainder will revert to Nutramax. *See id.* § 4.1.

Beyond the monetary compensation available to Settlement Class Members who timely submit valid claims, Nutramax agrees not to include certain at-issue statements on future packaging of the Cosequin® Products, including: "Mobility, Cartilage and Joint Health Support"; "Supports Mobility for a Healthy Lifestyle"; and "Use Cosequin to help your pet Climb stairs, Rise and Jump!" *Id.* § 4.6.

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:19-CV-00835-FMO-SP

## C.    Release by Class Members

Through this Settlement, all Class Members—including those who do not submit claims—agreed to release any claim "that have been or could have been brought regarding representations relating to joint health or mobility in connection with Nutramax's distribution, labeling, packaging, marketing, advertising, and/or sale of the Cosequin® Products during the applicable Class Period." *Id.* § 9.1. Only the Class Representatives—that is, only the named Plaintiffs—agreed to waive and release their claims under California Civil Code § 1542. *Id.* § 9.3.

## IV.    SETTLEMENT ADMINISTRATION AND CLASS RESPONSE

### A.    Settlement Administration

The Court appointed Epiq as the Settlement Administrator. ECF No. 218, at 13. Epiq has overseen the notice program preliminarily approved by the Court, which included email, digital, and publication notice to Settlement Class Members. Azari Decl. ¶¶ 12-31; *see also* SA § 7.2. The period for Settlement Class Members to submit valid claims currently remains open—formally closing on July 21, 2026. Azari Decl. ¶ 34. To date, Epiq has preliminarily received 664,857 claims. *Id.* Because the deadline to submit valid claims has not yet passed, Epiq remains in the process of formally reviewing submitted claims to eliminate any potentially fraudulent claims. Accordingly, the total costs of settlement administration have not yet been finalized. Plaintiffs will file a supplement shortly after the submission deadline has passed detailing the final settlement administration data.

### B.    Class Notice

Nutramax provided Epiq with a list of 581 records for identified Settlement Class Members, including email addresses (the "Class List"). Azari Decl., ¶ 12. Epiq analyzed the Class List to verify email addresses, including the removal of email addresses that contained hallmarks of fraud (such as those maintained by bots,

spammers, or phishers). *Id.* ¶ 13. Following this process, Epiq sent direct email notice to 531 identified Settlement Class Members' emails on March 9, 2026. *Id.* In doing so, Epiq followed industry standard best practices. *Id.* ¶ 14. The Email Notice included an embedded link to the Settlement Website, through which Settlement Class Members could easily access the Long Form Notice. *Id.*

The Notice Plan also included digital advertising on *Google Display Network* and *Yahoo Audience Network* (in English and Spanish), and on social media, including on *Facebook* and *Instagram* (in English and Spanish). *Id.* ¶¶ 17-21. This digital advertising and social media campaign, which ran from March 9, 2026, through April 19, 2026, generated a total of 58,509,956 digital impressions. *Id.* ¶¶ 22-23.

To further facilitate Settlement Class Members finding the Settlement Website, Epiq also sponsored search listing advertisements in California on *Google*, *Yahoo!*, and *Bing*, the three most highly-visited internet search engines. *Id.* ¶ 24. These sponsored search listings will continue to run through July 21, 2026. *Id.* ¶ 25. As of the date of this Motion, the sponsored search listings have been displayed 121,970 times, generating 5,470 clicks to the Settlement Website. *Id.* Epiq also issued an informational release on March 9, 2026, on *PR Newswire's California* and *California Hispanic Newslines* to 600 general media (print and broadcast) outlets. *Id.* ¶ 26. This informational release included the address of the Settlement Website and the Settlement's toll-free telephone number. *Id.* ¶ 27. Epiq also initiated publication notice on four separate occasions over a four-week period in *USA Today* newspapers in San Francisco, Los Angeles, and Phoenix. *Id.* ¶ 28; *see also* Cal. Gov't Code § 6064.

Epiq established and continues to maintain a Settlement Website and a toll-free telephone number where Settlement Class Members can easily access

8

information regarding the Settlement, review Settlement-related documents and deadlines, as well as submit claims, exclusion requests, or objections. *Id.* ¶¶ 29-30. Moreover, Epiq established a postal mailing address to provide Settlement Class Members an additional avenue for seeking and accessing information regarding the Settlement. *Id.* ¶ 31.

### C.    Settlement Class Members' Response

Based on the dissemination of this Notice Plan, and following establishment of the Settlement Website, as of the date of this filing, Epiq has received a total of 664,857 submitted claims. *Id.* ¶ 34. While this figure remains preliminary pending the July 21, 2026 claim deadline and Epiq's review to remove fraudulent claims, Epiq expects that hundreds of thousands of claims will be validated. *See id.* ¶¶ 35-36.

The deadline for Settlement Class Members to submit a written request for exclusion from the Settlement or to object to the Settlement was June 22, 2026. ECF No. 218, at 14; *see also* Azari Decl. ¶ 32. As of June 30, 2026, Epiq and Class Counsel have received *no* requests for exclusion. Azari Decl. ¶ 32. Moreover, as of that same date, Epiq and Class Counsel have received *no* objections to the Settlement. *Id.* This—particularly in light of the number of submitted claim forms—suggests that Settlement Class Members overwhelmingly value the Settlement.

### V.    ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

### A.    Attorneys' Fees and Expenses

The Court has already appointed Plaintiffs' counsel, Milberg Coleman Bryson Phillips Grossman, PLLC and Levin Papantonio, as Class Counsel. ECF No. 146, at 36. On April 23, 2026, Class Counsel moved for an attorneys' fees and costs award totaling $3,795,000—$3,409,054.03 in attorneys' fees and $385,945.97

9

in costs. ECF No. 219. Class Counsel's requested attorneys' fees (totaling $3,409,054.03, as of April 23, 2026) represent a 29.64% request of the common fund, which falls within the often-accepted benchmark within this District. ECF No. 219, at 6-7. As of April 23, 2026, when Plaintiffs filed their Motion, Class Counsel had amassed a total of 4,040.5 hours of time litigating this case, which amounted to a total lodestar of $4,299,506.43. *See id.* at 12. Class Counsel's total lodestar *exceeded* the total amount they requested for *both* attorneys' fees and expenses, representing a *negative*—and inherently reasonable—multiplier (of 0.81). *Id.* at 15-16. Nutramax did not oppose Plaintiffs' requested attorneys' fees and expenses.

Since the filing of that motion, Class Counsel has continued to communicate with Epiq and with Nutramax regarding the Settlement and settlement administration. Further, Class Counsel prepared this Motion and worked closely with Epiq regarding the preparation of a declaration fully describing all steps taken to provide notice to Settlement Class Members, administer the Settlement, and validate claims and review for potential fraud. Thus, following the filing of their motion for attorneys' fees and expenses, Class Counsel have expended even more time, none of which they include in their total lodestar figure. If such additional time were included in these calculations, their lodestar would exceed the total requested attorneys' fees and expenses by an even *greater* amount and the total multiplier would be even *lower*—all of which illustrates the inherent reasonableness of Class Counsel's request.

**B.    Service Award to Named Plaintiffs**

Through that same motion, Class Counsel also sought class representative services awards (in the amount of $7,500 per named Plaintiff, for a total of $15,000). *Id.* at 18. Plaintiffs played a vital role in litigating this case, including reviewing pleadings and other filings, staying abreast of the status of the case and

10

regularly discussing the matter with their counsel over a period of more than six years, responding to discovery, searching for and producing documents, preparing and sitting for depositions, playing an active role in considering and approving settlement terms, and ensuring the interests of putative class members were protected. *Id.* at 18-19. When granting preliminary approval, the Court previously found that "the requested incentive payments are reasonable." ECF No. 218, at 11. Nutramax did not oppose Plaintiffs' requested service awards.

## VI.    LEGAL STANDARD

In the Ninth Circuit, there is a "strong judicial policy that favors settlements" of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Recognizing that "[p]arties represented by competent counsel" are "positioned . . . to produce a settlement that fairly reflects each party's expected outcome in [the] litigation," courts favor approval of settlements. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Federal Rule of Civil Procedure 23(e) governs approval of class action settlements. At the final approval stage, the district court must determine whether the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (internal citations and quotations omitted); *see also* Fed. R. Civ. P. 23(e)(2). In the Ninth Circuit, courts are guided by eight factors to aid in this determination:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a

11

governmental participant; and (8) the reaction of the class members to the Settlement.

*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). However, a court need not weigh every factor, and "different factors may predominate in different factual contexts." *Rieckborn v. Velti PLC,* 2015 WL 468329, at *3 (N.D. Cal. Feb. 3, 2015) (citation omitted).

## VII.   ARGUMENT

### A.   The Court Should Approve the Settlement Because It Is Fair, Reasonable, and Adequate.

The Settlement represents a fair, reasonable, and adequate resolution to this litigation, providing meaningful relief to the Settlement Class Members. The relevant considerations weigh in favor of finally approving the Settlement.

#### 1.   The Settlement is the result of good faith, arm's-length negotiations before an experienced Mediator.

The Parties reached the Settlement following a day-long mediation session overseen by Judge Duncan, an experienced mediator and former federal magistrate judge capable of analyzing the strengths and weaknesses of the Parties' cases. Judge Duncan offered a reasonable, unbiased analysis of each Party's arguments, claims, and defenses, helping the Parties to recognize the validity (and shortcomings) of their positions. Judge Duncan ensured that the Parties' negotiations were conducted in good faith and at arm's length. Through this mediation the Parties reached an agreement to settle in principle. Counsel Decl. ¶ 19. "[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *See G. F. v. Contra Costa Cnty.*, No. 13-cv-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (citation omitted). Additionally, the Court scrutinized the proposed Settlement and required revisions, which the Parties

12

incorporated, before the Court granted preliminary approval. The assistance of Judge Duncan and the Court both favor final approval.

### 2. The Settlement falls within the range of possible approval.

It is axiomatic that "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Just.*, 688 F.2d at 624. The Settlement provides both injunctive relief and substantial monetary relief to the Settlement Class Members considering (1) the costs, risks, expenses, and delays of trial and appeal, (2) the effectiveness of the proposed distribution plan, and (3) the fair and explained terms of the substantial gross Settlement Fund that will sufficiently pay for all of the settlement costs, including any award of attorneys' fees and expenses. Fed. R. Civ. P. 23(e)(2)(C).

**a.** *The Strengths and Risks of Plaintiffs' Case and the Complexity and Likely Duration of Further Litigation*

The Settlement provides substantial relief to the Class in the face of the inherent uncertainties of litigation. "The substantial and immediate relief provided to the Class under the Settlement weighs heavily in favor of its approval compared to the inherent risk of continued litigation, trial, and appeal, as well as the financial wherewithal of the defendant." *Kim v. Space Pencil, Inc.*, No. C 11-03796 LB, 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted).

This case presents significant risks to recovery. On the merits, Nutramax has denied, and continues to deny, that it misrepresented any aspect of the Cosequin® Products or that consumers were charged a price premium for the products. Nutramax maintains that all its representations—either in marketing or on product

13

packaging—were true and denies that it ever violated any law. Nutramax previously moved for summary judgment, which was later vacated. *See* ECF Nos. 128, 140. The Court has not had an opportunity to rule on summary judgment and it is likely that, if the Settlement is not approved, Nutramax would renew its motion for summary judgment. Thus, this creates additional risk that, if granted, Plaintiffs' claims could be dismissed and Plaintiffs and the Class Members would receive nothing.

And there is meaningful risk that a factfinder could agree with Nutramax at trial. There is a risk that a factfinder could agree with Nutramax and its experts that the Cosequin® Products do provide joint health benefits, such that a reasonable consumer would not be misled. Indeed, consumer class action trials are inherently risky. Seemingly meritorious class actions have gone to trial in California, with judgments returned for defendants. *See e.g., Farar v. Bayer AG*, No. 14-cv-4601 (N.D. Cal. 2017); *Allen v. Hyland's, Inc.*, No. 12-cv-1150 DMG (MANx) (C.D. Cal. 2014). Even if Plaintiffs prevailed at trial, Nutramax would likely appeal that decision. "Avoiding such a trial and subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 527.

Therefore, in the face of additional months, if not years, of litigation, Plaintiffs must weigh the very real risk that the Court or a jury could side with Nutramax. Accordingly, while Plaintiffs vigorously dispute Nutramax's contentions on the merits, the risks of litigation weigh in favor of final approval. *See, e.g., Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 832 (N.D. Cal. 2017).

**b.** *The Risk of Maintaining Class Action Status*

The risk of maintaining class action status through trial supports final approval. Counsel Decl. ¶ 28. Although a class has been certified in this case, ECF

14

No. 146, Nutramax opposed certification. Even following certification, Nutramax appealed and continued to challenge the Court's determination. *See, e.g.*, ECF No. 147. Thus, if litigation continued, it is likely that Nutramax would move to decertify. *See, e.g.*, *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (discussing the risk that a "district court may decertify a class at any time"). There remains a risk that Plaintiffs will not be able to maintain class action status through trial. If the Class were decertified, the Class Members would receive nothing. The Settlement allows Plaintiffs and Settlement Class Members to avoid these risks, additional expenses, and delays in favor of immediate recovery.

**c.**    *The Amount Offered in Settlement*

Plaintiffs and their counsel secured for the Class a gross Settlement Fund of $11,500,000, which is reasonable in relation to potential trial damages for the Class. Plaintiffs' counsel closely examined the potential damages available if they continued litigating this case through to a successful verdict at trial. When comparing this aspirational view of the available damages against the risks, time, and costs of continued litigation, Plaintiffs' counsel believes that this Settlement represents a fair and reasonable result that provides meaningful relief to Class Members. Plaintiffs have proposed (and the Court approved) a conjoint analysis methodology as capable of calculating class-wide damages. *E.g.*, ECF No. 146, at 10-11. Through a conjoint analysis, Plaintiffs' damages expert would survey consumers to analyze how they view—and the worth they give—the challenged claims regarding the Cosequin® Products' representations on canine joint health.

Prior to mediation, Class Counsel worked closely with their damages expert, renowned economist Professor Jean-Pierre H. Dubé, to estimate a reasonable price premium that could be calculated in this case, if the conjoint survey were fielded. Dr. Dubé brought his significant survey and economics knowledge and experience

15

to bear when estimating that a likely price premium could be calculated in the range of 25% to 35%. Class Counsel then closely examined, with the aid of Dr. Dubé, Nutramax's wholesale sales data attributable to California purchasers. Applying a well-reasoned estimated price premium of 30%, Class Counsel calculated damages for the certified California Class at approximately $17,112,007.

The $11,500,000 Settlement Fund represents 67.2% of these estimated damages. Given that this Settlement prevents further risk, cost, and time of protracted litigation, achieving 67.2% of a plaintiff's "best-day" damages represents an exceedingly reasonable—and excellent—result.

**d.**     *Extent of Discovery Completed and Stage of Proceedings*

The Parties have been engaged in discovery since 2019. Counsel Decl. ¶ 7. The Parties have exchanged written discovery, produced and reviewed thousands of pages of documents, and engaged in multiple party, fact witness, and expert depositions. *Id.* ¶¶ 7-12. Plaintiffs conducted sufficient discovery, including from Nutramax and third-party retailers, to permit Plaintiffs' counsel and the Court to intelligently and fairly evaluate the fairness and adequacy of this Settlement. Indeed, Plaintiffs proposed—and the Court approved, ECF No. 146, at 10-11—a methodology for calculating class-wide damages. *See* Counsel Decl. ¶ 26. This factor favors final approval.

**e.**     *Views of Class Counsel*

Class Counsel, who are experienced in consumer class action litigation, believe the Settlement represents an outstanding recovery for the Settlement Class Members given the risks of continuing the litigation. *Id.* ¶ 29. "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

**f.**    *Overwhelmingly Positive Reception by Settlement Class Members*

The Court-approved Notice and claim period began on March 9, 2026, Azari Decl. ¶ 13, and the claim period remains open until July 21, 2026, *id.* ¶ 34. While the formal claim period remains open, there has been a positive reception to the Settlement by Settlement Class Members. As of the date of this Motion, a total of 664,857 Claim Forms have been submitted to Epiq. *Id.* While Epiq's review for fraud is ongoing, even assuming approximately 60% of the submitted claims will be removed as fraudulent, that represents over 200,000 valid claims. *See id.* ¶ 36.

The deadline to request exclusion from or object to the Settlement passed on June 22, 2026. *Id.* ¶ 32. Of these total claims, *none* of the Settlement Class Members have either sought to be excluded from the Settlement or have objected to the Settlement. *Id.* Thus, Settlement Class Members' overall perception of the Settlement has been overwhelmingly positive. *Stonehocker v. Kindred Healthcare Operating LLC*, No. 19-CV-2494, 2021 WL 1643226, at *5 (N.D. Cal. Apr. 27, 2021) (finding "[t]he reaction of the class was overwhelmingly positive" where "the Court received only three opt-outs and no objections"); *see also Noll v. eBay, Inc.*, 309 F.R.D. 593, 608 (N.D. Cal. 2015) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness"). This "strongly favors final approval." *Edwards v. Nat'l Milk Producers Fed'n*, No. 11-CV-04766, 2017 WL 3623734, at *2, *8 (N.D. Cal. June 26, 2017) (factor favored approval where over 307,000 class members had submitted claims yet "only eight objections and one request for exclusion were received out of the millions of class members receiving notice."), *aff'd sub nom., Edwards v. Andrews*, 846 Fed. App'x 538 (9th Cir. 2021); *see also Knapp v. Art*, 283 F. Supp. 3d 823, 833-34 (N.D. Cal. 2017) ("A court may

17

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:19-CV-00835-FMO-SP

properly infer that a class action settlement is fair, adequate, and reasonable when few class members object to it.").

>    **g.**    *No Governmental Entity Has Objected to the Settlement*

Epiq sent CAFA notice on December 12, 2025, to the Attorney General of California and to the Attorney General of the United States. Azari Decl. ¶¶ 6-7. To date, no governmental entity has objected to the Settlement. This further supports final approval of the Settlement. *See LaGarde v. Support.com, Inc.*, No. C 12-0609, 2013 WL 1283325, at *7 (N.D. Cal. Mar. 26, 2013) (noting that CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures).

Moreover, Class Counsel is aware of no other cases that will be affected by the Settlement. Counsel Decl. ¶ 29.

>    **3.**    **The Settlement treats Settlement Class Members equitably.**

The Settlement provides benefits to all Settlement Class Members who submit Valid Claim Forms, without any preferential treatment of Class Representatives or any segment of the Class. *See* Fed. R. Civ. P. 23(e)(2)(D). Every Settlement Class Member purchased a Cosequin® Product and is, thus, capable of submitting a claim for the same monetary relief based on the total number of Cosequin® Products purchased. Further, because all Settlement Class Members are California residents who purchased the Cosequin® Products within the Class Period, the Settlement does not treat any Settlement Class Member inequitably.

Class Counsel have also sought a $7,500 service award for each of the Plaintiffs for their dedication to and time expended during this litigation and in furtherance of putative class members' interests. *See* ECF No. 219, at 18-19. Such service awards "are fairly typical in class action cases" and are intended to compensate class representatives for work done on behalf of the class, to make up

18

for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). These service awards are appropriate given the effort expended by the Class Representatives, including working closely with Plaintiffs' counsel during discovery and sitting for depositions. *See, e.g.*, *Musgrove v. Jackson Nurse Pros., LLC*, CV 17-6565 FMO, 2022 WL 18231364, at *9 (C.D. Cal. June 24, 2022) (Olguin, J.) (finding $7,500 service award to be appropriate). Such a service award, if awarded here, would not constitute preferential treatment. *See Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 328-29 (C.D. Cal. 2016) (Olguin, J.). Plaintiffs were not promised that they would receive such an award for their participation in this litigation, and their agreement to serve as class representatives was not conditioned on receiving such an award. Counsel Decl. ¶ 55. The Court has already found that "the requested incentive payments are reasonable," based upon the "vital role" Plaintiffs played in furtherance of the litigation, their active participation, and their ensuring that the interests of putative class members were protected. ECF No. 218, at 11.

### 4. The proposed Fee and Expense Award is fair and reasonable.

Class Counsel has separately moved for $3,795,000 in attorneys' fees and expenses. *See generally* ECF No. 219. As explained more fully in that motion and above, Class Counsel's requested attorneys' fees and expenses are fair, reasonable, and justified. Class Counsel's requested attorneys' fees represent a 29.64% request, and their total lodestar, as of April 23, 2026, represented a *negative* 0.81 multiplier. *Id.* at 6-7, 12, 15-16. Since that date, Class Counsel have expended additional time in overseeing the administration of this Settlement, in drafting this Motion, and will spend additional time preparing for the Final Approval Hearing. Because Class

19

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:19-CV-00835-FMO-SP

Counsel's total lodestar *already* exceeds their total requested attorneys' fees and expenses award request, Class Counsel do not intend to include any time expended on their efforts following the filing of that motion. If this additional time and effort were included in their lodestar calculations, it would further reduce the *already-negative* multiplier. This highlights the inherent fairness and reasonableness of the requested fee and expense award.

**B.     The Court Should Certify the Settlement Class for Settlement Purposes.**

Where a court has previously granted class certification, it need not reconsider class certification within the settlement context, absent relevant evidence suggesting that reconsideration of the Rule 23 factors is necessary. *Carter v. Anderson Merchandisers LP*, No. DCV 08-0025-VAP, 2010 WL 1946784, at *4 (C.D. Cal. May 11, 2010) ("[T]he Court is not required to revisit certification absent any evidence suggesting reconsideration is necessary."). Because the Court here has already rigorously considered the Rule 23 factors, finding that they support certification—and because the Settlement and Notice Plan adopt the Court's certified class definition and no other significant developments have occurred[5]—the Court need not (and should not) disturb its previous certification order. Nevertheless, a concise overview of the Rule 23 factors illustrates that the Court should certify the Settlement Class and grant final approval.

**1.     The Settlement Class meets the requirements of Rule 23(a).**

The Settlement Class as defined is sufficiently numerous so as to make joinder impracticable. Fed. R. Civ. P. 23(a)(1). Following the Court-approved

---

[5] In fact, as noted, the Settlement includes *more* Cosequin® Products to reflect Nutramax's label changes over time. *See supra* notes 2, 4; *see also* SA § 2.37.

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:19-CV-00835-FMO-SP

notice, hundreds of thousands of claims have been received by Settlement Class Members. *See* Azari Decl. ¶ 34. Notably, Nutramax has not challenged numerosity in this case. The Court previously found that numerosity had been satisfied, ECF No. 146, at 11, and there is no reason to disturb that finding.

Rule 23 commonality requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Court previously noted that there were common questions of law and fact regarding whether consumers were likely to be deceived by representations relating to the joint health benefits of the Cosequin® Products, whether Nutramax communicated these benefits, and whether such representations were material to a reasonable consumer. ECF No. 146, at 12. These questions "not only address required elements of [P]laintiffs' CLRA claim, but they also are susceptible to common proof." *Id.* at 12-13 (citations omitted). The Court correctly found then that commonality had been satisfied, and it should reaffirm that decision for purposes of settlement and final approval.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and "assure[s] that the interest of the named representative[s] align[] with the interests of the class," *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). As the Court explained, "plaintiffs' claims are based on the same facts, that they 'relied upon defendants' representations in purchasing Cosequin® and expected the Products to be effective as claimed on the packaging,' and [are based on] the same legal and remedial theories as the claims of the rest of the class members." ECF No. 146, at 20.

Courts employ a two-pronged approach to analyze adequacy under Federal Rule of Civil Procedure 23(a)(4), examining whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and whether "the

named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1020). The Court has already found that Plaintiffs have no conflicts of interest with the Class Members, and they have zealously advocated on behalf of and served the interests of the Class throughout this litigation and Settlement. Likewise, Plaintiffs' counsel (whom the Court appointed as Class Counsel) have vigorously represented the interests of the Class and have done so throughout the administration of this Settlement. *See* ECF No. 146, at 21-22; *see also* Counsel Decl. ¶¶ 63-64.

### 2. The Class Meets the Requirements of Rule 23(b)(3).

The Settlement Class meets the requirements of Rule 23(b)(3) because (1) common questions predominate over any questions affecting only individual members here, and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance tests the cohesion of the class, "ask[ing] whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). For a CLRA claim, predominance is satisfied where "causation, on a classwide basis, may be established by materiality," meaning that "[i]f the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class." ECF No. 146, at 24 (quoting *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011)). The Court has already found that the alleged misrepresentations by Nutramax are material—relating to central contentions of the Cosequin® Products' functionality as a joint health supplement—and Class Members were uniformly exposed to the claims when purchasing the products. *Id.*

22

at 24-26. These questions, which impact the Settlement Class as a whole, predominate over any individualized ones that may exist, as the Court has already correctly found. *Id.* at 29-30.

Second, Settlement Class Members' potential damages are relatively small, which render the costs of litigation prohibitive for most. Moreover, Nutramax has not identified any manageability issues that would preclude maintaining the case as a class action, and that certainly is not the case under the Settlement. The Court has already noted that other courts considering similar cases have "routinely" found that the class action is the superior form of adjudication. ECF No. 146, at 34 (citing cases). A class action is the superior form of adjudicating this case, and this further favors final approval.

**C.     The Notice Program Has Provided the Best Notice Practicable.**

For a settlement class, the Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice should "generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard." *Churchill Village, L.L.C.*, 361 F.3d at 575. The proposed notice program accomplishes that.

Following dissemination of all Notice in accordance with the Court-approved Notice Plan, Epiq estimates that Notice reached approximately 80% of Settlement Class Members. Azari Decl. ¶ 9; *see also supra* Section IV.B. (explaining all Notice efforts). This figure illustrates the wide, successful reach of the Notice Plan and aligns with those in other court-approved notice programs. *See Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1255 (C.D. Cal. 2016) (Olguin, J.) (finding settlement's notice plan provided the best practicable notice because it "fairly and

adequately informed class members" and had been estimated to reach 75% of class members). Accordingly, the Court should find (1) the Notice Plan was reasonably calculated to give actual notice to Settlement Class Members of their rights to receive benefits from the Settlement, or otherwise how to exclude themselves from or object to the Settlement, and (2) the Notice Plan satisfied due process requirements and any other applicable requirements under federal law. *Hanlon*, 150 F.3d at 1024 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810-13 (1985)).

Epiq's efforts throughout the Notice period effectuated the Notice Plan, as ordered by this Court in its Preliminary Approval Order, ECF No. 218, and were designed to ensure the widest possible reach and provide the most practicable notice of the Settlement to Settlement Class Members. Epiq's efforts as Settlement Administrator, and the Notice as effectuated, support final approval.

## VIII.  CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court (1) finally approve the Settlement; (2) affirm its certification of the Settlement Class; (3) confirm its appointment of Class Counsel and Plaintiffs as Class Representatives; (4) grant the requested attorneys' fees and expense award; (5) grant the requested service awards to the named Plaintiffs; (6) retain jurisdiction over this matter to resolve issues related to interpretation, administration, implementation, and enforcement of the Settlement; and (7) enter final judgment dismissing the Action.

Dated:  July 13, 2026

/s/ *Adam A. Edwards*

Adam A. Edwards (*pro hac vice*)
aedwards@milberg.com
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**

24

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:19-CV-00835-FMO-SP

800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

Matthew D. Schultz (*pro hac vice*)
mschultz@levinlaw.com
**LEVIN PAPANTONIO**
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Telephone: (850) 435-7140
Facsimile: (850) 436-6140

Daniel L. Warshaw
dwarshaw@pwfirm.com
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

*Attorneys for Plaintiffs
and the Settlement Class*

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:19-CV-00835-FMO-SP

## CERTIFICATE OF COMPLIANCE

I, Adam A. Edwards, hereby certify that the foregoing Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement contains 6,995 words, which complies with the word limit of Local Rule 11-6.1.

/s/ *Adam A. Edwards*
Adam A. Edwards

*Attorney for Plaintiffs*
*and the Settlement Class*

26

## CERTIFICATE OF SERVICE

I, Adam A. Edwards, hereby certify that on July 13, 2026, I caused a true and correct copy of the foregoing Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement to be served upon the following by electronic mail:

Kathy J. Huang (SBN 240677) (kathy.huang@alston.com)
John E. Stephenson, Jr. (john.stephenson@alston.com)
Scott A. Elder (scott.elder@alston.com)
Jason D. Rosenberg (jason.rosenberg@alston.com)
Jenny A. Hergenrother (jenny.hergenrother@alston.com)
Alan F. Pryor (alan.pryor@alston.com)
Kara L. McCall (kara.mccall@alston.com)
Joshua A. Glikin (jglikin@shulmanrogers.com)

*Attorneys for Defendants*

/s/ *Adam A. Edwards*
Adam A. Edwards

*Attorney for Plaintiffs
and the Settlement Class*

27