Adam A. Edwards (*pro hac vice*)
aedwards@milberg.com
MILBERG COLEMAN BRYSON
  PHILLIPS GROSSMAN, PLLC
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

Daniel L. Warshaw
dwarshaw@pwfirm.com
PEARSON WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

*Attorneys for Plaintiffs*
*and the Certified Class*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN LYTLE and CHRISTINE MUSTHALER,<br><br>Plaintiffs,<br><br>v.<br><br>NUTRAMAX LABORATORIES, INC. and NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC.,<br><br>Defendants. | Case No. 5:19-CV-00835-FMO-SP<br><br>Assigned to: Hon. Fernando M. Olguin<br><br>**DECLARATION OF CLASS COUNSEL IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

1

DECLARATION OF CLASS COUNSEL
CASE NO. 5:19-CV-00835-FMO-SP

I, Adam A. Edwards, declare as follows:

1.      I represent Plaintiffs Justin Lytle and Christine Musthaler ("Plaintiffs" or "Class Representatives") in the above-captioned class action. I have worked on this litigation since the case was first filed in May 2019 through to the present. I, along with other Plaintiffs' counsel, have led Plaintiffs' efforts in this case and my firm, Milberg Coleman Bryson Phillips Grossman PLLC, along with the firm Levin Papantonio, were appointed as Class Counsel in this Action. ECF No. 146, at 36. I have personal knowledge of all matters addressed in this Declaration, including the negotiations that culminated with the filing of the Settlement now pending before the Court.

2.      Given the significant amount of effort and resources expended in this multi-year litigation, if the Settlement is approved, consumers who purchased Cosequin® Products in California will receive meaningful cash benefits. I offer this Declaration in support of final approval of the Settlement. In support, an overview of the litigation and the Proposed Class Counsel's qualifications, as well as the named Plaintiffs' efforts throughout this litigation, are included below.

### *Overview of this Litigation*

3.      Throughout the litigation, Defendants Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. (collectively, "Nutramax") have denied Plaintiffs' allegations and continue to deny that the Cosequin® Products are marketed, packaged, or labeled in a misleading manner.

4.      Throughout all phases of this litigation, Plaintiffs' counsel and their respective law firms have undertaken an enormous amount of work, effort, and expense in this litigation, demonstrating a serious devotion to see this Action through to a successful outcome. Collectively, thus far in this litigation, which has spanned more than six years, Plaintiffs' counsel (whom the Court appointed Class Counsel) have invested thousands of hours, as well as significant costs and

expenses, in this pursuit.

5. Plaintiffs' counsel pledge to continue this work, effort, and expenditure through to the final approval of this Settlement, including through the settlement administration and distribution process.

6. On the pleadings, Plaintiffs' counsel engaged in substantial research and hard-fought motion practice. For example, prior to filing, Plaintiffs' counsel performed extensive research regarding the Cosequin® Products, working closely with consulting experts regarding whether the products' claims regarding canine joint health were potentially misleading. After the filing of the Complaint, Plaintiff amended as of right based upon an early meet-and-confer with Nutramax. The Parties fully briefed two motions to dismiss and a motion to strike the national class allegations, and Plaintiffs amended their complaint twice. Plaintiffs' counsel engaged in similar efforts regarding each amendment. The Court denied Nutramax's motions as to Plaintiff's CLRA claim and transferred the action to this Court. *See* ECF Nos. 61, 66.

7. After the pleadings closed in December 2019, the Parties began to engage in discovery. Plaintiffs served interrogatories, requests for admission and three sets of requests for production of documents to each Nutramax Defendant, which included extensive meet-and-confer efforts with Nutramax's counsel and negotiation of both an ESI protocol and Protective Order. Likewise, Nutramax served requests for admission, three sets of interrogatories, and five sets of requests for production of documents to each of the named Plaintiffs. Nutramax produced approximately 12,000 documents, totaling more than 50,000 pages, which Plaintiffs' counsel reviewed.

8. Further, Plaintiffs' counsel issued subpoenas for the production of relevant sales and price data to various third-party retailers, who sold the Cosequin® Products at issue as well as comparator products. Plaintiffs' subpoena

3

to IRI for comparator products alone resulted in production of a dozen spreadsheets comprised of more than 2.3 million rows of sales and price data that had to be reviewed and analyzed. The IRI data for Nutramax sales and pricing comprised an additional 191,000 rows and 130 columns (24.8 million cells) of data for attorney and expert analysis. Plaintiffs' counsel engaged in extensive meet-and-confer efforts regarding these third-party subpoenas and reviewed all documents produced pursuant to those subpoenas. Defendants also issued third-party subpoenas, including subpoenas to Amazon, PetSmart, Ralph's Supermarkets and to Plaintiffs' respective veterinary care providers.

9. The Parties also engaged in depositions. Plaintiffs' counsel took depositions of Nutramax's identified Rule 30(b)(6) designees and other Nutramax-affiliated and third-party fact witnesses, including:

    a. Elizabeth Barrett – a third-party marketing consultant involved in Cosequin® consumer market research;

    b. Jeffrey Creech – Nutramax's Chief Operating Officer and Rule 30(b)(6) designee;

    c. David Griffin, DVM – Nutramax's Vice President of Innovation;

    d. Susanne Kempf – Project Manager for the Cosequin® brand;

    e. Eric Linn – Nutramax's Director of Regulatory Compliance

    f. David Moore – Nutramax's Vice President of Sales and Rule 30(b)(6) designee;

    g. Godwin Omorogieva – Nutramax's Vice President of Quality; and

    h. Rachel Tuz – Plaintiff Musthaler's veterinarian.

10. Nutramax took both Plaintiffs' depositions as well as the deposition of Pam Lytle (Plaintiff Justin Lytle's mother). Plaintiffs' counsel worked closely

4

with each Plaintiff to prepare them for deposition, including closely reviewing all discovery responses and produced documents relating to each Plaintiff. Plaintiffs' counsel defended each Plaintiff's deposition.

11.     Plaintiffs' counsel undertook testing of the Cosequin® Products as it related to their allegations. The case also included extensive review of the scientific literature on canine joint health and joint health supplements. In addition to the numerous scientific publications cited on Nutramax's website, Plaintiffs' counsel reviewed more than 175 scientific publications in preparing the case and deposing fact and expert witnesses.

12.     The Parties also engaged in significant expert discovery. Plaintiffs' counsel worked with their liability and damages experts, overseeing their review of pertinent documents and working closely with the experts as they drafted their reports. Plaintiffs' counsel prepared each expert for deposition by Nutramax, including closely reviewing documents and relevant expert reports. Plaintiffs' counsel defended each deposition of their experts and deposed Nutramax's experts, which required significant preparation. For example, Nutramax's expert reports totaled more than 3,500 pages (excluding additional documents produced in advance of depositions). Expert depositions taken by the Parties included:

    a.  Howard Beales – Nutramax's expert on claim substantiation and advertising regulations;

    b.  Randolph Bucklin – Nutramax's economics and damages rebuttal expert;

    c.  George Dodge – Nutramax's expert on veterinary medicine and claims substantiation for glucosamine/chondroitin formulations;

    d.  Bernard Jansen – Nutramax's social media expert opining on traffic to Nutramax websites nationally and within California;

    e.  Denis Marcellin-Little – Nutramax's expert on canine orthopedic

medicine and medical interventions;

    f.  Carol Scott – Nutramax's consumer market survey and marketing expert (two reports);

    g.  Olivier Toubia – Nutramax's economics and damages expert (two reports);

    h.  Jean-Pierre Dubé – Plaintiffs' expert on economics and damages (two reports);

    i.  Richard Evans – Plaintiffs' expert on veterinary study design and statistics; and

    j.  Bruce Silverman – Plaintiffs' marketing expert.

13. Plaintiffs' counsel then moved for class certification. *See* ECF No. 91-94. In so moving, Plaintiffs' counsel carefully reviewed all relevant discovery, combing through thousands of documents and consulting with their experts, to draft the Motion for Class Certification and related filings (including *Daubert* motions and full briefing on Plaintiffs' experts Jean-Pierre Dube and Bruce Silverman). Nutramax opposed that motion, and the Parties fully briefed the issues for the Court via a joint brief that the Parties submitted. ECF No. 92. Although Plaintiffs noticed the Motion for Class Certification for a hearing, the Court *sua sponte* vacated the hearing on the Motion and placed it under submission. ECF No. 108.

14. Nutramax also moved for summary judgment and brought various motions in limine to exclude expert testimony. *See* ECF Nos. 128, 131, 135. Plaintiffs' counsel opposed these motions, and the Parties briefed the issues for the Court via joint briefs that they submitted.

15. Shortly thereafter, the Court granted certification, certifying a class of California consumers and appointing Plaintiffs' counsel as Class Counsel and the named Plaintiffs as Class Representatives. ECF No. 146.

6

16.    Following certification, Nutramax sought permission from the Ninth Circuit to appeal that Court's order pursuant to Rule 23(f). Plaintiffs' counsel responded to this request to appeal, which the Ninth Circuit granted. The Parties then fully briefed the issues of class certification on appeal. Oral argument was held and, ultimately, the Ninth Circuit affirmed class certification. ECF Nos. 157, 160. Nutramax sought review in the Supreme Court of the United States via a petition for certiorari, which was denied.

17.    Upon remand of the case to the district court, Plaintiffs' counsel drafted a proposed Notice Plan to provide notice to the certified Class Members. ECF No. 165.

18.    At that point, the Parties re-opened informal settlement negotiations after having reached an impasse at mediation earlier in the case. Shortly thereafter, the Parties agreed to mediate before the Honorable David Duncan, a respected, experienced mediator that the Parties jointly selected.

### *Settlement Negotiations and Mediation*

19.    On April 10, 2025, the Parties attended mediation with the Honorable David Duncan. Judge Duncan scrutinized the Parties' claims and defenses, working cooperatively with the Parties to help them reach a resolution. Following these efforts, the Parties reached an agreement in principle to settle, with the aid of Judge Duncan.

20.    Following the mediation, the Parties continued to finalize the proposed Settlement, while ensuring that it continued to align with their agreement in principle. On July 28, 2025, the Parties finalized and fully executed the proposed Settlement. The Parties presented this proposed Settlement to the Court on July 28, 2025. ECF No. 203-2.

21.    Following two hearings, the Court suggested further revisions to the proposed Settlement. The Parties met and conferred regarding the Court's

suggestions and further revised the proposed Settlement. The Parties presented this amended proposed Settlement to the Court on December 4, 2025. ECF No. 213-2.

22. Following another hearing, the Court suggested additional revisions, which the Parties incorporated. The Parties presented this further amended proposed Settlement to the Court on January 13, 2026. ECF No. 217.

23. The Court granted preliminary approval of the proposed Settlement, including approving the proposed Notice Plan, on February 2, 2026. ECF No. 218.

### *Class Recovery and Views of Class Counsel*

24. The Settlement provides for a total gross fund of $11,500,000, providing Settlement Class Members who submit a valid claim up to $25.00 per unit of Cosequin® Product purchased in California during the Class Period. Settlement Class Members may submit a claim for multiple purchased units, with a maximum compensation of up to $150.00 for multiple purchased units of Cosequin® Products per household.

25. Weighing the benefits of the Settlement against the risks of continuing litigation supports a finding that the Settlement is an excellent result for Settlement Class Members, and is within the range of reasonableness required for final approval.

26. In first considering potential settlement, Class Counsel worked closely with Plaintiffs' damages expert to estimate a likely price premium that could be calculated in this case based upon Plaintiffs' allegations that the Cosequin® Products are misleading. Plaintiffs' expert, Professor Jean-Pierre H. Dubé calculated a likely price premium in the range of 25% to 35%. Applying an average 30% price premium, which Professor Dubé considered to be reasonable in his experience for a case like this, measured against Nutramax's available California sales data, yielded estimated class-wide damages of $17,112,007.

DECLARATION OF CLASS COUNSEL
CASE NO. 5:19-CV-00835-FMO-SP

27. A Settlement Fund of $11,500,000 represents 67.2% of these estimated damages. When weighed against the significant risks, time, and expenses of further litigation—including the risk that Plaintiffs' claims fail entirely, or that the price premium and damages are found to be lower—the Settlement is a reasonable, if not an excellent compromise.

28. While the Court has certified a Class here, significant risks remain for Plaintiffs. Indeed, Nutramax will likely re-raise its motion for summary judgment. *See* ECF No. 128. While Plaintiffs would oppose summary judgment, there remains a risk that the Court could be persuaded to grant it in whole or in part, potentially leading to dismissal of all or part of Plaintiffs' claims or proof. Plaintiffs would also continue to face the risk that a class could be decertified. Further, if the case proceeded to trial, Plaintiffs would face the significant risk that a jury could or would be unconvinced of their claims. The Settlement allows Plaintiff and Settlement Class Members to avoid these risks, additional expenses, and delays in favor of immediate recovery.

29. Class Counsel are unaware of any other cases impacted by this Settlement.

### *Settlement Administrator and* Cy Pres *Selection*

30. In preparation for filing for preliminary approval of the Settlement and direction of notice to the Settlement Class, the Parties considered multiple experienced notice and settlement administration vendors, fielding bids from three vendors.

31. Following review of materials and meetings with each of the potential vendors, and considering the costs associated with these vendors and the efforts required to present notice to the Class in this Action, Class Counsel ultimately selected Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the proposed Settlement Administrator. In granting preliminary approval, the Court appointed

Epiq as the Settlement Administrator. ECF No. 218, at 13.

32.    Nutramax has agreed to pay all administrative costs related to the settlement in addition to the amount that represents the Settlement Fund. Thus, the ultimate costs for administration of the Settlement will *not* be paid from or impact the Settlement Fund and the benefits to Class Members.

33.    The Parties also cooperatively considered the *cy pres* recipient. Recognizing its unique mission, which was particularly relevant to the facts of this case, the Parties jointly selected Valor Service Dogs as the proposed *cy pres* recipient.

34.    Valor Service Dogs is a national, non-profit organization that "helps wounded post-9/11 veterans and first responders regain their independence, return to civilian life, and maintain successful partnerships through the training and placing of mobility assistance and PTSD service dogs." https://valorservicedogs.org (last accessed July 9, 2026).

35.    Class Counsel do not have any interest in or pre-existing relationship with the proposed *cy pres* recipient. Class Counsel also have confirmed that none of the named Plaintiffs have any interest in or relationship with the proposed *cy pres* recipient.

### *Notice and Reactions of the Settlement Class*

36.    As described in the Declaration of Cameron R. Azari, Esq. Regarding Implementation and Adequacy of Notice Plan, submitted concurrently with this filing, Epiq disseminated Notice pursuant to this Court's preliminary approval order, ECF No. 218.

37.    Specifically, Epiq provided CAFA notice, as required by 28 U.S.C. § 1715, on December 12, 2025.

38.    Epiq sent Email Notice to those Settlement Class Members for whom emails were known on March 9, 2026. The Email Notice included an embedded

10

link to the Settlement Website, through which Settlement Class Members could easily access the Long Form Notice.

39.    Epiq also undertook a digital advertising and social media campaign by advertising the Settlement digitally on *Google Display Network* and *Yahoo Audience Network* (in English and Spanish), and on social media, including on *Facebook* and *Instagram* (in English and Spanish). This digital advertising and social media campaign ran from March 9, 2026, through April 19, 2026.

40.    Epiq also sponsored search listing advertisements regarding the Settlement in California on *Google*, *Yahoo!*, and *Bing*, the three most highly-visited internet search engines, from March 9, 2026, and continuing through July 21, 2026 (the deadline for Settlement Class Members to timely submit valid claims).

41.    Epiq also issued an information release regarding the Settlement on March 9, 2026, on *PR Newswire's California* and *California Hispanic Newslines* to 600 general media (print and broadcast) outlets. Additionally, Epiq issued Publication Notice on four separate occasions over a four-week period in *USA Today* newspapers in San Francisco, Los Angeles, and Phoenix.

42.    Beginning on March 6, 2026, the Settlement Website (https://www.cosequincasettlement.com) hosted important, Settlement-related documents for Settlement Class Members to download and review. These documents included: the Claim Form, the Long Form Notice, the Email Notice, the Second Amended Complaint, the Settlement Agreement, the Court's Preliminary Approval Order, and Plaintiffs' Notice of Motion and Motion for Attorneys' Fees, including the proposed order granting that motion and the declarations by Class Counsel in support of that motion. Plaintiffs' Motion for Attorneys' Fees and its attachments were added to the Settlement Website shortly after their filing. As of

11

June 30, 2026, there have been 1,712,774 unique visitor sessions to the Settlement Website and 5,529,403 website pages presented on the Settlement Website.

43.     Beginning on March 6, 2026, Epiq created a toll-free telephone number (1-888-899-7783) for Settlement Class Members to call and obtain additional information regarding the Settlement. The automated telephone system has been available 24 hours per day, 7 days per week, since it opened. As of June 30, 2026, the toll-free telephone number has received 59 calls, representing 139 minutes of use.

44.     Epiq also established a postal mailing address for the Settlement to allow Settlement Class Members to request additional information about the Settlement.

45.     The deadline for individuals to request exclusion from the Settlement or to object to the Settlement passed on June 22, 2026. As of June 30, 2026, there are zero requests by Settlement Class Members to be excluded from the Settlement, and there are zero objections to the Settlement.

46.     The deadline for Settlement Class Members to submit valid Claim Forms is on July 21, 2026. As of June 30, 2026, Epiq has received a total of 664,857 submitted claims. This figure remains preliminary pending the July 21, 2026 deadline and pending Epiq's review of all submitted claims to remove any fraudulent claims.

47.     Because the deadline for Settlement Class Members to submit their claims has not yet passed, and because Epiq has not yet completed its review of all submitted claims for fraud, Plaintiffs will file a supplement prior to the Court's final approval hearing detailing the final Settlement Class data.

### *Contributions of Class Representatives*

12

48.     Each of the named Plaintiffs have expended serious time and effort in helping Plaintiffs' counsel litigate this case. Throughout this six-year litigation, they have maintained an active role in the litigation to ensure that all Class Members' interests are protected.

49.     Prior to both filing the original complaint and amending the complaint, each named Plaintiff provided extensive information regarding their purchase of Cosequin® Products. Each of the Plaintiffs reviewed and approved these filings.

50.     During discovery, each of the Plaintiffs carefully reviewed discovery requests directed to them, spoke extensively with Plaintiffs' counsel regarding these requests, performed a diligent and exhaustive search to comply with these requests, and, where applicable, produced documents in response to these requests.

51.     Moreover, each of the named Plaintiffs spent significant time preparing for their depositions, working closely with Plaintiffs' counsel to review all relevant filings, their discovery responses, and any document productions that may be addressed during a deposition. And each of them sat for a deposition.

52.     Indeed, in recognition of the named Plaintiffs' efforts and contributions to this Action, the Court has already appointed them as Class Representatives. ECF No. 146, at 36. In granting preliminary approval, the Court confirmed this determination. ECF No. 218, at 13.

53.     The Plaintiffs' active roles continued during negotiations of the Settlement. These named Plaintiffs remained in regular contact with Class Counsel regarding the status of potential settlement. The Plaintiffs, where necessary, asked questions and discussed specific terms of the Settlement, to ensure the interests of all Class Members affected by the Settlement were protected. And ultimately, each of the Plaintiffs carefully reviewed the Settlement, including discussing it with Class Counsel, before signing and executing the Settlement Agreement.

13

DECLARATION OF CLASS COUNSEL
CASE NO. 5:19-CV-00835-FMO-SP

54.    Given the substantial discovery undertaken in this six-year long litigation, each of the named Plaintiffs have spent many hours reviewing, preparing for, and contributing to the prosecution of this case on behalf of impacted consumers. In light of this significant commitment of time, effort, and dedication to the interests of absent class members, Plaintiffs' counsel believe it is appropriate under applicable law that each of the named Plaintiffs (the already-appointed Class Representatives) be awarded an incentive award in the amount of $7,500 each. *See* ECF No. 219, at 18-19. If awarded, this award would be paid by Nutramax from the net Settlement Fund.

55.    At no point were any of the named Plaintiffs ever promised any such award, nor did either condition their representation, service, or support on the expectation of receiving money. Further, Plaintiffs' counsel did not promise or guarantee any named Plaintiff (or any other Class Member or potential class member) that they would receive such an award.

### *Efforts and Qualifications of Class Counsel*

56.    Plaintiffs are represented by Milberg Coleman Bryson Phillips Grossman PLLC ("Milberg") and Levin Papantonio. The Court has already appointed Milberg and Levin Papantonio as Class Counsel. ECF No. 146, at 36. In granting preliminary approval, the Court confirmed this determination. ECF No. 218, at 13.

57.    Class Counsel previously presented their firm résumés for the Court's consideration. *See* ECF No. 145. In bringing their separate Motion for Attorneys' Fees and Costs and Class Representative Service Awards, ECF No. 219, Class Counsel presented updated firm résumés for the Court's consideration. *See* ECF No. 219-1 through 219-3.

58.    This Action required a considerable amount of effort and resources expended jointly by Milberg and Levin Papantonio. Prior to filing the original

14

complaint, Plaintiffs' counsel performed extensive research regarding the facts and potential claims, and developing the legal theories Plaintiffs pursued. Plaintiffs' counsel also expended great time and effort working closely with the Plaintiffs, as well as in preparing and issuing discovery requests and reviewing discovery responses and Nutramax's considerable document production.

59.    The Court properly recognized Milberg's and Levin Papantonio's significant class action knowledge and experience, as well as their substantial work in supporting this litigation on behalf of Plaintiffs and the Class, when appointing them as Class Counsel. ECF No. 146, at 36; *see also* ECF No. 218, at 13.

60.    Class Counsel have continued to work on behalf of the Settlement Class throughout the administration of this Settlement, and will continue to do so through final approval.

### *Attorneys' Fees and Costs*

61.    In recognition of the substantial time and effort Class Counsel have expended throughout this litigation in support of the Class, Class Counsel have separately moved for an award of attorneys' fees in the amount of $3,409,054.03 and for costs in the amount of $385,945.97—totaling $3,795,000. *See generally* ECF No. 219.

62.    In total throughout this litigation, Class Counsel have expended over 4,040.5 hours, amounting to a total lodestar figure of $4,299,506.43 (as of April 23, 2026). Since that date, Class Counsel have continued to work to represent the Settlement Class in overseeing administration of the Settlement and will continue to represent the Settlement Class through final approval.

63.    Class Counsel's total lodestar figures far exceed the amount they request for both attorneys' fees and costs ($3,795,000). When performing a lodestar crosscheck, this represents a negative multiplier of 0.81, illustrating the inherent reasonableness of Class Counsel's request. *See id.* at 16.

DECLARATION OF CLASS COUNSEL
CASE NO. 5:19-CV-00835-FMO-SP

64.     Notably, Nutramax has not objected to or opposed Class Counsel's request of attorneys' fees, costs, or class representative service awards.

### *Conclusion*

65.     For the reasons set forth above, and for the reasons stated in Plaintiffs' Motion for Final Approval of Class Settlement and associated filings, Class Counsel believe that the Settlement is fair, reasonable, and adequate, and provides meaningful relief to the Settlement Class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of July, 2026, at Knoxville, Tennessee.


/s/ *Adam A. Edwards*
Adam A. Edwards

DECLARATION OF CLASS COUNSEL
CASE NO. 5:19-CV-00835-FMO-SP