# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

JUSTIN LYTLE and CHRISTINE MUSTHALER,

Plaintiffs,

v.

NUTRAMAX LABORATORIES, INC. and NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC.,

Defendants.

CASE NO. 5:19-CV-00835-FMO-SP

Assigned to Hon. Fernando M. Olguin

**DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND ADEQUACY OF NOTICE PLAN**

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND ADEQUACY OF NOTICE PLAN

I, Cameron R. Azari, Esq., hereby declare and state as follows:

1. My name is Cameron R. Azari, Esq.  I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2. I am a nationally recognized expert in the field of legal notice and have served as an expert in hundreds of federal and state cases involving class action notice plans.

3. I am a Senior Vice President of Epiq Class Action & Claims Solutions, Inc. ("Epiq") and the Managing Director of Epiq Legal Noticing (aka Hilsoft Notifications), a business unit of Epiq that specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans.

4. The facts in this declaration are based on my personal knowledge, as well as information provided to me by my colleagues in the ordinary course of business at Epiq and Epiq Legal Noticing (hereinafter "Epiq").

## OVERVIEW

5. This declaration describes the successful implementation of the Settlement Notice Plan ("Notice Plan") and notice (the "Notice" or "Notices") for *Justin Lytle and Christine Musthaler v. Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc.*, Case No. 5:19-cv-00835, in the United States District Court for the Central District of California.  I previously executed my *Declaration of Cameron R. Azari, Esq. Regarding Notice Plan* ("Notice Plan Declaration") on July 25, 2025, and more recently my *Amended Declaration of Cameron R. Azari, Esq. Regarding Notice Plan* ("Amended Notice Plan Declaration") on December 2, 2025, which described the Notice Plan, detailed Epiq's class action notice experience, and attached Epiq's *curriculum vitae*.  I also provided my educational and professional experience relating to class actions and my ability to render opinions on overall adequacy of notice programs.

## CAFA NOTICE

6. On August 15, 2025, Epiq sent two CAFA Notice Packages ("CAFA Notice"), as required by the Federal Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1715.  The CAFA Notice was mailed via United Parcel Service ("UPS") to the Attorney General of the United States and the Attorney General

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND ADEQUACY OF NOTICE PLAN

of California.  Details regarding the CAFA Notice mailing are provided in the *Declaration of Kyle S. Bingham on Implementation of CAFA Notice*, dated August 15, 2025, which is included as **Attachment 1**.

7.   Subsequently, on December 12, 2025, Epiq sent two supplemental CAFA Notices, as required by the Federal Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1715.  The CAFA Notice was mailed via UPS to the Attorney General of the United States and the Attorney General of California.  Details regarding the supplemental CAFA Notice mailing are provided in the *Supplemental Declaration of Kyle S. Bingham on Implementation of CAFA Notice*, dated December 19, 2025, which is included as **Attachment 2**.

## NOTICE PLAN METHODOLOGY

8.   Federal Rules of Civil Procedure, Rule 23 directs that notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" and that "the notice may be by one or more of the following: United States mail, electronic means, or other appropriate means."[1]  The Notice Plan as implemented satisfied these requirements.

9.   This Notice Plan as designed and implemented reached the greatest practicable number of Class Members.  The Notice Plan reached approximately 80% of the Class with direct notice and a digital/internet notice plan (digital and social media notice), with an average frequency of three times.  The reach was further enhanced by publication notice, internet sponsored search listings, an informational release, and a Settlement Website, which were not included in the reach calculation.  "Reach" refers to the percentage of the unduplicated audience exposed to the notice.  Notice exposure is defined as the opportunity to see a notice.  "Frequency" of notice exposure is the average number of times that those reached by a notice were exposed to the notice.  In my experience, the Notice Plan was consistent with other court-approved notice plans, was the best notice practicable under the circumstances of this case, and satisfied the requirements of due process, including its "desire to actually inform" requirement.[2]

[1] Fed. R. Civ. P. 23(c)(2)(B).
[2] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) ("But when notice is a person's

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND ADEQUACY OF NOTICE PLAN

## NOTICE PLAN DETAIL

10. On February 2, 2026, the Court approved the Notice Plan and appointed Epiq as the Settlement Administrator in the *Order Re: Motion for Preliminary Approval of Class Action Settlement* ("Preliminary Approval Order"). In the Preliminary Approval Order, the Court approved for settlement purposes only, the following "Class":

> All persons residing in California who purchased during the limitations period the following canine Cosequin® products for personal use: Cosequin® DS Maximum Strength Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Chewable Tablets; and Cosequin® DS Maximum Strength Plus MSM Soft Chews.

> Excluded from the Class are: Defendants, Defendants' officers, directors, agents, or affiliates; Defendants' past and present employees; and the judge who presides over the case.

> The applicable Class Period is from May 3, 2016, through May 6, 2022.

11. After the Court's Preliminary Approval Order was entered, Epiq implemented the Notice Plan. This declaration details the notice activities undertaken to date and explains how and why the Notice Plan was comprehensive and well-suited to reach the Class. This declaration also discusses the administration activity to date.

## NOTICE PLAN

### *Individual Notice*

12. On July 17, 2025, Epiq received one data file with 581 records for identified Class Members including email addresses ("Class List"). Epiq loaded the unique, identified Class Member records into its database for this Settlement. These efforts resulted in 581 unique, identified Class Member records (of these, 50 records did not contain a valid email address and were not sent Notice).

due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . .").

4

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND ADEQUACY OF NOTICE PLAN

*Individual Notice – Direct Email*

13. On March 9, 2026, Epiq commenced sending 531 Email Notices to identified Class Members for whom a valid email address was available. Prior to sending the Email Notices, email validation and hygiene tools were used to standardize the email addresses, verify whether the email addresses were valid, and identify and remove email addresses that were a fraud/reputation threat – such as email addresses maintained by bots, spammers, and phishers. This is a necessary and critical process for the effectiveness of email campaigns today. Without being proactive and using these tools, Email Notices inadvertently sent to bad actor email addresses could jeopardize and damage the reputation of the entire email campaign; likely causing the campaign itself to be flagged and blocked as a source of spam, preventing or delaying Email Notices from being sent to valid email addresses of Class Members.

14. The following industry standard best practices were followed. The Email Notice was drafted in such a way that the subject line, the sender, and the body of the message overcame SPAM filters and ensured readership to the fullest extent reasonably practicable. For instance, the Email Notice was created using an embedded html text format. This format provided easy-to-read text without graphics, tables, images, and other elements that in our experience would increase the likelihood that the message could be blocked by Internet Service Providers (ISPs) and/or SPAM filters for this type of email communication. The Email Notices were sent from an IP address known to major email providers as one not used to send bulk "SPAM" or "junk" email blasts. Each Email Notice was transmitted with a digital signature to the header and content of the Email Notice, which allowed ISPs to programmatically authenticate that the Email Notices were from our authorized mail services. Each Email Notice was also transmitted with a unique message identifier. The Email Notice included an embedded link to the Settlement Website. By clicking the link, recipients were able to easily access the Long Form Notice and other information about the Settlement. The Email Notice clearly and concisely summarized the Settlement and the legal rights of the Class Members. The Email Notice is included as **Attachment 3**.

15. If the receiving email server could not deliver the message, a "bounce code" was returned along with the unique message identifier. For any Email Notice for which a bounce code was received indicating that the message was undeliverable for reasons such as an inactive or disabled account, the

5

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND ADEQUACY OF NOTICE PLAN

recipient's mailbox was full, technical autoreplies, etc., at least two additional attempts were made to deliver the Notice by email.

16. Additionally, a Long Form Notice and Claim Form ("Claim Package") was mailed to all Class Members who requested one via the toll-free telephone number or other means. As of July 13, 2026, Epiq has mailed three Claim Packages as result of such requests. The Long Form Notice is included as **Attachment 4**. The Claim Form is included as **Attachment 5**.

### *Media Plan*

### *Internet Digital Notice Campaign*

17. Internet advertising has become a standard component in legal notice programs. The internet has proven to be an efficient and cost-effective method to target class members as part of providing notice of class certification and/or a settlement for a class action case. According to MRI-Simmons data, 97% of all adults are online and 84% of all adults use social media.[3]

18. The Notice Plan included targeted digital advertising on the selected advertising network *Google Display Network* and *Yahoo Audience Network* (in English and Spanish), which combined, represents thousands of digital properties across all major content categories. Digital Notices were targeted to selected target audiences and were designed to encourage participation by Class Members—by linking directly to the Settlement Website, allowing visitors easy access to relevant information and documents.

19. Digital Notices were be placed on the leading social media platforms in the United States, including *Facebook* and *Instagram* (in English and Spanish). The social media campaign used an interest-based approach which focused on the interests that users exhibited while on the social media platforms, capitalizing on the target audience's propensity to engage in social media.

20. *Facebook* is one of the leading social networking site in the United States with 197 million users,[4] and *Instagram* has 181 million active users in the United States.[5]

---

[3] MRI-Simmons 2025 Survey of the American Consumer®.

[4] Statista Digital 2025: Global Overview Report. Statista, founded in 2007, is a leading provider of worldwide market and consumer data and is trusted by thousands of companies around the world for data. Statista.com consolidates statistical data on over 80,000 topics from more than 22,500 sources and makes it available in German, English, French and Spanish.

[5] Statista Digital 2025: Global Overview Report.

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND ADEQUACY OF NOTICE PLAN

21.  The Digital Notices were distributed to a variety of target audiences, including those relevant to individuals' demonstrated interests and/or likes.  All Digital Notices appeared on desktop, mobile, and tablet devices.  Digital Notices on *Google Display Network*, *Yahoo Audience Network*, *Facebook*, and *Instagram* were displayed in California.  Digital Notices were also targeted (remarketed) to people who clicked on a Digital Notice.

22.  More details regarding the target audiences, specific ad sizes of the Digital Notices, and the number of delivered impressions are included in the following table:

| Network/ Property | Target | Language | Ad Size | Delivered Impressions |
|---|---|---|---|---|
| *Google Display Network* | Adults 18+ | English & Spanish | 728x90, 300x250, 300x600 & 970x250 | 11,789,021 |
| *Google Display Network* | Adults 18+ and Affinity Targeting[6] for Cosequin, pets, dogs, cats, and/or horses | English & Spanish | 728x90, 300x250, 300x600 & 970x250 | 5,858,730 |
| *Google Display Network* | Adults 18+ and Intent Targeting[7] for Cosequin | English & Spanish | 728x90, 300x250, 300x600 & 970x250 | 5,690,217 |
| *Yahoo Audience Network* | Adults 18+ | English & Spanish | 728x90, 300x250, 300x600 & 970x250 | 7,021,749 |
| *Yahoo Audience Network* | Adults 18+ and content targeting for pets (dogs and cats), and horses | English & Spanish | 728x90, 300x250, 300x600 & 970x250 | 3,399,369 |
| *Facebook* | Adults 18+ | English & Spanish | Newsfeed & Right Hand Column | 9,374,916 |
| *Facebook* | Adults 18+ and Interests in pets, dogs, cats, and/or horses | English & Spanish | Newsfeed & Right Hand Column | 7,253,172 |
| *Instagram* | Adults 18+ | English & Spanish | Newsfeed | 4,565,816 |
| *Instagram* | Adults 18+ and Interests in pets, dogs, cats, and/or horses | English & Spanish | Newsfeed | 3,556,966 |
| **TOTAL** | | | | **58,509,956** |

[6] "Affinity Targeting" targeted specific websites, keywords, and/or relevant content the target viewed.
[7] "Intent Targeting" targeted individuals who researched or purchased certain items on the internet.

7

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND ADEQUACY OF NOTICE PLAN

23. Combined, over 58.5 million targeted impressions were generated by the Digital Notices, which were targeted in California. The Digital Notices ran from March 9, 2026, through April 19, 2026.[8] Clicking on the Digital Notices linked the reader to the Settlement Website, where they could easily obtain detailed information about the Settlement. Examples of the Digital Notices are included as **Attachment 6**.

*Sponsored Search Listings*

24. Sponsored search listings were acquired on the three most highly-visited internet search engines: *Google*, *Yahoo!*, and *Bing*. When visitors to these search engines search for selected keyword combinations related to the Settlement, the sponsored search listing advertisement created for this Settlement is displayed. Generally, the sponsored search listing advertisement appears at the top of the visitor's website page prior to the search results or in the upper right-hand column of the web-browser screen. The sponsored search listings are displayed in California. All sponsored search listings link directly to the Settlement Website.

25. The sponsored search listings began on March 9, 2026, and will run through July 21, 2026. As of July 13, 2026, the sponsored listings have been displayed 121,970 times, resulting in 5,470 clicks that displayed the Settlement Website. A complete list of the sponsored search keyword combinations is included as **Attachment 7**. Examples of the sponsored search listing as displayed on each search engine are included as **Attachment 8**.

*Informational Release*

26. To build additional reach and extend exposures, on March 9, 2026, a party-neutral Informational Release (in both English and Spanish) was issued in California over *PR Newswire's California* and *California Hispanic Newslines* to 600 general media (print and broadcast) outlets,

---

[8] The third-party ad management platform, ClickCease was used to audit the Digital Notice ad placements. This type of platform tracks all Digital Notice ad clicks to provide real-time ad monitoring, fraud traffic analysis, blocks clicks from fraudulent sources, and quarantines dangerous IP addresses. This helps reduce wasted, fraudulent, or otherwise invalid traffic (*e.g.*, ads being seen by 'bots' or non-humans, ads not being viewable, etc.).

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND ADEQUACY OF NOTICE PLAN

including print, television and radio broadcast media as well as websites, online databases, internet networks, and social networking media in English and over 400 outlets in Spanish.

27. The Informational Release included the address of the Settlement Website and the toll-free telephone number. The Informational Release served a valuable role by providing additional notice exposures beyond that which was provided by the paid media. The Informational Release is included as **Attachment 9**.

### *CLRA Consumer Print Publication Notice*

28. Since this matter includes claims under the California Consumer Legal Remedies Act ("CLRA"), the notice provision of Government Code section 6064 applies. It provides that "[p]ublication of notice pursuant to this section shall be once a week for four successive weeks. Four publications in a newspaper regularly published once a week or oftener, with at least five days intervening between the respective publication dates not counting such publication dates, are sufficient." Cal. Gov't Code § 6064. The Notice Plan included four insertions, running once a week for four weeks in the "San Francisco," "Los Angeles," and "Phoenix" editions of *USA Today*.[9] Each insertion was an approximate 1/4 page Publication Summary Notice. The Publication Tear sheets are included as **Attachment 10**. More details regarding the print publications are included in the following table.

| *Print* | *Run Dates* | *Circulation* | *Page Number* | *Ad Size* |
|---|---|---|---|---|
| *USA Today* (San Francisco, Los Angeles, & Phoenix editions) | March 9, 2026, March 16, 2026, March 23, 2026, and March 30, 2026 | 11,272 | 5A, 5A, 5A, 5A | 1/4 page B&W |

### *Settlement Website*

29. On March 6, 2026, Epiq established a dedicated website for the Settlement with an easy to remember domain name (www.cosequincasettlement.com). Relevant documents are posted on the Settlement Website, including the Complaint, Long Form Notice, Email Notice, Claim Form, Settlement Agreement, Preliminary Approval Order, Motion for Attorneys' Fees, and other case-related documents.

---

[9] *USA Today* requires publication in the "Phoenix" edition when purchasing publication for the California region.

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND ADEQUACY OF NOTICE PLAN

In addition, the Settlement Website includes relevant dates, answers to frequently asked questions ("FAQs"), instructions for how Class Members could opt-out (request exclusion) from or object to the Settlement prior to the deadlines, contact information for the Settlement Administrator, and how to obtain other case-related information. Class Members are also able to submit a Claim Form on the Settlement Website. The Settlement Website address was prominently displayed in all notice documents. As of July 13, 2026, there have been 1,943,868 unique visitor sessions to the Settlement Website and 6,345,611 website pages presented.

### Toll-Free Telephone Number & Contact Information

30. On March 6, 2026, a toll-free telephone number (1-888-899-7783) was established for the Settlement. Callers are able to hear an introductory message and also have the option to learn more about the Settlement in the form of recorded answers to FAQs, and request that a Claim Package be mailed to them. The automated telephone system is available 24 hours per day, 7 days per week. The toll-free telephone number was prominently displayed in all notice documents. As of July 13, 2026, there have been 73 calls to the toll-free telephone number, representing 165 minutes of use.

31. A postal mailing address was established and continues to be available to allow Class Members the opportunity to request additional information or ask questions.

### Requests for Exclusion and Objections

32. The deadline to request exclusion from or to object to the Settlement was June 22, 2026. As of July 13, 2026, Epiq has received no requests for exclusion. As of Julu 13, 2026, Epiq is aware of no objections to the Settlement.

### Claim Submission & Distribution Options

33. The Notices provided a detailed summary of relevant information about the Settlement, including the Settlement Website and how Class Members can submit a Claim Form online or by mail. Class Members have the option of receiving a digital payment or a traditional paper check. Epiq worked with counsel for the parties to select an appropriate menu of payment options. The type of digital payment selected does not impact Epiq's compensation for its work as the Settlement Administrator, and no digital option is discouraged relative to other options.

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND ADEQUACY OF NOTICE PLAN

34. The deadline for Class Members to submit a Claim Form is July 21, 2026. As of July 13, 2026, Epiq has received 801,121 Claim Forms (800,457 online and 664 paper). Since the Claims Deadline has not yet passed, these numbers are preliminary. As standard practice, Epiq is in the process of conducting a complete quality review of all Claim Forms received. There is a likelihood that after detailed review, the total number of Claim Forms will change due to duplicate and denied Claim Forms.

### *Fraud Prevention & Detection for Claim Submissions*

35. Fraudulent claim filing is an unfortunate reality in many class action settlements in recent years. Given the current trends within the Class Action Industry with fraudulent claim filing by bad actors, some level of fraudulent claim filing was anticipated in a case like this. Epiq partners with the top resources in the industry to combat fraud, following best practices to deter and detect fraud. Epiq conducts an analysis of Claim Forms by looking at numerous known indicators of fraud.

36. At this time, Epiq anticipates that some portion of the total number of Claim Forms submitted may be deemed fraudulent. Accordingly, the claim volume figures presently available should be regarded as preliminary and subject to change as the review process continues. To date, submitted claims have not yet undergone a full review and validation process. Epiq has completed a preliminary review of an estimated 202,000 Claim Forms, and approximately 60.9% were flagged as containing indicia of fraud. Epiq expects the final review to follow a similar trend, with 60% or greater of the claim population having sufficient indicia of suspicious activity to be denied outright.

### **PLAIN LANGUAGE NOTICE DESIGN**

37. The Notices were designed to be "noticed," reviewed, and—by presenting the information in plain language—understood by Class Members. The design of the Notices followed the principles embodied in the Federal Judicial Center's ("FJC") illustrative "model" notices posted at www.fjc.gov. Many courts, and the FJC itself, have approved notices that Epiq's noticing experts have written and designed in a similar fashion. The Notices contained substantial, albeit easy-to-read summaries of all key information about Class Members' rights and options. Consistent with our normal practice, all notice documents underwent a final edit prior to actual mailing and publication for grammatical errors and accuracy.

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND ADEQUACY OF NOTICE PLAN

38. The Notices mailed to all identified Class Members provided substantial information to the Class. The Notices included (i) details regarding the Class Members' ability to opt-out or object to the Settlement Agreement prior to the deadlines, (ii) the deadline to opt-out or object, and (iii) the date, time, and location of the Final Approval Hearing, among other information.

## **CONCLUSION**

39. In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, by federal and local rules and statutes, and further by case law pertaining to notice. This framework directs that a notice plan be designed to reach the greatest practicable number of potential class members and, in a settlement class action notice situation such as this, that the notice or notice plan provides information to potential class members regarding their rights, possible benefits available, and how to exercise their rights or claim benefits. All of these requirements were met in this case.

40. The Notice Plan as designed and implemented reached the greatest practicable number of Class Members. The Notice Plan reached approximately 80% of the Class with direct notice and a digital/internet notice program (digital and social media notice). The reach was further enhanced by publication notice, internet sponsored search listings, an informational release, and a Settlement Website, which are not included in the reach calculation. In 2010, the FJC issued a *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, which is relied upon for federal cases and is illustrative for state courts. This Guide states that, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%."[10] Here, we have developed a Notice Plan readily achieved a reach within that standard.

41. The Notice Plan followed the guidance for satisfying due process obligations that a notice expert gleans from the United States Supreme Court's seminal decisions, which emphasize the need: a) to endeavor to actually inform the Class, and b) to ensure that notice is reasonably calculated to do so:

---

[10] Fed. Judicial Ctr, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010), available at https://www.fjc.gov/content/judges-class-action-notice-and-claims-process-checklist-and-plain-language-guide-0.

12

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND ADEQUACY OF NOTICE PLAN

a) "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it," *Mullane v. Central Hanover Trust*, 339 U.S. 306, 315 (1950); and

b) "[N]otice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (citing *Mullane*, 339 U.S. at 314).

42. The Notice Plan as designed and implemented provided the best notice practicable under the circumstances, conformed to all aspects of Federal Rules of Civil Procedure Rule 23 regarding notice, comported with the guidance for effective notice stated in the Manual for Complex Litigation, Fourth and applicable FJC materials, and satisfied the requirements of due process, including the "desire to actually inform" requirement.

43. The Notice Plan schedule afforded enough time to provide full and proper notice to the Class Members before the Opt-Out Deadline and Objection Deadline.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed July 13, 2026.

_____
Cameron R. Azari, Esq.

13

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND ADEQUACY OF NOTICE PLAN

# Attachment 1

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

JUSTIN LYTLE and CHRISTINE MUSTHALER,

      Plaintiffs,

  v.

NUTRAMAX LABORATORIES, INC. and
NUTRAMAX LABORATORIES VETERINARY
SCIENCES, INC.,

      Defendants.

Case No. 5:19-CV-00835-FMO-SP

## DECLARATION OF KYLE S. BINGHAM ON IMPLEMENTATION OF CAFA NOTICE

I, KYLE S. BINGHAM, hereby declare and state as follows:

1. My name is KYLE S. BINGHAM. I am over the age of 25 and I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2. I am the Senior Director of Legal Noticing for Epiq Class Action & Claims Solutions, Inc. ("Epiq"), a firm that specializes in designing, developing, analyzing and implementing large-scale, un-biased, legal notification plans. I have overseen and handled Class Action Fairness Act ("CAFA") notice mailings for more than 500 class action settlements.

3. Epiq is a firm with more than 25 years of experience in claims processing and settlement administration. Epiq's class action case administration services include coordination of all notice requirements, design of direct-mail notices, establishment of fulfillment services, receipt and processing of opt-outs, coordination with the United States Postal Service ("USPS"), claims database management, claim adjudication, funds management and distribution services.

4. The facts in this Declaration are based on what I personally know, as well as information provided to me in the ordinary course of my business by my colleagues at Epiq.

DECLARATION OF KYLE S. BINGHAM ON IMPLEMENTATION OF CAFA NOTICE

## CAFA NOTICE IMPLEMENTATION

5.    At the direction of counsel for Defendants Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc., two federal and state officials (the Attorney General of the United States and the Attorney General of California) were identified to receive CAFA notice.

6.    On August 15, 2025, Epiq sent two CAFA Notice Packages ("Notice").  The Notices were sent via United Parcel Service ("UPS") to the Attorney General of the United States and the Attorney General of California. The CAFA Notice Service List is included as **Attachment 1**.

7.    The materials sent to the federal and state officials included a Cover Letter, which provided notice of the proposed Settlement of the above-captioned case.  The Cover Letter is included as **Attachment 2**.

8.    The cover letter was accompanied by a CD, which included the following:

a.    **Per 28 U.S.C. § 1715(b)(1) – Complaint and Any Amended Complaints:**
- Class Action Complaint (filed May 3, 2019);
- First Amended Class Action Complaint (filed June 26, 2019); and
- Second Amended Class Action Complaint (filed October 11, 2019).

b.    **Per 28 U.S.C. § 1715(b)(3) – Notification to Class Members:**
- Publication Notice *(Exhibit A-1 to the Proposed Agreement of Compromise and Settlement);*
- Email Notice *(Exhibit A-2 to the Proposed Agreement of Compromise and Settlement);*
- Posted Notice *(Exhibit A-3 to the Proposed Agreement of Compromise and Settlement);* and
- Claim Form *(Exhibit 2 to the Supplement in Support of Plaintiffs' Unopposed Motion for Preliminary Approval).*

DECLARATION OF KYLE S. BINGHAM ON IMPLEMENTATION OF CAFA NOTICE

2

c.    **Per 28 U.S.C. § 1715(b)(4) – Class Action Settlement Agreement:** The following documents were included:

- Plaintiffs' Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement;

- Declaration of Class Counsel in Support of Preliminary Approval of Class Action Settlement;

  o Proposed Agreement of Compromise and Settlement (*Exhibit 1 to Class Counsel's Declaration*);

    ▪ [Proposed] Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement (*Exhibit A to the Proposed Agreement of Compromise and Settlement*);

    ▪ Publication Notice *(Exhibit A-1 to the Proposed Agreement of Compromise and Settlement);*

    ▪ Email Notice *(Exhibit A-2 to the Proposed Agreement of Compromise and Settlement); and*

    ▪ Posted Notice *(Exhibit A-3 to the Proposed Agreement of Compromise and Settlement);*

- Declaration of Plaintiff Justin Lytle in Support of Settlement;

- Declaration of Plaintiff Christine Musthaler in Support of Settlement;

- Supplement in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement;

  o Declaration of Cameron R. Azari, Esq. Regarding Notice Plan (*Exhibit 1 to the Supplement in Support of Plaintiffs' Unopposed Motion for Preliminary Approval)*; and

  o Claim Form *(Exhibit 2 to the Supplement in Support of Plaintiffs' Unopposed Motion for Preliminary Approval)*.

DECLARATION OF KYLE S. BINGHAM ON IMPLEMENTATION OF CAFA NOTICE

3

I declare under penalty of perjury that the foregoing is true and correct.    Executed on August 15, 2025.

_____
KYLE S. BINGHAM

# Attachment 1

CAFA Notice Service List
UPS

| Appropriate Official | FullName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| US Department of Justice | Pamela Bondi | 950 Pennsylvania Ave NW | | Washington | DC | 20530 |
| Office of the Attorney General | CAFA Coordinator | Consumer Protection Section | 455 Golden Gate Ave Suite 11000 | San Francisco | CA | 94102 |

# **Attachment 2**

**CAFA NOTICE ADMINISTRATOR**
10300 SW Allen Blvd
Beaverton, OR 97005
P 503-350-5800
DL-CAFA@epiqglobal.com

August 15, 2025

**VIA UPS**

| Class Action Fairness Act – Notice to Federal and State Officials |
| --- |

Dear Federal and State Officials:

Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1715, please find enclosed information from Defendants Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. (collectively "Defendants") relating to the proposed settlement of a class action lawsuit.

- **Case:** *Justin Lytle and Christine Musthaler v. Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc.,* Case No. 5:19-cv-00835.

- **Court:** United States District Court for the Central District of California.

- **Defendants:** Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc.

- **Documents Enclosed**: In accordance with the requirements of 28 U.S.C. § 1715, please find copies of the following documents associated with this action on the enclosed CD:

  1. **Per 28 U.S.C. § 1715(b)(1) – Complaint and Any Amended Complaints:**

     - Class Action Complaint (filed May 3, 2019);

     - First Amended Class Action Complaint (filed June 26, 2019); and

     - Second Amended Class Action Complaint (filed October 11, 2019).

  2. **Per 28 U.S.C. § 1715(b)(2) – Notice of Any Scheduled Judicial Hearing:** Plaintiffs have noticed their motion for preliminary approval of class settlement for a hearing to take place on October 2, 2025, at 10:00 a.m. Pacific Time. The Court has not scheduled a final approval hearing or any other judicial hearing concerning the settlement agreement at this time.

  3. **Per 28 U.S.C. § 1715(b)(3) – Notification to Class Members:**

     - Publication Notice *(Exhibit A-1 to the Proposed Agreement of Compromise and Settlement);*

     - Email Notice *(Exhibit A-2 to the Proposed Agreement of Compromise and Settlement);*

     - Posted Notice *(Exhibit A-3 to the Proposed Agreement of Compromise and Settlement);* and

     - Claim Form *(Exhibit 2 to the Supplement in Support of Plaintiffs' Unopposed Motion for Preliminary Approval).*

**CAFA NOTICE ADMINISTRATOR**
10300 SW Allen Blvd
Beaverton, OR 97005
P 503-350-5800
DL-CAFA@epiqglobal.com

4. **Per 28 U.S.C. § 1715(b)(4) – Class Action Settlement Agreement:**  The following documents are included:

- Plaintiffs' Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement;

- Declaration of Class Counsel in Support of Preliminary Approval of Class Action Settlement;

  o Proposed Agreement of Compromise and Settlement (*Exhibit 1 to Class Counsel's Declaration*);

    ▪ [Proposed] Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement (*Exhibit A to the Proposed Agreement of Compromise and Settlement*);

    ▪ Publication Notice *(Exhibit A-1 to the Proposed Agreement of Compromise and Settlement);*

    ▪ Email Notice *(Exhibit A-2 to the Proposed Agreement of Compromise and Settlement); and*

    ▪ Posted Notice *(Exhibit A-3 to the Proposed Agreement of Compromise and Settlement);*

- Declaration of Plaintiff Justin Lytle in Support of Settlement;

- Declaration of Plaintiff Christine Musthaler in Support of Settlement;

- Supplement in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement;

  o Declaration of Cameron R. Azari, Esq. Regarding Notice Plan (*Exhibit 1 to the Supplement in Support of Plaintiffs' Unopposed Motion for Preliminary Approval)*); and

  o Claim Form *(Exhibit 2 to the Supplement in Support of Plaintiffs' Unopposed Motion for Preliminary Approval).*

5. **Per 28 U.S.C. § 1715(b)(5) – Any Settlement or Other Agreements:**  There are no other Settlements or Agreements between the parties.

6. **Per 28 U.S.C. § 1715(b)(6) – Final Judgment or Notice of Dismissal:**  To date, the Court has not issued a final order, judgment or dismissal in the above-referenced action.

7. **Per 28 U.S.C. § 1715(b)(7) – Estimate of Class Members:** The Settlement Class includes all persons residing in California who purchased during the limitations period the following canine Cosequin® products for personal use: Cosequin® DS Maximum Strength Plus MSM Chewable Tablets; and Cosequin® DS Maximum Strength Plus MSM Soft Chews.

**CAFA NOTICE ADMINISTRATOR**
10300 SW Allen Blvd
Beaverton, OR 97005
P 503-350-5800
DL-CAFA@epiqglobal.com

At this time, the defendants cannot feasibly determine the names of the class members residing in California and therefore cannot feasibly estimate the proportionate share of the claims of such members to the entire settlement pursuant to 28 U.S.C. §1715(b)(7)(A) and (B).

8. **Per 28 U.S.C. § 1715(b)(8) – Judicial Opinions Related to the Settlement:** To date, the Court has not issued a final order or judgment in the above-referenced action.

If you have questions or concerns about this notice or the enclosed materials, please contact this office.

Sincerely,

CAFA Notice Administrator

Enclosures

# Attachment 2

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUSTIN LYTLE and CHRISTINE MUSTHALER, | Case No. 5:19-CV-00835-FMO-SP |
| Plaintiffs, | |
| v. | |
| NUTRAMAX LABORATORIES, INC. and NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC., | |
| Defendants. | |

**SUPPLEMENTAL DECLARATION OF KYLE S. BINGHAM ON IMPLEMENTATION OF CAFA NOTICE**

I, KYLE S. BINGHAM, hereby declare and state as follows:

1.      My name is KYLE S. BINGHAM.  I am over the age of 25 and I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2.      I am the Senior Director of Legal Noticing for Epiq Class Action & Claims Solutions, Inc. ("Epiq"), a firm that specializes in designing, developing, analyzing and implementing large-scale, un-biased, legal notification plans.  I have overseen and handled Class Action Fairness Act ("CAFA") notice mailings for more than 600 class action settlements.

3.      Epiq is a firm with more than 25 years of experience in claims processing and settlement administration.  Epiq's class action case administration services include coordination of all notice requirements, design of direct-mail notices, establishment of fulfillment services, receipt and processing of opt-outs, coordination with the United States Postal Service ("USPS"), claims database management, claim adjudication, funds management and distribution services.

SUPPLEMENTAL DECLARATION OF KYLE S. BINGHAM ON IMPLEMENTATION OF
CAFA NOTICE

4.      Previously, I executed a *Declaration of Kyle S. Bingham on Implementation of CAFA Notice* on August 15, 2025, which described the CAFA Notice mailing sent on August 15, 2025.

5.      The facts in this Declaration are based on what I personally know, as well as information provided to me in the ordinary course of my business by my colleagues at Epiq.

## CAFA NOTICE IMPLEMENTATION

6.      At the direction of counsel for Defendants Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc., two federal and state officials (the Attorney General of the United States and the Attorney General of California) were identified to receive CAFA notice.

7.      On December 12, 2025, Epiq sent two CAFA Notice Packages ("Notice"). The Notices were sent via United Parcel Service ("UPS") to the Attorney General of the United States and the Attorney General of California. The CAFA Notice Service List is included as **Attachment 1**.

8.      The materials sent to the federal and state officials included a Cover Letter, which provided notice of the proposed Settlement of the above-captioned case. The Cover Letter is included as **Attachment 2**.

9.      The cover letter was accompanied by a CD, which included the following:

> a.      **Per 28 U.S.C. § 1715(b)(1) – Complaint and Any Amended Complaints:**
>
> - Class Action Complaint (filed May 3, 2019);
> - First Amended Class Action Complaint (filed June 26, 2019); and
> - Second Amended Class Action Complaint (filed October 11, 2019).
>
> b.      **Per 28 U.S.C. § 1715(b)(3) – Notification to Class Members:**

SUPPLEMENTAL DECLARATION OF KYLE S. BINGHAM ON IMPLEMENTATION OF CAFA NOTICE

2

- Publication Notice *(Exhibit A-1 to the Proposed Agreement of Compromise and Settlement);*

- Email Notice *(Exhibit A-2 to the Proposed Agreement of Compromise and Settlement);*

- Posted Notice *(Exhibit A-3 to the Proposed Agreement of Compromise and Settlement);* and

- Claim Form *(Exhibit A-4 to the Proposed Agreement of Compromise and Settlement).*

c.   **Per 28 U.S.C. § 1715(b)(4) – Class Action Settlement Agreement:** The following documents were included:

- Plaintiffs' Notice Amended of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement;

- Amended Declaration of Class Counsel in Support of Preliminary Approval of Class Action Settlement;

   o  Proposed Agreement of Compromise and Settlement (*Exhibit 1 to Amended Class Counsel's Declaration*);

      ▪  [Proposed] Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement (*Exhibit A to the Proposed Agreement of Compromise and Settlement*);

      ▪  Publication Notice *(Exhibit A-1 to the Proposed Agreement of Compromise and Settlement);*

      ▪  Email Notice *(Exhibit A-2 to the Proposed Agreement of Compromise and Settlement);*

      ▪  Posted Notice *(Exhibit A-3 to the Proposed Agreement of Compromise and Settlement);*

      ▪  Claim Form *(Exhibit A-4 to the Proposed Agreement of Compromise and Settlement);*

SUPPLEMENTAL DECLARATION OF KYLE S. BINGHAM ON IMPLEMENTATION OF CAFA NOTICE

3

- Amended Declaration of Cameron R. Azari, Esq. Regarding Notice Plan;

- Declaration of Plaintiff Justin Lytle in Support of Settlement;

- Declaration of Plaintiff Christine Musthaler in Support of Settlement; and

- Plaintiffs' Notice of Amended Motion for Preliminary Approval of Class Settlement*)*.

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 19, 2025.

_____
KYLE S. BINGHAM

# Attachment 1

**CAFA Notice Service List**
**UPS**

| Appropriate Official | FullName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| US Department of Justice | Pamela Bondi | 950 Pennsylvania Ave NW | | Washington | DC | 20530 |
| Office of the Attorney General | CAFA Coordinator | Consumer Protection Section | 455 Golden Gate Ave Suite 11000 | San Francisco | CA | 94102 |

# **Attachment 2**

**CAFA NOTICE ADMINISTRATOR**
10300 SW Allen Blvd
Beaverton, OR 97005
P 503-350-5800
DL-CAFA@epiqglobal.com

December 12, 2025

**VIA UPS**

| Class Action Fairness Act – Notice to Federal and State Officials |
| --- |

Dear Federal and State Officials:

Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1715, please find enclosed information from Defendants Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. (collectively "Defendants") relating to the proposed settlement of a class action lawsuit.

- **Case:** *Justin Lytle and Christine Musthaler v. Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc.,* Case No. 5:19-cv-00835.

- **Court:**  United States District Court for the Central District of California.

- **Defendants:** Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc.

- **Documents Enclosed**:  In accordance with the requirements of 28 U.S.C. § 1715, please find copies of the following documents associated with this action on the enclosed CD:

  1. **Per 28 U.S.C. § 1715(b)(1) – Complaint and Any Amended Complaints:**

     - Class Action Complaint (filed May 3, 2019);

     - First Amended Class Action Complaint (filed June 26, 2019); and

     - Second Amended Class Action Complaint (filed October 11, 2019).

  2. **Per 28 U.S.C. § 1715(b)(2) – Notice of Any Scheduled Judicial Hearing:**  The Court has scheduled another hearing on January 8, 2026, at 10:00 a.m. PT in the Courtroom of the Honorable Fernando M. Olguin, of the United States District Court for the Central District of California, located in Courtroom 6D on the 6th Floor, 350 W. 1st Street, Los Angeles, CA 90012.

  3. **Per 28 U.S.C. § 1715(b)(3) – Notification to Class Members:**

     - Publication Notice *(Exhibit A-1 to the Proposed Agreement of Compromise and Settlement);*

     - Email Notice *(Exhibit A-2 to the Proposed Agreement of Compromise and Settlement);*

     - Posted Notice *(Exhibit A-3 to the Proposed Agreement of Compromise and Settlement);* and

     - Claim Form *(Exhibit A-4 to the Proposed Agreement of Compromise and Settlement).*

4. **Per 28 U.S.C. § 1715(b)(4) – Class Action Settlement Agreement:**   The following documents are included:

- Plaintiffs' Notice Amended of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement;

- Amended Declaration of Class Counsel in Support of Preliminary Approval of Class Action Settlement;

   o Proposed Agreement of Compromise and Settlement (*Exhibit 1 to Amended Class Counsel's Declaration*);

     ▪ [Proposed] Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement (*Exhibit A to the Proposed Agreement of Compromise and Settlement*);

     ▪ Publication Notice *(Exhibit A-1 to the Proposed Agreement of Compromise and Settlement);*

     ▪ Email Notice *(Exhibit A-2 to the Proposed Agreement of Compromise and Settlement);*

     ▪ Posted Notice *(Exhibit A-3 to the Proposed Agreement of Compromise and Settlement);*

     ▪ Claim Form *(Exhibit A-4 to the Proposed Agreement of Compromise and Settlement);*

- Amended Declaration of Cameron R. Azari, Esq. Regarding Notice Plan;

- Declaration of Plaintiff Justin Lytle in Support of Settlement;

- Declaration of Plaintiff Christine Musthaler in Support of Settlement; and

- Plaintiffs' Notice of Amended Motion for Preliminary Approval of Class Settlement.

5. **Per 28 U.S.C. § 1715(b)(5) – Any Settlement or Other Agreements:**   There are no other Settlements or Agreements between the parties.

6. **Per 28 U.S.C. § 1715(b)(6) – Final Judgment or Notice of Dismissal:**   To date, the Court has not issued a final order, judgment or dismissal in the above-referenced action.

7. **Per 28 U.S.C. § 1715(b)(7) – Estimate of Class Members:** The Settlement Class includes all persons residing in California who purchased during the limitations period the following canine Cosequin® products for personal use:
- Cosequin® DS Maximum Strength Chewable Tablets;
- Cosequin® DS Maximum Strength Plus MSM Chewable Tablets;
- Cosequin® DS Maximum Strength Plus MSM Soft Chews;
- Cosequin® Maximum Strength Plus MSM Chewable Tablets;

**CAFA NOTICE ADMINISTRATOR**
10300 SW Allen Blvd
Beaverton, OR 97005
P 503-350-5800
DL-CAFA@epiqglobal.com

- Cosequin® with MSM Chewable Tablets;
- Cosequin® Maximum Strength Plus MSM Soft Chews; and
- Cosequin® with MSM Soft Chews.

At this time, the defendants cannot feasibly determine the names of the class members residing in California and therefore cannot feasibly estimate the proportionate share of the claims of such members to the entire settlement pursuant to 28 U.S.C. §1715(b)(7)(A) and (B).

8.  **Per 28 U.S.C. § 1715(b)(8) – Judicial Opinions Related to the Settlement:**  To date, the Court has not issued a final order or judgment in the above-referenced action.

If you have questions or concerns about this notice or the enclosed materials, please contact this office.

Sincerely,

CAFA Notice Administrator

Enclosures

# Attachment 3

**From:**            Lytle v. Nutramax Laboratories Settlement
                    <cosequincasettlement@e.epiqnotification.com>

**To:**              ████████████████████
**Subject:**         Lytle v. Nutramax: Settlement Notice

United States District Court for the Central District of California

*Justin Lytle and Christine Musthaler v. Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc.*

**If you reside in California and purchased certain dog Cosequin® Products for personal use between May 3, 2016, and May 6, 2022, you may be eligible to receive benefits from a class action Settlement.**

*A Court authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

**You can file your Claim Form [here](here).**

A $11.5 million settlement has been reached in a class action lawsuit against Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. (together, "Defendants"). The lawsuit alleges Defendants misrepresented the benefits and effectiveness of certain canine supplements branded under the name Cosequin® both in advertising and packaging. Defendants deny all allegations of fault, wrongdoing, or liability made by the Plaintiffs. There has been no determination of wrongdoing by the Court.

The purpose of this Notice is to provide information about this Settlement and explain your rights and options.

**Who is Included? Records show you are a member of the Class**, defined as all persons residing in California who purchased the following canine Cosequin® Products for personal use: Cosequin® DS Maximum Strength Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Chewable Tablets; Cosequin® Maximum Strength Plus MSM Chewable Tablets; Cosequin® with MSM Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Soft Chews; Cosequin® Maximum Strength Plus MSM Soft Chews; and Cosequin® with MSM Soft Chews between May 3, 2016 and May 6, 2022. "Products for personal use" means products

purchased for household use by an animal or pet, and not for resale or other business purpose.

**What Does the Settlement Provide?** As a Class Member, you can submit a timely Claim Form here or by mail postmarked by **JULY 21, 2026,** to be eligible for a Settlement Payment of up to $25 per unit of Cosequin® Products purchased between May 3, 2016, and May 6, 2022, up to a maximum of $150. **Each Household is limited to and may only submit one single Claim Form.** For purposes of the Settlement, Household is defined as all persons living at the same physical address.

The $11.5 million settlement fund shall be used to meet the monetary obligations to Class Members, pay all settlement payments thereto, and pay service awards and the Fee and Expense Award ordered by the Court after submission of the Fee and Expense Application by Class Counsel. If the total amount of Valid Claims is more than what remains of the Settlement Fund after removing the attorneys' Fee and Expense Award and service awards, then the Settlement Payment for each Class Member will be reduced on a pro rata (a legal term meaning equal) basis.

More information is available in the Settlement Agreement or the Long Form Notice.

**Other Options.** If you do not want to be legally bound by the Settlement, you must submit an opt-out **postmarked** by **JUNE 22, 2026**. If you do not opt out, you will give up the right to sue and will release the Defendants and Released Parties about the legal claims in this lawsuit. If you do not opt out, you may object to the Settlement and/or the attorneys' Fee and Expense Award and service awards by **JUNE 22, 2026**. The Long Form Notice on the Settlement Website explains how to opt out or object. If you do nothing, you will get no Settlement Payment, and you will be bound by the Settlement and any judgments and orders. The Court will hold a Fairness Hearing on **AUGUST 13, 2026 at 10:00 a.m.**, to consider whether to approve the Settlement, Class Counsel's attorneys' fees of up to 33% of the Settlement Fund and costs, and any objections. You or your lawyer may attend and ask to appear at the hearing if you object, but you are not required to do so.

**This notice is a summary.** Learn more about the Settlement here or call toll-free 1-888-899-7783.

Copyright © 2026 Lytle v Nutramax Laboratories, Inc.
Our address is PO Box 3167, Portland, OR 97208-3167

If you do not wish to receive future email, click here.
(You can also send your request to **Customer Care** at the street address above.)

AM435_v03

# Attachment 4

AM3821 v.02

**If you reside in California and purchased certain dog Cosequin® Products for personal use between May 3, 2016, and May 6, 2022 , you may be eligible to receive benefits from a class action Settlement.**

*A court has authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

- A $11.5 million settlement has been reached in a class action lawsuit against Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. (together, "Defendants"). The lawsuit alleges Defendants misrepresented the benefits and effectiveness of certain canine supplements branded under the name Cosequin® both in advertising and packaging. Defendants deny all allegations of fault, wrongdoing, or liability made by the Plaintiffs. There has been no determination of wrongdoing by the Court.

- You are a Class Member if the following Class definition applies to you: all persons residing in California who purchased the following canine Cosequin® products for personal use: Cosequin® DS Maximum Strength Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Chewable Tablets; Cosequin® Maximum Strength Plus MSM Chewable Tablets; Cosequin® with MSM Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Soft Chews; Cosequin® Maximum Strength Plus MSM Soft Chews; and Cosequin® with MSM Soft Chews between May 3, 2016 and May 6, 2022. "Products for personal use" means products purchased for household use by an animal or pet, and not for resale or other business purpose.

- Class Members who submit a timely and valid Claim Form are eligible for a Settlement Payment of up to $25 per unit of Cosequin® Products purchased between May 3, 2016, and May 6, 2022, up to a maximum of $150.

- **Each Household is limited to and may only submit one single Claim Form.** For purposes of the Settlement, Household is defined as all persons living at the same physical address.

- The $11.5 million settlement fund shall be used to meet the monetary obligations to Class Members, pay all settlement payments thereto, service awards, and the Fee and Expense Award ordered by the Court after submission of the Fee and Expense Application by Class Counsel. If the total amount of Valid Claims is more than what remains of the Settlement Fund after removing the attorneys' Fee and Expense Award and service awards, then the Settlement Payment for each Class Member will be reduced on a pro rata (a legal term meaning equal) basis.

**This Notice may affect your rights. Please read it carefully.**

| YOUR LEGAL RIGHTS & OPTIONS | | DEADLINE |
|---|---|---|
| **Submit a Claim Form** | The only way to get a Settlement Payment is to submit a timely and valid Claim Form. | Submitted or Postmarked by: **JULY 21, 2026** |
| **Exclude Yourself** | Get no Settlement Payment. Keep your right to file a lawsuit against the Released Parties for the Released Claims involved in this Settlement. | Postmarked by: **JUNE 22, 2026** |
| **Object** | Stay in the Settlement but tell the Court why you do not agree with the Settlement. You will still be bound by the Settlement if the Court approves it. | Filed by: **JUNE 22, 2026** |
| **Do Nothing** | Get no Settlement Payment. Give up your legal rights. | |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court must still decide whether to approve the Settlement, attorneys' Fee and Expense Award, and service awards. No Settlement benefits will be provided unless the Court approves the Settlement.

**Questions? Go to www.CosequinCASettlement.com or call 1-888-899-7783**

AM3822 v.02

## Basic Information

### 1.    Why is this Notice being provided?

A court authorized this Notice because you have the right to know about the Settlement of this class action lawsuit, and about all of your rights and options before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what Settlement benefits are available, who is eligible for them, and how to get them.

The Honorable Fernando M. Olguin of the United States District Court for the Central District of California is overseeing this class action. The lawsuit is known as *Justin Lytle and Christine Musthaler v. Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc.*, Case No. 5:19-CV-00835-FMO-SP. The people who filed this lawsuit are called "Plaintiffs", and the companies sued, Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc., are "Defendants".

### 2.    What is this lawsuit about?

Plaintiffs filed this lawsuit against Defendants on behalf of themselves and all others similarly situated, alleging that Defendants misrepresented the benefits and effectiveness of certain canine supplements branded under the name Cosequin® both in advertising and packaging. The lawsuit includes Cosequin®-branded dog supplements purchased for personal use between May 3, 2016, and May 6, 2022.

Defendants deny the legal claims and deny any wrongdoing or liability. The Court has not made any determination of any wrongdoing by Defendants or that any law has been violated. Instead, Plaintiffs and Defendants have agreed to a settlement to avoid the risk, cost, and time of continuing the lawsuit.

### 3.    Why is the lawsuit a class action?

In a class action, one or more people called Class Representatives sue on behalf of other people who have similar legal claims. Together, the people are a class or class members. One court resolves the issues for all class members, except for those class members who timely exclude themselves (opt-out) from the class.

### 4.    Why is there a Settlement?

Plaintiffs and Defendants do not agree about the legal claims made in this lawsuit. The lawsuit has not gone to trial, and the Court has not decided in favor of the Plaintiffs or Defendants. Instead, Plaintiffs and Defendants have agreed to settle the lawsuit. The Class Representatives and their lawyers believe the Settlement is best for Class Members because of the Settlement benefits available and the risks and uncertainty associated with continuing the lawsuit.

## Who is Included in the Settlement

### 5.    How do I know if I am part of the Settlement?

You are a Class Member if the following Class definition applies to you: all persons residing in California who purchased the following canine Cosequin® products for personal use: Cosequin® DS Maximum Strength Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Chewable Tablets; Cosequin® Maximum Strength Plus MSM Chewable Tablets; Cosequin® with MSM Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Soft Chews; Cosequin® Maximum Strength Plus MSM Soft Chews; and Cosequin® with MSM Soft Chews between May 3, 2016 and May 6, 2022. "Products for personal use" means products purchased for household use by an animal or pet, and not for resale or other business purpose.

Excluded from the Class are: (a) Nutramax and its officers, directors, agents, or affiliates; (b) Nutramax's past and present employees; and (c) the judge who presides over the case.

**Questions? Go to www.CosequinCASettlement.com
or call 1-888-899-7783**

## 6.    Which Cosequin® Products are included in the Settlement?

Cosequin® Products included in the settlement:

- Cosequin® DS Maximum Strength Chewable Tablets;
- Cosequin® DS Maximum Strength Plus MSM Chewable Tablets;
- Cosequin® Maximum Strength Plus MSM Chewable Tablets;
- Cosequin® with MSM Chewable Tablets;
- Cosequin® Maximum Strength Plus MSM Soft Chews;
- Cosequin® with MSM Soft Chews;
- Cosequin® DS Maximum Strength Plus MSM Soft Chews.

## 7.    What if I am still not sure whether I am part of the Settlement?

If you are still not sure whether you are a Class Member, you may go to www.CosequinCASettlement.com or call toll-free at 1-888-899-7783.

### THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

## 8.    What does the Settlement provide?

As a result of the Settlement, Defendants have agreed to create a Settlement Fund of $11,500,000. Settlement Payments from the Settlement Fund will be paid to each Class Member who submits a valid and timely Claim Form.

Class Members who submit a timely and valid Claim Form are eligible for a Settlement Payment of up to $25 per unit of Cosequin® Products purchased between May 3, 2016, and May 6, 2022, up to a maximum of $150.

**Each Household is limited to and may only submit one single Claim Form.** For purposes of the Settlement, Household is defined as all persons living at the same physical address.

The $11.5 million settlement fund shall be used to meet the monetary obligations to Class Members, pay all settlement payments thereto, service awards, and the Fee and Expense Award ordered by the Court after submission of the Fee and Expense Application by Class Counsel. If the total amount of Valid Claims is more than what remains of the Settlement Fund after removing the attorneys' Fee and Expense Award and service awards, then the Settlement Payment for each Class Member will be reduced on a pro rata (a legal term meaning equal) basis.

Defendants are also required to remove the following statements on future packaging for the Cosequin® Products:

(1) "Mobility, Cartilage and Joint Health Support";
(2) "Supports Mobility for a Healthy Lifestyle"; and
(3) "Use Cosequin to help your pet Climb stairs, Rise and Jump!"

## 9.    What am I giving up to receive Settlement benefits or stay in the Class?

Unless you exclude yourself (opt-out), you will remain in the Class. If the Settlement is approved and becomes final, all the Court's orders and judgments will apply to you and legally bind you. You will not be able to sue, continue to sue, or be part of any other lawsuit against Defendants and the Released Parties about the legal claims in this lawsuit that are released by the Settlement Agreement. The rights you are giving up are called "Released Claims."

## 10.    What are the Released Claims?

Section 9 of the Settlement Agreement describes the Releases, Released Claims, and Released Parties, in necessary legal terminology, so please read this section carefully. The Settlement Agreement is available at www.CosequinCASettlement.com. For questions regarding the Releases, Released Claims, or Released Parties and what the language in the Settlement Agreement means, you can also contact Class Counsel listed below for free, or you can talk to your own lawyer at your own expense.

Questions? Go to www.CosequinCASettlement.com
or call 1-888-899-7783

3

## HOW TO GET BENEFITS FROM THE SETTLEMENT

### 11.    How do I submit a Claim Form?

You must submit a timely and valid Claim Form to receive a Settlement Payment as described above. Your Claim Form must be submitted online at www.CosequinCASettlement.com by **JULY 21, 2026,** or mailed to the Settlement Administrator at the address on the Claim Form, **postmarked** by **JULY 21, 2026**. Claim Forms are also available at www.CosequinCASettlement.com or by calling 1-888-899-7783 or by writing to:

*Lytle v. Nutramax Laboratories, Inc. et al.*
Settlement Administrator
P.O. Box 3167
Portland, OR 97208-3167

### 12.    What happens if my contact information changes after I submit a Claim Form?

If you change your mailing address or email address after you submit a Claim Form, it is your responsibility to inform the Settlement Administrator of your updated information. You may notify the Settlement Administrator of any changes at:

*Lytle v. Nutramax Laboratories, Inc. et al.*
Settlement Administrator
P.O. Box 3167
Portland, OR 97208-3167

### 13.    When will I receive my Settlement Payment?

If you submit a timely and valid Claim Form, your Settlement Payment will be provided after the Settlement is approved by the Court and becomes final.

It may take time for the Settlement to be approved and become final. Please be patient and check www.CosequinCASettlement.com for updates.

## THE LAWYERS REPRESENTING YOU

### 14.    Do I have a lawyer in this lawsuit?

Yes, the Court has appointed Adam A. Edwards of Milberg Coleman Bryson Phillips Grossman, PLLC, and Matthew D. Schultz of Levin, Papantonio, Proctor, Buchanan, O'Brien, Barr & Mougey P.A. as Class Counsel to represent you and the Class for the purposes of this Settlement. You will not be charged for Class Counsel. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 15.    How will Class Counsel be paid?

Class Counsel will file a motion asking the Court to award attorneys' fees and reimbursement of costs not to exceed 33% of the Settlement Fund. Class Counsel will also ask the Court to approve service awards for the Class Representatives of up to $7,500 for their efforts. If awarded by the Court, attorneys' fees and reimbursement of costs and the service awards will be paid from the Settlement Fund. The Court may award less than these amounts.

Class Counsel's motion for the attorneys' Fee and Expense Award, and service awards, will be made available at www.CosequinCASettlement.com after it is filed with the Court.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want a Settlement Payment from this Settlement, but you instead want to keep the right to sue or continue to sue Defendants and the Released Parties on your own, about the legal claims in this lawsuit, then you must take steps to get out of the Settlement. This is called excluding yourself from—or "opting-out" of—the Settlement.

**Questions? Go to www.CosequinCASettlement.com
or call 1-888-899-7783**

## 16.    How do I get out of the Settlement?

To exclude yourself from the Settlement, you must mail a written request for exclusion, which includes the following:

1.    Your full name, mailing address and telephone number;
2.    Your handwritten signature;
3.    A statement that you have reviewed and understood the Notice and want to be excluded from the Class, such as "I hereby state I understand the Notice and request to be excluded from the Class in *Justin Lytle and Christine Musthaler v. Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc.*, Case No. 5:19-CV-00835-FMO-SP;
4.    Your lawyer's name and contact information (if any);
5.    Proof that you purchased a Cosequin® Product between May 3, 2016, and May 6, 2022.

The exclusion request must be **mailed** to the Settlement Administrator at the following address and **postmarked** by **JUNE 22, 2026**:

*Lytle v. Nutramax Laboratories, Inc. et al*
Settlement Administrator
PO Box 3167
Portland, OR 97208-3167

**You cannot opt-out (exclude yourself) by telephone.**

"Mass" or "class" requests for exclusion filed by third parties on behalf of a "mass" or "class" of Class Members or multiple Class Members where the opt-out has not been signed by each and every individual Class Member will not be allowed.

## 17.    If I opt-out can I still get anything from the Settlement?

No. If you timely opt-out, you will not be entitled to receive a Settlement Payment, and you will not be bound by the Settlement or any judgment in this lawsuit. You can only get a Settlement Payment if you stay in the Settlement and submit a timely and valid Claim Form.

## 18.    If I do not exclude myself, can I sue Defendants for the same thing later?

No. Unless you opt-out, you give up any right to sue any of the Released Parties for the legal claims this Settlement resolves and Releases, and you will be bound by all the terms of the Settlement, proceedings, orders, and judgments in the lawsuit. You must opt-out of this lawsuit to start or continue with your own lawsuit or be part of any other lawsuit against the Released Parties about the Released Claims in this Settlement. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately.

### OBJECTING TO THE SETTLEMENT

## 19.    How do I tell the Court that I do not like the Settlement?

If you are a Class Member, you can tell the Court you do not agree with all or any part of the Settlement and/or the attorneys' Fee and Expense Award, and service awards.

To object, you must file your written objection with the Court by **JUNE 22, 2026** in *Justin Lytle and Christine Musthaler v. Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc.*, Case No. 5:19-CV-00835-FMO-SP.

To file an objection, you cannot exclude yourself from the Class. Your objection must include all of the following information:

1.    Your full name, address, telephone number and email address (if any).
2.    Information or documents sufficient to show that you are a Class Member.
3.    Copies of any materials that you intend to submit to the Court or present at the Fairness Hearing.
4.    The legal and factual ground(s) for the objection.

**Questions? Go to www.CosequinCASettlement.com
or call 1-888-899-7783**

5.  Whether the objection applies only to you, to a specific subset of the class, or to the entire class.
6.  If you are represented by a lawyer, your lawyer's name, email address, mailing address, and telephone number.
7.  Your request to present arguments to the Court at the Fairness Hearing (if any).
8.  Your personal signature and, if represented by a lawyer, the personal signature of your lawyer.

To object, you must file your timely written objection with the Court as provided below no later than **JUNE 22, 2026**. The Court's address is:

| **COURT** |
|:---:|
| U.S. District Court<br>Central District of California<br>First Street U.S. Courthouse<br>350 W. 1st Street<br>Suite 4311<br>Los Angeles, CA 90012 |

**<u>Notice of Intention to Appear</u>**

If you are a Class Member and you object, at the Court's discretion, you may appear at the Fairness Hearing.

- To appear, you must file a Notice of Intention to Appear with the Court.
- Your Notice of Intention to Appear must be filed with the Court by **JULY 27, 2026**, at the address in the table above.

Your Notice of Intention to Appear must include:

- Your full name, address, telephone number and email address (if any); and
- If you are represented by a lawyer, your lawyer's name, email address, mailing address, and telephone number.

## 20.    What is the difference between objecting and asking to be excluded?

Objecting is simply telling the Court you do not like something about the Settlement. Requesting exclusion (opting-out) is telling the Court you do not want to be part of the Class or the Settlement. If you exclude yourself, you cannot object to the Settlement.

## THE FAIRNESS HEARING

## 21.    When and where will the Court decide whether to approve the Settlement?

The Court will hold a Fairness Hearing on **AUGUST 13, 2026, at 10:00 a.m.** before the Honorable Fernando M. Olguin in Courtroom 6D, First Street U.S. Courthouse, 350 W. 1st Street, Suite 4311, Los Angeles, CA 90012. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate, and decide whether to approve the Settlement, Class Counsel's attorneys' Fee and Expense Award, and service awards.

If there are objections that were filed by the deadline, the Court will consider them. If you file a timely, written objection, and you would like to speak at the hearing, you must indicate in your written objection that you wish to speak at the Fairness Hearing.

**<u>Note:</u>** The date and time of the Fairness Hearing are subject to change without further notice to the Class. The Court may also decide to hold the hearing via video conference or by telephone. You should check the Settlement Website www.CosequinCASettlement.com to confirm the date and time of the Fairness Hearing have not changed.

## 22.    Do I have to attend the Fairness Hearing?

No. Class Counsel will answer any questions the Court may have. However, you are welcome to attend at your own expense. If you file an objection, you do not have to attend the Fairness Hearing to speak about it. As long as you file your written objection by the deadline, the Court will consider it.

**Questions? Go to www.CosequinCASettlement.com
or call 1-888-899-7783**

AM3827 v.02

## 23.   May I speak at the Fairness Hearing?

Yes, at the Court's discretion, as long as you do not exclude yourself (opt-out) and you file a timely written objection, and a Notice of Intention to Appear requesting to speak at the hearing, you can (but do not have to) participate and speak for yourself at the Fairness Hearing. This is called making an appearance. You can also have your own lawyer speak for you, but you will have to pay for the lawyer yourself.

If you want to appear, or if you want your own lawyer instead of Class Counsel to speak for you at the hearing, you must follow all of the procedures for objecting and file a Notice of Intention to Appear as listed above—and specifically include a statement whether you or your lawyer will appear at the Fairness Hearing.

## IF YOU DO NOTHING

## 24.   What happens if I do nothing at all?

If you are a Class Member and you do nothing, you will not receive a Settlement Payment. You will give up your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Released Parties about the legal claims that are released by the Settlement, and you will be bound by all the terms of the Settlement, proceedings, orders, and judgments in the lawsuit.

## GETTING MORE INFORMATION

## 25.   How do I get more information?

This Notice summarizes the Settlement. Complete details about the Settlement are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at www.CosequinCASettlement.com. You may get additional information at www.CosequinCASettlement.com, by calling toll-free 1-888-899-7783, or by writing to:

*Lytle v. Nutramax Laboratories, Inc. et al.*
Settlement Administrator
P.O. Box 3167
Portland, OR 97208-3167

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE REGARDING THIS NOTICE.**

Questions? Go to www.CosequinCASettlement.com
or call 1-888-899-7783

7

# Attachment 5

ML9881 v.02

Claims can be submitted electronically at CosequinCASettlement.com.

*Lytle v. Nutramax Laboratories, Inc. et al.*
Settlement Administrator
P.O. Box 3167
Portland, OR 97208-3167

***Justin Lytle v. Nutramax Laboratories, Inc.***
Case No. 5:19-CV-00835-FMO-SP
US District Court, Central District of California

## CLAIM FORM INSTRUCTIONS

You must submit a timely and valid Claim Form by **JULY 21, 2026,** to receive a Settlement Payment.

## WHY SHOULD I FILE A CLAIM?

Class members who submit a timely and valid Claim Form are eligible for a Settlement Payment of up to $25 for each unit of Cosequin® Products (defined below) purchased between May 3, 2016, and May 6, 2022, up to a maximum of $150. **Each Household is limited to and may only submit one single Claim Form.** For purposes of the Settlement, Household is defined as all persons living at the same physical address.

If the total value of all valid Claims Forms exceeds the funds available for distribution to Class Members, then the amounts of the payments to Class Members will be reduced as necessary on a "pro rata" basis. Any such pro rata adjustment will be calculated before funds are distributed. In that case, the adjustment would be automatic, and you would not be required to submit another claim or re-submit a claim.

## WHO CAN MAKE A CLAIM?

All Class Members residing in California who purchased the following canine Cosequin® Products for personal use: Cosequin® DS Maximum Strength Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Chewable Tablets; Cosequin® Maximum Strength Plus MSM Chewable Tablets; Cosequin® with MSM Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Soft Chews; and Cosequin® Maximum Strength Plus MSM Soft Chews; and Cosequin® with MSM Soft Chews between May 3, 2016 and May 6, 2022. "Products for personal use" means products purchased for household use by an animal or pet, and not for resale or other business purpose.

## HOW TO MAKE A CLAIM

You can either

(1) <u>File Online:</u> File online at www.CosequinCASettlement.com; or

(2) <u>File by Mail:</u> Fill out, sign, and return this form to *Lytle v. Nutramax Laboratories, Inc. et al*, Settlement Administrator, P.O. Box 3167, Portland, OR 97208-3167.

**You must sign and complete the entire Claim Form.**

**Claims must be submitted online or postmarked by JULY 21, 2026.**

### ALL CLAIMS ARE SUBJECT TO VERIFICATION.

### PLEASE KEEP A COPY OF YOUR COMPLETED CLAIM FORM FOR YOUR RECORDS.

*For more information, visit CosequinCASettlement.com or call 1-888-899-7783*
*The deadline to submit a Claim Form is **JULY 21, 2026***

01-CA40086765

AL9882 v.02

Claims can be submitted electronically at CosequinCASettlement.com.

| CLAIM FORM |
|---|

| *Your claim must be either submitted online or postmarked and mailed by:* **JULY 21, 2026** | *Lytle v. Nutramax Laboratories, Inc. et al.*<br>Settlement Administrator<br>P.O. Box 3167<br>Portland, OR 97208-3167<br>Website: www.CosequinCASettlement.com |

## SECTION A: NAME AND CONTACT INFORMATION

Provide your name and contact information below. It is your responsibility to notify the Settlement Administrator of any changes to your contact information after the submission of your Claim Form.

First Name:                                              MI      Last Name:

Physical Address 1 (Street Address, Including Apartment or Unit Number):

Address 2:

City:                                                                State:      ZIP Code:

Email Address:

## SECTION B: PURCHASE INFORMATION

List in the box below the total number of units of applicable Cosequin® products (Cosequin® DS Maximum Strength Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Chewable Tablets; Cosequin® Maximum Strength Plus MSM Chewable Tablets; Cosequin® with MSM Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Soft Chews; and Cosequin® Maximum Strength Plus MSM Soft Chews; and Cosequin® with MSM Soft Chews) that you purchased in California between May 3, 2016, and May 6, 2022: **Settlement payments are capped at six (6) units ($150) per household.**

☐ Number of Units Purchased

**IF** your Household address at the time of purchase of applicable Cosequin® Products during the Class Period **is different than the address provided above**, provide your Household address at the time of purchase below:

Household Address 1 (Street Address, Including Apartment or Unit Number):

Address 2:

City:                                                                State:      ZIP Code:

*For more information, visit CosequinCASettlement.com or call 1-888-899-7783*
*The deadline to submit a Claim Form is **JULY 21, 2026***

02-CA40086765

AL9883 v.02

Claims can be submitted electronically at CosequinCASettlement.com.

## SECTION C: PAYMENT ELECTION

You acknowledge that if you do not choose to receive your payment digitally, you may not receive it as quickly and that the Settlement Administrator will not be responsible for payments that do not arrive by U.S. mail. *Please select only* **one** *of the following payment options.*

## PAYMENT ELECTION

Please fill out **ONLY ONE** of the payment options below.

---

### #1 Digital Payment Account – Payment Option

☐ Zelle

*Provide the email* **OR** *phone number,* **NOT** *both, associated with your selected digital payment account.*

Email Address

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

**OR** Phone Number

☐☐☐ – ☐☐☐ – ☐☐☐☐

---

**OR**

---

### #2 ACH Transfer: Direct Electronic Payment to a Bank Account – Payment Option

☐ Checking Account     ☐ Savings Account

Routing Number                 Account Number

☐☐☐☐☐☐☐☐☐     ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

---

**OR**

---

### #3 Physical Check Sent by Mail – Payment Option

*Sent by mail to the address on this Claim.*

☐ Physical Check

---

If you select more than one payment option, you will be mailed a check.

## SECTION D: CERTIFICATION

**By signing below, I certify that the information provided in this Claim Form is true and correct to the best of my knowledge, information, and belief. I understand the Settlement Administrator may contact me to request further verification of the information provided in this Claim Form.**

**I also certify that between May 3, 2016 and May 6, 2022, I resided in California, and I purchased canine Cosequin® products (Cosequin® DS Maximum Strength Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Chewable Tablets; Cosequin® Maximum Strength Plus MSM Chewable Tablets; Cosequin® with MSM Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Soft Chews; and Cosequin® Maximum Strength Plus MSM Soft Chews; and Cosequin® with MSM Soft Chews) for personal use. "Products for personal use" means products purchased for household use by an animal or pet, and not for resale or other business purpose.**

Signature: _____          Date: ☐☐ – ☐☐ – ☐☐☐☐
                                                          MM      DD      YYYY

*For more information, visit CosequinCASettlement.com or call 1-888-899-7783*
*The deadline to submit a Claim Form is* **JULY 21, 2026**

03-CA40086765

# Attachment 6

⊙ LIVE NOW MARRIED TO REAL ESTATE

**HGTV**  DECORATE    GARDEN    CLEAN    HOME IMPROVEMENT    ENTERTAIN    SHOP    SHOWS    SWEEPS    NEWS    ABOUT    Q

Home → Shopping → Furniture and Accessories

# The Best Pet-Friendly Couches of 2026

Having pets doesn't mean you have to let your sofa go to the dogs (and cats). Discover the best fabric for a pet-friendly couch, along with tips for choosing the sofa that's right for you and your furry friend.

Price and stock could change after publish date, and we may make money off these affiliate links. Learn more

Updated on March 03, 2026



By: Keri Sanders

Keri is an editor with a love of all things design and a passion for products. She takes pride in utilizing her experience in entertaining, home decor and travel to enhance readers' lives in a way that is practical, achievable and affordable.

Related To:    Pets

Once upon a time, picking out a new piece of furniture was an exciting experience that came down to style, budget and comfort. Enter Fido and Fluffy. While most of us wouldn't trade our precious pets for the world, it's easy to feel overwhelmed and frustrated when every piece of furniture you love looks like it's just waiting to be destroyed.





If you reside in California and purchased certain dog Cosequin® Products for personal use between May 3, 2016, and May 6, 2022,



STEVE CARELL
HBO ORIGINAL
Rooster
SUNDAYS 10PM
HBO max
He's here to learn.

⊙ In store



2026 Porsche Cayenne S E-Hybrid

Porsche Cars North America

⊙ **LIVE NOW** MARRIED TO REAL ESTATE

☰  **HGTV**   DECORATE    GARDEN    CLEAN    HOME IMPROVEMENT    ENTERTAIN    SHOP    SHOWS    SWEEPS    NEWS    ABOUT    🔍

Home → Shopping → Furniture and Accessories

# The Best Pet-Friendly Couches of 2026

Having pets doesn't mean you have to let your sofa go to the dogs (and cats). Discover the best fabric for a pet-friendly couch, along with tips for choosing the sofa that's right for you and your furry friend.

Price and stock could change after publish date, and we may make money off these affiliate links. Learn more.

**Updated on March 03, 2026**

 By: Keri Sanders

Keri is an editor with a love of all things design and a passion for products. She takes pride in utilizing her experience in entertaining, home decor and travel to enhance readers' lives in a way that is practical, achievable and affordable.

Related To:   Pets

O nce upon a time, picking out a new piece of furniture was an exciting experience that came down to style, budget and comfort. Enter Fido and Fluffy. While most of us wouldn't trade our precious pets for the world, it's easy to feel overwhelmed and frustrated when every piece of furniture you love looks like it's just waiting to be destroyed.





you may be eligible to receive benefits from a class action Settlement.

Legal Notice



STEVE CARELL
HBO ORIGINAL
Rooster
He's here to learn...
SUNDAYS 10PM
HBO max

⊙ In store



2026 Porsche Cayenne S E-Hybrid

Porsche Cars North America

  SUBSCRIBE NOW
$1 for the first 6 months

U.S.    Politics    Sports    Entertainment    Life    Money    Travel    Opinion    Crossword    60°F    Subscribe    Sign In

← Back to USA TODAY Pets

**DOG**

# The Iditarod launches in a blast of snow and paws

 **David Baratz**

March 9, 2026, 10:57 a.m. ET



Adam Lindenmuth participates in the official restart of the 54th Iditarod Trail Sled Dog Race in Willow, Alaska, March 8, 2026.

Kerry Tasker, REUTERS

Advertisement



If you reside in California and purchased certain dog Cosequin® Products for personal use between May 3, 2016, and May 6, 2022, you may be eligible to receive benefits from a class action Settlement.

Legal Notice



## More Stories

 **Florida nurse's vulgar post got her fired — now she's fighting state ban**
OPINION

 **Trump's approval rating shifts after Iran war; what the polls say now**
NEWS

 **Your Health, Your Community, Your Impact**
WeConnect | Ad

Advertisement



STARLINK    Reliable high-speed internet starting at $39/mo

Offer ends 3/31

Advertisement



**yahoo!life**

Buscar en la web 🔍

Noticias   Finanzas   Deportes   Más ˅   ✉ Correo   Iniciar sesión

Vida   Familia y relaciones ˅   Comida y bebida   Mascotas y animales   Horóscopos   Viajar   Salud ˅   Compras ˅

Si reside en California y compró ciertos productos Cosequin® para perros para uso personal entre el 3 de mayo de 2016 y el 6 de mayo de 2022, usted puede ser elegible para recibir beneficios de una Conciliación de demanda colectiva.

Aviso Legal

**Mascotas y animales**





A NOSOTROS 🐾 Gente

## Perro desaparecido durante varios días se reúne con su familia después de que los vecinos lo vieran en un desagüe pluvial.

Slept like a baby after mom cleaned it up!

Celebridad 🔵 Hora del perro

## Perro duerme mientras su mamá limpia el desastre que hizo en un video...

Un Shih-Tzu adoptivo conoce a un cachorro por primera vez y el resultado inesperado...

🐾 Mascotas del desfile

El bebé okapi Neo hace su debut público

🔲 BBC

Estilo de vida

y!entertainment

Buscar en la web 🔍

Noticias    Finanzas    Deportes    Más ⌄    ✉ Correo    Iniciar sesión


Si reside en California y compró ciertos productos Cosequin® para perros para uso personal entre el 3 de mayo de 2016 y el 6 de mayo de 2022,

✕

Entretenimiento: La casa de Rihanna fue alcanzada por disparos  🔥 Juega a Crushable de Candy Crush  📗 'Hoppe  ›

THE SPUN by Athlon Sports    ( Seguir )

# Ex estrella de ESPN solicita el divorcio después de 11 años

**Andrés Holleran**
Domingo, 8 de marzo de 2026 a las 14:39 EDT
2 minutos de lectura

⊕ Añadir Yahoo en Google    ↪    💬 123

LEXUS
TX    NX    RZ F SPORT    RX F SPORT
The offers don't.

🌟 Conclusiones clave

• La ex estrella de ESPN Josh Elliott solicitó oficialmente el divorcio de la periodista de ABC Liz Cho después de más de una década de m    Ver más

Una ex estrella de ESPN solicitó oficialmente el divorcio después de más de una década de matrimonio.

y!entertainment   Buscar en la web   🔍     Noticias    Finanzas    Deportes    Más ⌄    ✉ Correo    Iniciar sesión

usted puede ser elegible para recibir beneficios de una Conciliación de demanda colectiva.
Aviso Legal

Entretenimiento: La casa de Rihanna fue alcanzada por disparos    🍬 Juega a Crushable de Candy Crush 🗒  'Hoppe    ›     ✕

 THE SPUN by AthlonSports    ( Seguir )

# Ex estrella de ESPN solicita el divorcio después de 11 años

Andrés Holleran
Domingo, 8 de marzo de 2026 a las 14:39 EDT
2 minutos de lectura

🔲 Añadir Yahoo en Google    ↪    💬 123



⭐ **Conclusiones clave**

- La ex estrella de ESPN Josh Elliott solicitó oficialmente el divorcio de la periodista de ABC Liz Cho después de más de una década de m    Ver más

Una ex estrella de ESPN solicitó oficialmente el divorcio después de más de una década de matrimonio.

Josh Elliott, de 54 años, es quizás más conocido por su tiempo en ESPN. Fue presentador del programa matutino "SportsCenter" durante mucho tiempo. Posteriormente, Elliott trabajó en "Good Morning America" y CBS. Sin embargo, ha estado fuera del aire por un tiempo.

Según un informe de Page Six , Elliott y su esposa, la periodista de ABC Liz Cho, han solicitado oficialmente el divorcio. La pareja se separó oficialmente el verano pasado, en junio de


Your Dove purchase keeps girls in sports
Learn more








**legal.notice**
Ad
...



**Dog Cosequin® Products Class Action Settlement**

 Learn more                               ›

♡  ◯  ⟲  ◁                                                        ▢

legal.notice Purchased dog Cosequin® Products for personal use, you may be eligible for benefits.



**legal.notice**
Ad



Conciliación de demanda colectiva sobre productos para perros Cosequin®

Learn more





legal.notice Si compró productos para perros Cosequin® para uso personal, puede cumplir con los requisitos para recibir beneficios.

# Attachment 7

## *Nutramax Laboratories, Inc.*

**Sponsored Search Keyword List**

| | |
|---|---|
| Cosequin Lawsuit | Canine Cosequin Lawsuit |
| Cosequin Settlement | Canine Cosequin Settlement |
| Cosequin Class Action | Canine Cosequin Class Action |
| Cosequin Class Action Settlement | Canine Cosequin Class Action Settlement |
| Cosequin Litigation | Canine Cosequin Litigation |
| Cosequin Claim | Canine Cosequin Claim |
| Nutramax Lawsuit | Cosequin Chewable Tablets Lawsuit |
| Nutramax Settlement | Cosequin Chewable Tablets Settlement |
| Nutramax Class Action | Cosequin Chewable Tablets Class Action |
| Nutramax Class Action Settlement | Cosequin Chewable Tablets Class Action Settlement |
| Nutramax Litigation | Cosequin Chewable Tablets Litigation |
| Nutramax Claim | Cosequin Chewable Tablets Claim |
| Cosequin Chews Lawsuit | Cosequin Tablets Lawsuit |
| Cosequin Chews Settlement | Cosequin Tablets Settlement |
| Cosequin Chews Class Action | Cosequin Tablets Class Action |
| Cosequin Chews Class Action Settlement | Cosequin Tablets Class Action Settlement |
| Cosequin Chews Litigation | Cosequin Tablets Litigation |
| Cosequin Chews Claim | Cosequin Tablets Claim |
| Dog Cosequin Lawsuit | Cosequin Chewable Tablets |
| Dog Cosequin Settlement | Cosequin Chews |
| Dog Cosequin Class Action | Canine supplements |
| Dog Cosequin Class Action Settlement | Dog supplements |
| Dog Cosequin Litigation | Cosequin supplements |
| Dog Cosequin Claim | Nutramax supplements |

# Attachment 8



| Cosequin Class Action | ✕  🎤  📷  🔍 |

AI Mode    **All**    Shopping    Images    News    Videos    Forums    More ▾    Tools ▾

## Sponsored result

🌐 cosequincasettlement.com
https://www.cosequincasettlement.com  ⋮

### Canine Cosequin® Products - Class Action Settlement

Purchased certain dog Cosequin® Products for household use by an animal or pet? You may be eligible to receive benefits from a class action Settlement.

Hide sponsored result ⌃

◆ AI Overview

A class action lawsuit, *Lytle v. Nutramax Laboratories, Inc.*, alleges that Cosequin joint supplements for dogs are falsely advertised as providing health benefits, violating California's Consumers Legal Remedies Act. The Ninth Circuit Court of Appeals upheld class certification for California purchasers, with allegations that the products offer no, or minimal, benefit.  Class Action Lawsuits +3

**Key Details of the Cosequin Class Action:**

- **Allegations:** Plaintiffs claim that marketing statements—such as "supports mobility" and "joint health supplement"—are misleading, as studies do not support these claims.

Show more ⌄

---

**Pet Supplement Class Certification** in False Ad Lawsuit

Apr 22, 2024 — A consumer-led lawsuit Nutramax Laboratories Inc. of deceptivel

**B**  Bloomberg Law News  ⋮

**Pet owners win class cert. in Nutram** Cosequin supplement class action

Apr 30, 2024 — A class action lawsuit ha

---

 Class Action Lawsuits
https://topclassactions.com › consumer-products › pet  ⋮

### Pet owners win class cert. in Nutramax Cosequin ...

Apr 30, 2024 — Why: The class action lawsuit claims **Nutramax falsely markets that its Cosequin pet health supplement products** promote healthy joints and ...  Read more

PRN PR Newswire
https://www.prnewswire.com › news-releases › if-you-res...  ⋮

### If you reside in California and purchased certain dog ...

35 minutes ago — If you are a Class Member, you can **submit a Claim Form at** www.**CosequinCASettlement.com** or by mail postmarked by July 21, 2026, to be eligible ...  Read more

🌐 Court of Appeals for the Ninth Circuit (.gov)
https://cdn.ca9.uscourts.gov › 2024/04/22  PDF  ⋮



**yahoo!**  | Cosequin Class Action | ✕  🎤  🔍

🔹 Yahoo Scout    **All**    Images    Videos    News    ⋯ More                          Anytime ⌄

Ad related to: Cosequin Class Action

  cosequincasettlement.com
www.cosequincasettlement.com

### Canine Cosequin® Products - Class Action Settlement

Purchased certain dog **Cosequin**® Products for household use by an animal or pet? You may be eligible to receive benefits from a **class action** Settlement.

  Top Class Actions
topclassactions.com › lawsuit-settlements › consumer

### Pet owners win class cert. in Nutramax Cosequin supplement ...

Apr 30, 2024 · The Ninth Circuit Court of Appeals has upheld certification for a class of pet owners in a Nutramax **class action** claiming the health supplement company falsely marketed it...

  cdn.ca9.uscourts.gov
cdn.ca9.uscourts.gov › datastore › opinions

### UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

Apr 22, 2024 · Below, the district court certified a **class** of California purchasers of certain **Cosequin** products who were exposed to the allegedly misleading statements. Nutramax now...

  PR Newswire
www.prnewswire.com › news-releases › if-you-reside

### If you reside in California and purchased certain dog ...

37 minutes ago · The **Class** is defined as all persons residing in California who purchased the following canine **Cosequin**® Products for personal use: **Cosequin**® DS Maximum Strength...

  ClassAction.org
www.classaction.org › cosequin-joint-health-dogs

### Cosequin Joint Health Supplement Lawsuits | ClassAction.org

Feb 4, 2026 · Now, attorneys are investigating whether New York pet owners were misled by **Cosequin's** product claims and whether they could file a **class action** to potentially recover $5...

  third-news.com
third-news.com › article › b5d2497e-1bd3-11f1-b0c2-9

### California Residents Eligible for Class Action Settlement ...

California residents who purchased specific **Cosequin**® dog products between 2016-2022 might qualify for a **class action** settlement worth $11.5 million.

  Justia Law
law.justia.com › cases › federal

### LYTLE V. NUTRAMAX LABORATORIES, INC., No. 22-55744 (9th Cir...

Aug 23, 2024 · The plaintiffs, Justin Lytle and Christine Musthaler, claimed that **Cosequin** provided no such health benefits. The district court certified a **class** of California purchasers o...



yahoo!

Dog Cosequin Class Action

Yahoo Scout    **All**    Images    Videos    News    ··· More                                    Anytime ⌄

---

Ad related to: Dog Cosequin Class Action

 cosequincasettlement.com
www.cosequincasettlement.com

### Class Action Settlement - Dog Cosequin® Products

Purchased certain **dog Cosequin®** Products for household use by an animal or pet? You may be eligible to receive benefits from a **class action** Settlement.

---

Top Class Actions
topclassactions.com › lawsuit-settlements › consumer

### Pet owners win class cert. in Nutramax Cosequin supplement ...

Apr 30, 2024 · The Ninth Circuit Court of Appeals has upheld certification for a class of pet owners in a Nutramax **class action** claiming the health supplement company falsely marketed it...

## Images



View all ↗

---

## Searches related to Dog Cosequin Class Action

| | |
|---|---|
| 🔍 dog cosequin class action **lawsuit** | 🔍 class action **claims** |
| 🔍 dog cosequin class action **settlement** | 🔍 class action **settlements** |
| 🔍 dog cosequin class action **suit** | 🔍 class action **movie where to watch** |
| 🔍 dog cosequin class action **claim** | 🔍 class action **adalah** |

---

PRN PR Newswire
www.prnewswire.com › news-releases › if-you-reside

### If you reside in California and purchased certain dog ...

34 minutes ago · The **Class** is defined as all persons residing in California who purchased the following canine **Cosequin®** Products for personal use: **Cosequin®** DS Maximum Strength...

---

 cdn.ca9.uscourts.gov
cdn.ca9.uscourts.gov › datastore › opinions

### UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

Apr 22, 2024 · In this **action**, Plaintiffs allege that Nutramax marketed **Cosequin** as supplement that would improve their **dogs'** a health joints and mobility when, in fact, there is no evidence...



Q  Cosequin Chewable Tablets Lawsuit

ALL    SEARCH    VIDEOS    IMAGES    MAPS    NEWS    COPILOT    ⋮ MORE

 cosequincasettlement.com
https://www.cosequincasettlement.com ⋮

## Canine Cosequin® Products | Class Action Settlement

Sponsored  Purchased certain dog **Cosequin**® Products for household use by an animal or pet? You may be eligible to receive benefits from a class action Settlement.

## Copilot Search

| | |
|---|---|
| **Top Class Actions**<br>https://topclassactions.com › lawsuit-settlements › consumer-products ›…<br><br>**Pet owners win class cert. in Nutramax Cosequin…**<br><br>The Ninth Circuit Court of Appeals has upheld certification for a class of pet owners in a Nutramax class action claiming the health supplement company falsely marketed its pet health supplement product Cosequin. | **UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**<br><br>Plaintiffs claim that Nutramax violated the California Consumers Legal Remedies Act ("CLRA") by marketing **Cosequin** as…<br><br>https://cdn.ca9.uscourts.gov/datastore/opinions/2… |

  

All images    All images

| | |
|---|---|
| **If you reside in California and purchased certain dog Cosequin …**<br><br>The **lawsuit** alleges Defendants misrepresented the benefits and effectiveness of certain canine suppleme…<br><br>PRN PR Newswire | |

 uscourts.gov
https://cdn.ca9.uscourts.gov › datastore › opinions

[PDF]

## UNITED STATES COURT OF APPEALS FOR THE NINTH …

Apr 22, 2024 · Plaintiffs claim that Nutramax violated the California Consumers Legal Remedies Act ("CLRA") by marketing **Cosequin** as promoting healthy joints in dogs,…

 PR Newswire
https://www.prnewswire.com › news-release

## If you reside in California and purch

38 minutes ago · The **lawsuit** alleges Defendants effectiveness of certain canine supplements bran

 cosequincasettlement.com



Q   Cosequin Class Action                                    🎤   ⬚

ALL        🔍 SEARCH     VIDEOS     IMAGES     MAPS     NEWS     COPILOT     ⋮ MORE

 About 477 results

🌐 cosequincasettlement.com
https://www.cosequincasettlement.com ⋮

## Class Action Settlement | Dog Cosequin® Products

Sponsored Purchased certain dog **Cosequin**® Products for household use by an animal or pet? You may be eligible to receive benefits from a **class action** Settlement.

third-news.com
https://third-news.com › article

## California Residents Eligible for Class Action Settlement Over …

California residents who purchased specific **Cosequin**® dog products between 2016-2022 might qualify for a **class action** settlement worth $11.5 million.

PRN PR Newswire
https://www.prnewswire.com › news-releases › if-you...

## If you reside in California and purchased certain dog Cosequin …

37 minutes ago · A $11.5 million settlement has been reached in a **class action** lawsuit against Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. (together, …

Top Class Actions
https://topclassactions.com › lawsuit-settlements › …

## Pet owners win class cert. in Nutramax Cosequin supplement class …

Apr 30, 2024 · The Ninth Circuit Court of Appeals has upheld certification for a class of pet owners in a Nutramax **class action** claiming the health supplement company falsely marketed its pet health …

ClassAction.org
https://www.classaction.org › cosequin-joint-health-dogs-lawsuit

## Cosequin Joint Health Supplement Lawsuits | ClassAction.org

Feb 4, 2026 · Now, attorneys are investigating whether New York pet owners were misled by **Cosequin's** product claims and whether they could file a **class action** to potentially recover $50 per …

uscourts.gov
https://cdn.ca9.uscourts.gov › datastore › opinions

## [PDF] UNITED STATES COURT OF APPEALS FOR THE NINTH …

Apr 22, 2024 · Below, the district court certified a **class** of California purchasers of certain **Cosequin** products who were exposed to the allegedly misleading statements. Nutramax now appeals that …

J Justia Law
https://law.justia.com › cases › federal › appellate-courts

## LYTLE V. NUTRAMAX LABORATORIES, INC., No. 22-55744 (9th …

Aug 23, 2024 · The plaintiffs, Justin Lytle and Christine Musthaler, claimed that **Cosequin** provided no such health benefits. The district court certified a **class** of California purchasers of certain **Cosequin** …

# Attachment 9

# If you reside in California and purchased certain dog Cosequin® Products for personal use between May 3, 2016, and May 6, 2022, you may be eligible to receive benefits from a class action Settlement

USA - English ▾

---

NEWS PROVIDED BY

**United States District Court for the Central District of California →**
Mar 09, 2026, 12:00 ET

---

LOS ANGELES, March 9, 2026 /PRNewswire/ --

### *A Court authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

A $11.5 million settlement has been reached in a class action lawsuit against Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. (together, "Defendants"). The lawsuit alleges Defendants misrepresented the benefits and effectiveness of certain canine supplements branded under the name Cosequin® both in advertising and packaging. Defendants deny all allegations of fault, wrongdoing, or liability made by the Plaintiffs. There has been no determination of wrongdoing by the Court.

The purpose of this Notice is to provide information about this Settlement and explain your rights and options.

**Who is included?** The Class is defined as all persons residing in California who purchased the following canine Cosequin® Products for personal use: Cosequin® DS Maximum Strength Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Chewable Tablets; Cosequin® Maximum Strength Plus MSM Chewable Tablets; Cosequin® with MSM Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Soft Chews; Cosequin® Maximum Strength Plus MSM Soft Chews; and Cosequin® with MSM Soft Chews between May 3, 2016 and May 6, 2022. "Products for personal use" means products purchased for household use by an animal or pet, and not for resale or other business purpose.

**What Does the Settlement Provide?** If you are a Class Member, you can submit a Claim Form at **www.CosequinCASettlement.com** or by mail postmarked by **July 21, 2026,** to be eligible for a Settlement Payment of up to $25 per unit of Cosequin® Products purchased between May 3, 2016, and May 6, 2022, up to a maximum of $150. **Each Household is limited to and may only submit one single Claim Form.** For purposes of the Settlement, Household is defined as all persons living at the same physical address.

The $11.5 million settlement fund shall be used to meet the monetary obligations to Class Members, pay all settlement payments thereto, service awards, and the Fee and Expense Award ordered by the Court after submission of the Fee and Expense Application by Class Counsel. If the total amount of Valid Claims is more than what remains of the Settlement Fund after removing the attorneys' Fee and Expense Award and service awards, then the Settlement Payment for each Class Member will be reduced on a pro rata (a legal term meaning equal) basis.

More information is available in the Settlement Agreement or the Long Form Notice available at the website.

**Other Options.** If you do not want to be legally bound by the Settlement, you must submit an opt-out **postmarked** by **June 22, 2026**. If you do not opt-out, you will give up the right to sue and will release the Defendants and Released Parties about the legal claims in this lawsuit. If you do not opt-out, you may object to the Settlement and/or the attorneys' Fee and Expense Award and service awards by **June 22, 2026**. The Long Form Notice on the Settlement Website explains how to opt-out or object. If you do nothing, you will get no Settlement Payment, and you will be bound by the Settlement and any judgments and orders. The Court will hold a Fairness Hearing on **August 13, 2026** to consider whether to approve the Settlement, Class Counsel's attorneys' fees of up to 33% of the Settlement Fund and costs, and any objections. You or your lawyer may attend and ask to appear at the hearing if you object, but you are not required to do so.

**This notice is a summary.** Learn more about the Settlement at **www.CosequinCASettlement.com** or call toll free 1-888-899-7783.

SOURCE United States District Court for the Central District of California

SOURCE United States District Court for the Central District of California

# Si reside en California y compró ciertos productos para perros Cosequin® para uso personal entre el 3 de mayo de 2016 y el 6 de mayo de 2022, es posible que cumpla con los requisitos para recibir beneficios de una Conciliación de demanda colectiva

 USA - español ▼

---

NEWS PROVIDED BY
**United States District Court for the Central District of California** ➞
Mar 09, 2026, 12:00 ET

---

LOS ANGELES, 9 de marzo de 2026 /PRNewswire-HISPANIC PR WIRE/ --

***Un tribunal autorizó este aviso. <u>No</u> se trata del ofrecimiento de un abogado.***

Se ha llegado a una conciliación de $11.5 millones en una demanda colectiva contra Nutramax Laboratories, Inc. y Nutramax Laboratories Veterinary Sciences, Inc. (en conjunto, los "Demandados"). La demanda afirma que los Demandados tergiversaron los beneficios y la eficacia de ciertos suplementos caninos bajo el nombre Cosequin®, tanto en la publicidad como en su empaque. Los Demandados rechazan todas las alegaciones de culpa, acto indebido o responsabilidad presentadas por los Demandantes. El Tribunal no ha determinado que se haya cometido alguna falta indebida.

El propósito de este Aviso es proporcionar información sobre esta Conciliación y explicar sus derechos y opciones.

**¿Quién está incluido?** El Grupo se define como todas las personas que residen en California y que compraron los siguientes Productos Cosequin® caninos para uso personal: Tabletas masticables Cosequin® DS Maximum Strength; Tabletas masticables Cosequin® DS Maximum Strength Plus MSM; Tabletas masticables Cosequin® Maximum Strength Plus MSM; Tabletas masticables Cosequin® with MSM; Masticables blandos Cosequin® DS Maximum Strength Plus MSM; Masticables blandos Cosequin® Maximum Strength Plus MSM y Masticables blandos Cosequin® with MSM entre el 3 de mayo de 2016 y el 6 de mayo de 2022. "Productos para uso personal" se refiere a los productos comprados para uso doméstico de un animal o mascota, y no para reventa u otro fin comercial.

**Qué estipula la conciliación?** Si usted es Miembro del Grupo de Demandantes, puede presentar un Formulario de Reclamo en **www.CosequinCASettlement.com** o por correo postal con matasellos no posterior al **21 de julio de 2026,** para ser elegible para un Pago de Conciliación de hasta $25 por unidad de Productos Cosequin® comprados entre el 3 de mayo de 2016 y el 6 de mayo de 2022, hasta un máximo de $150. Cada Hogar está limitado y solo puede presentar un único Formulario de reclamación. A los efectos de la Conciliación, Hogar se define como todas las personas que viven en la misma dirección física.

El fondo de la conciliación de $11.5 millones se utilizará para cumplir con las obligaciones monetarias para con los Miembros del Grupo, pagar todos los pagos de la conciliación a los mismos, las adjudicaciones de servicios y la Asignación de Honorarios y Gastos ordenada por el Tribunal después de la presentación de la Solicitud de Honorarios y Gastos por el Abogado del Grupo. Si el monto total de los Reclamos válidos es superior a lo que queda del Fondo de la Conciliación después de eliminar los Honorarios y costos de abogados y las Adjudicaciones por servicios, entonces el pago de la Conciliación para cada Miembro del Grupo se reducirá de manera prorrateada (un término legal que significa igual).

Encontrará más información disponible en el Acuerdo de Conciliación o en el Aviso en formato largo disponible en el sitio web.

**Otras opciones.** Si no desea estar obligado legalmente por la Conciliación, debe enviar una solicitud de exclusión **con matasellos** no posterior al **22 de junio de 2026**. Si no se excluye, renunciará al derecho de demandar y eximirá a los Demandados y a las Partes eximidas de los reclamos legales planteados en esta demanda. Si no se excluye, puede oponerse a la Conciliación y/o a la Asignación de honorarios y gastos de abogados y a las adjudicaciones de servicios antes del **22 de junio de 2026**. El Aviso en Formulario detallado que consta en el Sitio web de la Conciliación explica cómo hacer para presentar una exclusión u objeción. Si no hace nada, no obtendrá ningún Pago de la Conciliación y estará obligado por la Conciliación y cualquier sentencia y orden. El Tribunal celebrará una Audiencia de Aprobación Definitiva el **13 de agosto de 2026** para considerar si aprueba la Conciliación, los honorarios de los abogados del Grupo de hasta el 33 % del Fondo de la Conciliación y los costos y cualquier objeción. Usted o su abogado pueden asistir y solicitar comparecer en la audiencia si usted objeta, pero no están obligados a hacerlo.

**Este aviso es un resumen.** Obtenga más información sobre la Conciliación en **www.CosequinCASettlement.com** o llame al número gratuito 1-888-899-7783.

FUENTE Tribunal de Distrito de los Estados Unidos para el Distrito Central de California

URL: **www.CosequinCASettlement.com**

**Este aviso es un resumen.** Obtenga más información sobre la Conciliación en **www.CosequinCASettlement.com** o llame al número gratuito 1-888-899-7783.

FUENTE Tribunal de Distrito de los Estados Unidos para el Distrito Central de California

# Attachment 10

Case 5:19-cv-00835-FMO-SP   Document 220-2   Filed 07/13/26   Page 79 of 82   Page ID #:7035

# Just Curious

*You've got questions? We've got answers.*

 

## Cardiologist follows his heart with menu

**Sara Moniuszko**
USA TODAY

What does a cardiologist, a doctor who specializes in the heart, eat on the regular?

Renato Apolito, a board-certified physician in interventional cardiology and cardiovascular disease who has been seeing patients for more than 20 years, said eating well and maximizing nutritional value of meals are important for maintaining a healthy weight and optimizing heart and overall heath.

"Managing your weight will lead to lower incidences of hypertension, diabetes, sleep apnea and all of its associated comorbidities," said Apolito, who also is the director of cardiac catheterization at Hackensack Meridian Jersey Shore University Medical Center.

### What's on the menu?

Here is what Apolito eats in a day:
● **Breakfast**. Organic, low-fat milk paired with egg whites. "I find this to be high in protein and quite satisfying in the morning, after I work out," he said. "It's quick and easy, doesn't take up much of my morning and doesn't wind up causing any type of postprandial hypoglycemia that I previously experienced when I used to eat a more carbohydrate-based breakfast." Postprandial hypoglycemia is a condition where blood sugar drops after eating. Plus, his breakfast is completely whole food and nonprocessed, he added.
● **Lunch**. Something protein-rich, such as pork loin or chicken breast, paired with as many vegetables as possible. The latest Dietary Guidelines for Americans recommends at least three servings of vegetables a day.

● **Dinner**. Green vegetables and lean protein or an occasional pasta. "By dinner time, I'm usually less hungry, but typically I will cook for myself and again favor green vegetables with lean protein," he said. "I can't help but occasionally make a good wholesome pasta dish with vegetables or a protein. My parents are from Italy, so I can't abandon my roots!"
● **Snacks/dessert**. Treats include dark chocolate, dark chocolate-covered almonds and dried fruit with ricotta or honey, which Apolito said satisfies him "as much as any candy bar." "I also enjoy high-quality ice cream," he said, but he makes sure the ingredients are whole and simple. "It's OK to cheat occasionally, just be mindful about it," he added, pointing to negative health impacts of processed products that are high in added sugar and salt.

### Ways to make diet heart healthy

To help lower LDL, or "bad," cholesterol for a healthy heart, eating leafy greens, colorful vegetables and fruit rich in fiber is helpful, Apolito explained.

"Aim for a variety – spinach, broccoli, berries, carrots – and remember, the greener, the better," he said. "Eating whole food [and] lean proteins is much better than eating processed meats like bacon, sausage and deli meats, which are particularly high in sodium and preservatives linked to heart disease."

Unfortunately, living in a society "surrounded and inundated by unhealthy processed food that are advertised ubiquitously and incessantly" makes things more difficult, Apolito acknowledged. But he said his motto for patients is: "If you can pick it or you can kill it, you can eat it."



Grilled chicken and vegetables make a heart-healthy meal. GETTY IMAGES

**"Eating whole food [and] lean proteins is much better than eating processed meats like bacon, sausage and deli meats, which are particularly high in sodium and preservatives linked to heart disease."**

**Dr. Renato Apolito**

"It is essentially a farmer's diet and will lead to you eating more whole foods that are seasonal and local," he said.

While nutrition experts agree whole foods are best, access and affordability are major factors when it comes to what Americans decide to eat.

More than half of the calories consumed at home by adults and children in the United States come from ultra-processed foods, according to a 2025 analysis from the National Center for Health Statistics.

The latest Dietary Guidelines also recommend avoiding highly processed "packaged, prepared, ready-to-eat, or other foods that are salty or sweet." This includes chips, cookies and candy.

While Apolito finds whole foods "as satisfying as any fast or processed food," he understands we all "need a treat occasionally."



EMPIRE TODAY® CARPET & FLOORING

UP TO **50%** OFF **Carpet & Flooring**   UP TO **50%** OFF **Padding & Materials**   UP TO **50%** OFF **Professional Installation**
Select Installed Styles.

GET FLOORS NOW PAY OVER TIME®

**Schedule a FREE In-Home Estimate!**
Call **888-910-3137**
Visit **Empiretoday.com/newspaper**

Get 15% off plus up to an additional 35% based on project size and service area. Discount is applied to the regular price of: (1) select styles of carpet, hardwood, tile, vinyl, and laminate; (2) basic installation; and (3) standard padding, and materials. Excludes upgrades, stairs, take-up of permanently affixed flooring, non-standard floor prep, non-standard furniture moving, other miscellaneous charges, and prior purchases. Product may not be sold separate from installation. Residential installations only. Ends 03/09/2026. Subject to change.
*With approved credit. Details at EmpireToday.com/financing.
Installation provided by independent contractors. Licensure at EmpireToday.com. CSLB 1047108   © 2026 Empire Today, LLC

LEGAL NOTICE

**If you reside in California and purchased certain dog Cosequin® Products for personal use between May 3, 2016, and May 6, 2022, you may be eligible to receive benefits from a class action Settlement.**

*A Court authorized this Notice. This is not a solicitation from a lawyer.*

A $11.5 million settlement has been reached in a class action lawsuit against Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. (together, "Defendants"). The lawsuit alleges Defendants misrepresented the benefits and effectiveness of certain canine supplements branded under the name Cosequin® both in advertising and packaging. Defendants deny all allegations of fault, wrongdoing, or liability made by the Plaintiffs. There has been no determination of wrongdoing by the Court.

The purpose of this Notice is to provide information about this Settlement and explain your rights and options.

**Who is Included?** The Class is defined as all persons residing in California who purchased the following canine Cosequin® Products for personal use: Cosequin® DS Maximum Strength Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Chewable Tablets; Cosequin® Maximum Strength Plus MSM Chewable Tablets; Cosequin® with MSM Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Soft Chews; Cosequin® Maximum Strength Plus MSM Soft Chews; and Cosequin® with MSM Soft Chews between May 3, 2016 and May 6, 2022. "Products for personal use" means products purchased for household use by an animal or pet, and not for resale or other business purpose.

**What Does the Settlement Provide?** If you are a Class Member, you can submit a Claim Form at www.CosequinCASettlement.com or by mail postmarked by **July 21, 2026,** to be eligible for a Settlement Payment of up to $25 per unit of Cosequin® Products purchased between May 3, 2016, and May 6, 2022, up to a maximum of $150. **Each Household is limited to and may only submit one single Claim Form.** For purposes of the Settlement, Household is defined as all persons living at the same physical address.

The $11.5 million settlement fund shall be used to meet the monetary obligations to Class Members, pay all settlement payments thereto, service awards, and the Fee and Expense Award ordered by the Court after submission of the Fee and Expense Application by Class Counsel. If the total amount of Valid Claims is more than what remains of the Settlement Fund after removing the attorneys' Fee and Expense Award and service awards, then the Settlement Payment for each Class Member will be reduced on a pro rata (a legal term meaning equal) basis.

More information is available in the Settlement Agreement or the Long Form Notice available at the website.

**Other Options.** If you do not want to be legally bound by the Settlement, you must submit an opt-out postmarked by **June 22, 2026.** If you do not opt-out, you will give up the right to sue and will release the Defendants and Released Parties about the legal claims in this lawsuit. If you do not opt-out, you may object to the Settlement and/or the attorneys' Fee and Expense Award and service awards by **June 22, 2026.** The Long Form Notice on the Settlement Website explains how to opt-out or object. If you do nothing, you will get no Settlement Payment, and you will be bound by the Settlement and any judgments and orders. The Court will hold a Fairness Hearing on **August 13, 2026,** to consider whether to approve the Settlement, Class Counsel's attorneys' fees of up to 33% of the Settlement Fund and costs, and any objections. You or your lawyer may attend and ask to appear at the hearing if you object, but you are not required to do so.

**This notice is a summary.** Learn more about the Settlement at www.CosequinCASettlement.com or call toll free 1-888-899-7783.

# Just Curious

*You've got questions? We've got answers.*



**Learn more**
Scan the QR code to find more Just Curious content.

# No need to brood: Cicadas to just straggle in

**Saleen Martin**
USA TODAY

As spring approaches, many Americans may be expecting the return of loud, swarming cicadas, but experts say there's little to worry about this year. No major 13- or 17-year cicada broods are set to emerge nationwide, though a small number of insects emerging in off years, known as stragglers, may still be buzzing about.

"This year, we really don't have any massive emergences taking place anywhere across the country," University of Maryland Entomology professor Michael J. Raupphe said. "People that love cicadas this year, they're simply going to be mildly disappointed. The flip side of that is the cicada-phobes, people that don't really like cicadas so much, are going to be celebrating."

This year, a small group of stragglers from Brood XXII, which emerges every 13 years, will be above ground in southern states Louisiana, Mississippi, Kentucky and Ohio, Raupp said.

Straggler cicadas from Brood II, which emerge every 17 years, will likely be in nine states, including Connecticut, Georgia, Maryland, North Carolina, New Jersey, New York, Pennsylvania, Oklahoma, and Virginia.

According to Raupp and experts at Cicada Mania, the next large emergence schedule includes:
● Brood XXIII – 2028 (Louisiana, Mississippi, Arkansas, Tennessee, Missouri, Kentucky, Illinois, and Indiana)
● Brood I – 2029 (Virginia, West Virginia, and Tennessee)
● Brood II – 2030 (Connecticut, Georgia, Maryland, North Carolina, New Jersey, New York, Pennsylvania, Oklahoma, and Virginia)
● Brood XXII – 2027 (Louisiana, Mississippi, Ohio and Kentucky)

Until then, here's what to expect:




**A cicada from a 17-year cicada brood clings to a leaf on May 29, 2024 in Park Ridge, Illinois.** SCOTT OLSON/GETTY IMAGES

**Why do stragglers emerge early?**

Calling cicadas "very interesting and charismatic," Raupp said there are seven species of periodical cicadas and 15 different broods. While most emerge on strict 13- or 17-year cycles, some – known as stragglers – surface off schedule, including this year.

Scientists don't know exactly why some cicadas emerge during off years, but two common timelines for stragglers are emerging either a year early or four years early, Raupp said. Some even emerge a year behind schedule.

"They're going to be localized," he said.

"They're not going to be in the spectacular numbers that we see with the massive emergence."

Raupp said what becomes of the stragglers depends.

"They're kind of like time travelers," Raupp said. "They've made a time jump, and perhaps they will emerge as a new brood, or join part of an existing brood, either 13 or 17 years down the road."

**What's the life cycle of a cicada?**

Cicadas have one of the longest life cycles of any insect, according to researchers with the Library of Congress. They spend most of their lives underground as wingless juveniles or nymphs, feeding on tree root sap. Once the ground's temperature reaches 64 degrees Fahrenheit at a soil depth of about 8 inches, they emerge as winged adults.

When they initially emerge, they are "very fragile and in danger for hours or even days," the Library of Congress said. When they've matured, they spend two to four weeks flying around, and the males make the buzzing noise so many Americans have become familiar with to attract females.

They mate and then lay their eggs in trees. Four to six weeks after the eggs are laid, they hatch as larvae, travel to the ground, burrow into the soil, and wait 13 or 17 years, per the Library of Congress.

Females die immediately after mating and laying eggs, while males mate until they can't anymore, then die off, John Cooley, an associate professor in residence in the Ecology and Evolutionary Biology department at the University of Connecticut, previously told USA TODAY.

**How to know if cicadas are near**

Raupp, said straggler cicadas will begin to emerge in states such as Louisiana, Mississippi, Kentucky and Ohio once temperatures reach the mid-60s and the soil reaches about 64 degrees Fahrenheit.

People living in these areas may notice excavation first, or small carnivores such as foxes, raccoons, and skunks digging around under old oak or maple trees. These small carnivores can smell the cicada nymphs that are set to emerge from underground. Dogs will dig as well, he said.

People may also see mud turrets, or small towers cicadas build out of mud over the holes they emerge from, Raupp said. They're usually about a half-inch to 2 inches tall.

Those living or exploring areas where straggler cicadas are emerging this year will also notice, in late March or early April, circular holes in the ground.

In such places as New Jersey or New York, stragglers may emerge a few weeks later than in the South.

**How are cicadas beneficial?**

During normal emergence years, cicadas provide predators with lots of food, including birds, foxes, skunks, and raccoons.

"Birds will lay maybe an extra clutch of eggs," he said. "There's going to be higher survival of their offspring because of this bounty of things to eat."

The abundance of cicadas also gives caterpillars a break in that birds are eating cicadas and leaving more caterpillars alone, Raupp said.

People have even found ways to eat cicadas. Indigenous communities in North America historically relied on them as a source of protein.

Cicadas also benefit the environment. As they emerge, they help fertilize plants, and the holes they leave behind allow water to better penetrate the soil, Raupp said. "This is an opportunity to basically have a National Geographic special in your backyard," he said. "You're going to be able to witness an unusual, unique behavior of millions of males singing their hearts out trying to court the mother of their nymphs."

For more information, visit Raupp's blog at www.bugoftheweek.com, or www.cicadamania.com.

## Is Your Retirement Safeguarded against a Failing Dollar?

- **The United States now carries more than $38 Trillion in national debt.**
- **From 2020 to 2025, the dollar's purchasing power fell by about 19.6%.**

**Learn How to Preserve Your Wealth With Physical Gold**

- In 2025, physical gold surged more than 66%, reaching approx. $4,330 per ounce.
- Experts say it could hit $5,000 in the next year as more investors turn to gold for safety.

Preserve your wealth

**Get Your Free Gold Guide!**

GOLD

✓ Simple to Understand
✓ No Pressure Call
✓ Education Focused

*"Gold is the only commodity that has held a steady value against inflation over the centuries."* - Ronald Reagan



REAGAN GOLD GROUP

**CALL TODAY!**
**213-833-9055**

LEGAL NOTICE

**If you reside in California and purchased certain dog Cosequin® Products for personal use between May 3, 2016, and May 6, 2022, you may be eligible to receive benefits from a class action Settlement.**

*A Court authorized this Notice. This is not a solicitation from a lawyer.*

A $11.5 million settlement has been reached in a class action lawsuit against Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. (together, "Defendants"). The lawsuit alleges Defendants misrepresented the benefits and effectiveness of certain canine supplements branded under the name Cosequin® both in advertising and packaging. Defendants deny all allegations of fault, wrongdoing, or liability made by the Plaintiffs. There has been no determination of wrongdoing by the Court.

The purpose of this Notice is to provide information about this Settlement and explain your rights and options.

**Who is Included?** The Class is defined as all persons residing in California who purchased the following canine Cosequin® Products for personal use: Cosequin® DS Maximum Strength Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Chewable Tablets; Cosequin® Maximum Strength Plus MSM Chewable Tablets; Cosequin® with MSM Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Soft Chews; Cosequin® Maximum Strength Plus MSM Soft Chews; and Cosequin® with MSM Soft Chews between May 3, 2016 and May 6, 2022. "Products for personal use" means products purchased for household use by an animal or pet, and not for resale or other business purpose.

**What Does the Settlement Provide?** If you are a Class Member, you can submit a Claim Form at www.CosequinCASettlement.com or by mail postmarked by **July 21, 2026,** to be eligible for a Settlement Payment of up to $25 per unit of Cosequin® Products purchased between May 3, 2016, and May 6, 2022, up to a maximum of $150. **Each Household is limited to and may only submit one single Claim Form.** For purposes of the Settlement, Household is defined as all persons living at the same physical address.

The $11.5 million settlement fund shall be used to meet the monetary obligations to Class Members, pay all settlement payments thereto, service awards, and the Fee and Expense Award ordered by the Court after submission of the Fee and Expense Application by Class Counsel. If the total amount of Valid Claims is more than what remains of the Settlement Fund after removing the attorneys' Fee and Expense Award and service awards, then the Settlement Payment for each Class Member will be reduced on a pro rata (a legal term meaning equal) basis.

More information is available in the Settlement Agreement or the Long Form Notice available at the website.

**Other Options.** If you do not want to be legally bound by the Settlement, you must submit an opt-out **postmarked** by **June 22, 2026.** If you do not opt-out, you will give up the right to sue and will release the Defendants and Released Parties about the legal claims in this lawsuit. If you do not opt-out, you may object to the Settlement and/or the attorneys' Fee and Expense Award and service awards by **June 22, 2026.** The Long Form Notice on the Settlement Website explains how to opt-out or object. If you do nothing, you will get no Settlement Payment, and you will be bound by the Settlement and any judgments and orders. The Court will hold a Fairness Hearing on **August 13, 2026,** to consider whether to approve the Settlement, Class Counsel's attorneys' fees of up to 33% of the Settlement Fund and costs, and any objections. You or your lawyer may attend and ask to appear at the hearing if you object, but you are not required to do so.

**This notice is a summary.** Learn more about the Settlement at www.CosequinCASettlement.com or call toll free 1-888-899-7783.

# Just Curious

*You've got questions? We've got answers.*



**Learn more**
Scan the QR code to find more Just Curious content.

# Wearing a hat doesn't bring on baldness

**Nicole Fallert**
USA TODAY

If you're someone who regularly wears a head covering, there can be that nagging question: Is this causing my hair to fall out?

That is a worry for many, whether they wear a head scarf or a baseball cap. And while treatments for hair loss abound, knowing the best solution for your body can be a tough decision among supplements, surgeries and wellness trends. Hair loss is extremely common – androgenetic alopecia, the most common type of hair loss, affects more than 50 million men and 30 million women in the United States.

Here's what to know about what causes hair loss and what you can do about it.

**There's more to issue than hats**

A head covering alone doesn't cause baldness, according to Dr. Mansha Sethi, a board-certified dermatologist at Pennsylvania's St. Luke's University Health Network. Most of the time, the source of hair loss comes from within our bodies, and hair loss is a signal of that condition.

"Wearing a cap is not considered a huge factor in hair loss," Sethi said. "We just advise against caps that are tight or cause traction on the scalp."

Our hair grows in a three-phase cycle, according to NYU Langone Health, and naturally in that cycle we lose between 50 and 100 hair follicles a day.

A number of health factors can disrupt this process, though, causing hair growth to stall or limit.

It could be hereditary, as with androgenetic alopecia, or caused by thyroid imbalance, child birth or surgery. A vitamin or mineral deficiency also could be a contributor, causing hair to enter a



Wearing a hat does not alone cause people to lose their hair.
STEVANOVICIGOR/GETTY IMAGES

"resting phase" and not replenish, NYU says. There also is the hair loss that's the side effect of medical treatment such as chemotherapy. Autoimmune conditions, such as alopecia areata, also factor into hair thinning by causing the immune system to attack hair follicles and drive hair loss, according to the National Institutes of Health.

"Genetics play a role specifically in age of onset and pattern of hair loss," Sethi said. "Both maternal and paternal genetics are involved. Sensitivity of the hair follicles to the hormone dihydrotestosterone (DHT) determines scalp areas affected. For most men, the front and top of scalp are the two most involved regions. Since DHT is produced from testosterone, high testosterone levels can exacerbate hair loss."

Other factors that can cause hair loss

are low iron, low vitamin D, low protein intake, thyroid disease, rapid weight loss (for instance with meds such as Ozempic), severe illness and high chronic stress, she said.

Hair loss also could be because of infection. Scalp ringworm, or tinea capitis, forms a rash and makes it impossible for hair to grow in affected patches of skin.

While your hat isn't to blame, some fashions can exacerbate loss. Extremely tight ponytails or other styles, heavy tracks of hair extensions, weaves and cosmetic heat treatments that pull on our hair also can contribute, according to American Academy of Dermatology Association.

**Sometimes hair can grow back**

Can hair loss be reversed? "Yes, if it is not too advanced and has not led to scarring of the hair follicles," Sethi said. "Hair loss is best treated in its early stages."

Your ability to reverse hair loss is largely determined by what's at the root cause of losing your hair, according to Harvard Health. Sometimes hair loss stops on its own, especially if it is stress related or due to a hormonal imbalance. For postpartum people, pregnancy-related hair loss also subsides typically within a few months after giving birth, according to the Cleveland Clinic. Talk to your doctor about your hair loss, and they may be able to help you find the internal source.

"Finding the cause of the hair loss is the first step so treatment can be targeted," Sethi said. "My phone is inundated with hair loss solutions, some often too good to be true, so it is important to do your research, talk to a hair loss specialist and not waste your money on useless products."

FDA-approved minoxidil, topical

drugs, supplements, oral medications or hair transplant surgery are options for pattern baldness or genetic hairloss, but remember that as with any medications, these can come with side effects. Certain supplements such as saw palmetto, ashwagandha and pumpkin seed oil also can help, she said.

Minoxidil 5% foam is one of the most recommended nonprescription options and a good starting point, Sethi said.

"Talking to your dermatologist prior to starting any of this is crucial to make sure there are no interactions with your other meds," Sethi said.

There also are costs associated with these solutions. Hair transplant surgery to address baldness typically costs between $5,000 and $15,000 depending on number of grafts needed, and it involves repeat consultations and adjustments, Sethi said. Hair loss drugs such as finasteride or minoxidil typically are not covered by insurance, according to the Mayo Clinic, further adding to ongoing costs of upkeep. Whether you want to reverse hair loss may be a question of whether you can afford to keep up the maintenance.

"If you see a dermatologist for hair loss, make sure you tell them all medications and supplements you're on," Sethi said. "A complete medical and family history can help determine the cause."

**Hair loss is not necessarily bad**

There's nothing wrong with being bald. In fact, recent trends include "baldmaxxing" – choosing to embrace hair loss rather than endlessly trying to hide or manage it – and there's a whole movement of people behind it. Many baldness supporters share the psychological process of balding as much as the physical side, and help one another embrace vulnerability and reframe baldness as a strength.



EMPIRE TODAY
CARPET & FLOORING

GET FLOORS NOW PAY OVER TIME*

LIMTED TIME!

75% OFF*

CARPET & FLOORING

Product Only.
Select Styles.

**Schedule a FREE In-Home Estimate!**
Call **888-910-3137**
Visit **EmpireToday.com/newspaper**

* Discount is applied to the regular price of select styles of carpet, hardwood, tile, vinyl, and laminate when you pay regular price for installation, padding and materials. Excludes stairs, miscellaneous charges, and prior purchases. Product may not be sold separately from installation. Residential installations only. **Not available in all areas.** Valid 02/24/2026 through 04/06/2026. Subject to change.
◊ With approved credit. Details at EmpireToday.com/financing.
Installation provided by independent contractors. Licensure at EmpireToday.com. CSLB 1047708    © 2026 Empire Today, LLC

LEGAL NOTICE

**If you reside in California and purchased certain dog Cosequin® Products for personal use between May 3, 2016, and May 6, 2022, you may be eligible to receive benefits from a class action Settlement.**

*A Court authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

A $11.5 million settlement has been reached in a class action lawsuit against Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. (together, "Defendants"). The lawsuit alleges Defendants misrepresented the benefits and effectiveness of certain canine supplements branded under the name Cosequin® both in advertising and packaging. Defendants deny all allegations of fault, wrongdoing, or liability made by the Plaintiffs. There has been no determination of wrongdoing by the Court.

The purpose of this Notice is to provide information about this Settlement and explain your rights and options.

**Who is Included?** The Class is defined as all persons residing in California who purchased the following canine Cosequin® Products for personal use: Cosequin® DS Maximum Strength Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Chewable Tablets; Cosequin® Maximum Strength Plus MSM Chewable Tablets; Cosequin® with MSM Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Soft Chews; Cosequin® Maximum Strength Plus MSM Soft Chews; and Cosequin® with MSM Soft Chews between May 3, 2016 and May 6, 2022. "Products for personal use" means products purchased for household use by an animal or pet, and not for resale or other business purpose.

**What Does the Settlement Provide?** If you are a Class Member, you can submit a Claim Form at www.CosequinCASettlement.com or by mail postmarked by **July 21, 2026,** to be eligible for a Settlement Payment of up to $25 per unit of Cosequin® Products purchased between May 3, 2016, and May 6, 2022, up to a maximum of $150. **Each Household is limited to and may only submit one single Claim Form.** For purposes of the Settlement, Household is defined as all persons living at the same physical address.

The $11.5 million settlement fund shall be used to meet the monetary obligations to Class Members, pay all settlement payments thereto, service awards, and the Fee and Expense Award ordered by the Court after submission of the Fee and Expense Application by Class Counsel. If the total amount of Valid Claims is more than what remains of the Settlement Fund after removing the attorneys' Fee and Expense Award and service awards, then the Settlement Payment for each Class Member will be reduced on a pro rata (a legal term meaning equal) basis.

More information is available in the Settlement Agreement or the Long Form Notice available at the website.

**Other Options.** If you do not want to be legally bound by the Settlement, you must submit an opt-out **postmarked** by **June 22, 2026.** If you do not opt-out, you will give up the right to sue and will release the Defendants and Released Parties about the legal claims in this lawsuit. If you do not opt-out, you may object to the Settlement and/or the attorneys' Fee and Expense Award and service awards by **June 22, 2026.** The Long Form Notice on the Settlement Website explains how to opt-out or object. If you do nothing, you will get no Settlement Payment, and you will be bound by the Settlement and any judgments and orders. The Court will hold a Fairness Hearing on **August 13, 2026,** to consider whether to approve the Settlement, Class Counsel's attorneys' fees of up to 33% of the Settlement Fund and costs, and any objections. You or your lawyer may attend and ask to appear at the hearing if you object, but you are not required to do so.

**This notice is a summary.** Learn more about the Settlement at www.CosequinCASettlement.com or call toll free 1-888-899-7783.

# Just Curious

*You've got questions? We've got answers.*



**Learn more**
Scan the QR code to find more Just Curious content.

# Don't sleep on cleaning linens for better rest

**Daryl Austin**
USA TODAY

For better sleep, many of us turn to sleep-tracking apps, therapeutic techniques or medications and such supplements as sleeping pills or melatonin. But sometimes the solution comes down to nothing more than optimizing a sleep environment that helps you fall asleep faster and stay asleep longer. Such an environment typically includes a cool, quiet bedroom, blackout curtains and a sound machine to mask disruptive noise. Yet one of the most overlooked elements of that environment is something far more basic: clean, comfortable bedding.

Beyond improving sleep quality, fresh bedding also can influence overall health. "Routine washing removes common bedding irritants that accumulate such as dust mites, sweat, skin oils, pet dander, pollen and even bedbugs and fungi, which keeps your sleep environment healthy and helps your sleep be more restorative and less interrupted," says Raj Dasgupta, a pulmonary and sleep specialist at Huntington Memorial Hospital in California.

Here's what other benefits clean bedding can bring, plus how often bedding should be washed and how to do so more effectively.

**Do you sleep better
with clean bedding?**

The quality of your bedding can influence sleep in several subtle but important ways. One of the most immediate is comfort: Sheets that are soft, breathable and clean help regulate body temperature throughout the night. This matters because "our bodies naturally drop in core temperature at night, so a cooler room and breathable bedding support that biological process," says



We all know sleep is crucial for overall health. But how often should you wash your bedding?
GEORGERUDY/GETTY IMAGES

Wendy Troxel, a senior behavioral sleep scientist at the RAND Corp. Conversely, bedding that traps heat or moisture may cause overheating or chills, making it harder to remain in deeper stages of sleep.

Dirty bedding also can introduce allergens and irritants that disrupt sleep, Troxel says, either by interfering with breathing or causing itchy skin. That's because, over time, sheets and pillowcases accumulate dust mites, pet dander, pollen, skin oils and microscopic debris – irritants that can inflame airways and sinuses and make breathing less comfortable and sleep less restorative.

Even the texture of bedding can influence sleep continuity. "Scratchy, stiff or allergen-filled sheets can cause micro-awakenings that fragment sleep without fully waking you," Dasgupta says. And while you may not remember these awakenings, they still reduce the amount of time spent in deeper, restorative sleep stages.

There also is a psychological benefit. "Clean sheets help signal to your brain that it's time to relax, which improves how quickly and deeply you fall asleep," Dasgupta says. Indeed, research on

sleep hygiene consistently shows that environments associated with comfort help people fall asleep more quickly and stay asleep longer.

**How often should
bedding be washed?**

Troxel recommends washing most bedding on a regular schedule to prevent the buildup of sweat, oils, allergens and microorganisms, though the exact frequency differs depending on the type of bedding and sleeping habits.

Sheets and pillowcases "should typically be washed every one to two weeks to remove sweat, oils, skin cells and bacteria," Dasgupta says. That's because these substances accumulate quickly in bedding and create an ideal environment for dust mites and other irritants.

Blankets, comforters and duvet covers usually require less frequent washing because they do not come into direct contact with skin as often. "Usually once every one to three months suffices," Dasgupta says. That said, households with pets, allergies or frequent nighttime sweating may benefit from washing such bedding more often.

Pillows also require occasional cleaning. While pillowcases are washed weekly or every other week, the pillows themselves can be cleaned less frequently but still need to be washed periodically. They should be "washed every three to six months if machine-washable or replaced every one to two years," Dasgupta says. That's because, even with pillowcases protecting them, pillows can accumulate dust mites, oils and moisture over time.

**How should you wash bedding?
Can you wash pillows
in the washing machine?**

Along with proper frequency, proper

washing techniques help remove allergens and bacteria without damaging fabrics. In most cases, it's best to "use hot water of at least 130°F (54°C) for sheets and pillowcases to kill dust mites and bacteria," Dasgupta says, though duvet covers can often be washed in warm water. And most bedding can be washed with standard laundry detergent and in standard washing machines, but it's still important to check care labels, because delicate fabrics or specialty linens may require cooler temperatures or gentler cleaning agents or washing cycles.

Drying bedding thoroughly is also important. "Fully dry bedding in a hot dryer or in sunlight," Dasgupta says, "because moisture trapped in fabrics can promote the growth of mold and mildew."

Many pillows can be washed in a washing machine, especially synthetic or polyester-filled varieties. And washing two pillows at a time can help balance the machine and allow them to clean more evenly. Troxel recommends using warm water and a gentle cycle, then drying them thoroughly on low heat. Doing so with a few clean dryer balls or tennis balls can help restore fluffiness. Memory foam pillows, however, typically cannot be machine-washed and instead require spot cleaning and airing, Dasgupta says.

And he advises against using fabric softeners on moisture-wicking fabrics such as bamboo, microfiber and or athletic-style cooling sheets, because such products "can impact how materials absorb sweat."

Ultimately, while keeping bedding clean may feel like an unwanted chore, it can meaningfully support sleep quality and overall health. "When your bedroom and bedding is tidy and well cared for," Troxel says, "it signals safety and relaxation to the brain."



**addressUSA**

# The market won't wait. And neither should you.

Buying or selling?
Don't wait—make your move now.

📍 *My dream home...*

🔍 *Help me sell fast...*

**Know your home's value.**
Then make your move.

Discover more at addressUSA.com

Scan for a free home valuation and plan your next step



LEGAL NOTICE

**If you reside in California and purchased certain dog Cosequin® Products for personal use between May 3, 2016, and May 6, 2022, you may be eligible to receive benefits from a class action Settlement.**

*A Court authorized this Notice. This is not a solicitation from a lawyer.*

A $11.5 million settlement has been reached in a class action lawsuit against Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. (together, "Defendants"). The lawsuit alleges Defendants misrepresented the benefits and effectiveness of certain canine supplements branded under the name Cosequin® both in advertising and packaging. Defendants deny all allegations of fault, wrongdoing, or liability made by the Plaintiffs. There has been no determination of wrongdoing by the Court.

The purpose of this Notice is to provide information about this Settlement and explain your rights and options.

**Who is Included?** The Class is defined as all persons residing in California who purchased the following canine Cosequin® Products for personal use: Cosequin® DS Maximum Strength Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Chewable Tablets; Cosequin® Maximum Strength Plus MSM Chewable Tablets; Cosequin® with MSM Chewable Tablets; Cosequin® DS Maximum Strength Plus MSM Soft Chews; Cosequin® Maximum Strength Plus MSM Soft Chews; and Cosequin® with MSM Soft Chews between May 3, 2016 and May 6, 2022. "Products for personal use" means products purchased for household use by an animal or pet, and not for resale or other business purpose.

**What Does the Settlement Provide?** If you are a Class Member, you can submit a Claim Form at www.CosequinCASettlement.com or by mail postmarked by **July 21, 2026,** to be eligible for a Settlement Payment of up to $25 per unit of Cosequin® Products purchased between May 3, 2016, and May 6, 2022, up to a maximum of $150. **Each Household is limited to and may only submit one single Claim Form.** For purposes of the Settlement, Household is defined as all persons living at the same physical address.

The $11.5 million settlement fund shall be used to meet the monetary obligations to Class Members, pay all settlement payments thereto, service awards, and the Fee and Expense Award ordered by the Court after submission of the Fee and Expense Application by Class Counsel. If the total amount of Valid Claims is more than what remains of the Settlement Fund after removing the attorneys' Fee and Expense Award and service awards, then the Settlement Payment for each Class Member will be reduced on a pro rata (a legal term meaning equal) basis.

More information is available in the Settlement Agreement or the Long Form Notice available at the website.

**Other Options.** If you do not want to be legally bound by the Settlement, you must submit an opt-out **postmarked** by **June 22, 2026.** If you do not opt-out, you will give up the right to sue and will release the Defendants and Released Parties about the legal claims in this lawsuit. If you do not opt-out, you may object to the Settlement and/or the attorneys' Fee and Expense Award and service awards by **June 22, 2026.** The Long Form Notice on the Settlement Website explains how to opt-out or object. If you do nothing, you will get no Settlement Payment, and you will be bound by the Settlement and any judgments and orders. The Court will hold a Fairness Hearing on **August 13, 2026,** to consider whether to approve the Settlement, Class Counsel's attorneys' fees of up to 33% of the Settlement Fund and costs, and any objections. You or your lawyer may attend and ask to appear at the hearing if you object, but you are not required to do so.

**This notice is a summary.** Learn more about the Settlement at www.CosequinCASettlement.com or call toll free 1-888-899-7783.