Adam A. Edwards (*pro hac vice*)
aedwards@milberg.com
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

Daniel L. Warshaw
dwarshaw@pwfirm.com
PEARSON WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

[Additional Counsel Listed
on Signature Page]

*Attorneys for Plaintiffs
and the Certified Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN LYTLE and CHRISTINE MUSTHALER,<br><br>     Plaintiffs,<br><br>vs.<br><br>NUTRAMAX LABORATORIES, INC. and NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC.,<br><br>    Defendants. | Case No. 5:19-cv-00835-FMO-SP<br><br>Assigned to: Hon. Fernando M. Olguin<br><br>**PLAINTIFFS' UNOPPOSED APPLICATION FOR LEAVE TO FILE UNDER SEAL PORTIONS OF THE DECLARATION OF STEPHANIE AMIN-GIWNER REGARDING SETTLEMENT ADMINISTRATION** |

PLAINTIFFS' UNOPPOSED APPLICATION FOR LEAVE TO FILE UNDER SEAL PORTIONS OF THE DECLARATION OF STEPHANIE AMIN-GIWNER REGARDING SETTLEMENT ADMINISTRATION

Pursuant to Civil Local Rules 5.2 and 79-5, the Stipulated Protective Order entered in this case on January 2, 2020 (ECF. No. 65), and Federal Rule of Civil Procedure 26(c), Plaintiffs Justin Lytle and Christine Musthaler ("Plaintiffs") submit this Unopposed Application for Leave to File Under Seal the Declaration of Stephanie Amin-Giwner Regarding Settlement Administration. This Application is accompanied by a proposed order.

## I.    INTRODUCTION

In their Motion for Final Approval, Plaintiffs indicated that they would provide a supplement prior to the Final Approval Hearing of the status of Epiq Class Action and Claims Solution, Inc.'s ("Epiq") fraud review of all submitted claims. *See* ECF No. 220, at 2 n.3. Accordingly, Plaintiffs now provide the Declaration of Stephanie Amin-Giwner ("Declaration") for the Court's consideration. This declaration is submitted to provide a more in-depth reporting to the Court of Epiq's detailed fraud analysis beyond what was previously provided in the Declaration of Carmon R. Azari, Esq. Regarding Implementation and Adequacy of Notice Plan executed on July 13, 2026 (the "Azari" Declaration").

Plaintiffs request that this Declaration be filed under seal to protect the integrity of Epiq's fraud detection protocols. Disclosure would reveal the specific techniques, indicators, and thresholds Epiq uses to identify fraudulent activity — information that, if made public, could be used by bad actors to evade these safeguards and undermine the integrity of the claims process. In addition, these materials reflect Epiq's proprietary and confidential work product, developed and refined over years of claims administration experience.

## II.    ARGUMENT

Although there is a strong presumption in favor of public access to judicial records, that presumption is not absolute. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006). Where the material a party seeks to seal is filed in connection with a motion that is more than tangentially related to the merits

- 1 -

of a case, the movant must demonstrate "'a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture.'" *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1096–97 (9th Cir. 2016) (quoting *Kamakana*, 447 F.3d at 1179). Where the underlying filing is only tangentially related to the merits, a "particularized showing" of good cause under Rule 26(c) suffices. *Kamakana*, 447 F.3d at 1180.

"In general, compelling reasons sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Bruce v. Azar*, 389 F. Supp. 3d 716, 727 (N.D. Cal. 2019), *aff'd*, 826 F. App'x 643 (9th Cir. 2020) (quoting *Kamakana*, 447 F.3d at 1179) (internal quotations omitted). The Court must ground its ruling in articulable facts rather than "hypothesis or conjecture," *Id.* and the request must be narrowly tailored to seal only sealable material, C.D. Cal. L.R. 79-5.2.2(a)(ii). Plaintiffs assert that the claims administration process should be analyzed according to the "good cause" standard, because it is not related to the merits of the case, but nevertheless address the compelling reasons standard because it is the more demanding of the two. Should the Court conclude that the Declaration is only tangentially related to the merits, the showing below satisfies the good cause standard.

**A. Compelling Reasons Justify Sealing the Fraud-Detection Portions of the Declaration**

    **i.    Public disclosure would supply a roadmap for evading the very safeguards designed to protect the Class.**

The Declaration describes, in operational detail, the specific techniques, indicators, and quantitative thresholds Epiq applies to identify and reject fraudulent claims. These are not general descriptions of quality-control practices; they are the working mechanics of the safeguard itself. If disclosed publicly, they would inform

bad actors precisely which patterns are flagged, which data points are cross-referenced, and at what point suspicious activity crosses a detection threshold— and, correspondingly, how to structure fraudulent submissions to avoid detection. The harm is neither speculative nor abstract. Fraudulent claim submissions in class action settlements have increased dramatically in recent years, with administrators reporting settlements in which a substantial share of claims were determined to be fraudulent. Every fraudulent claim that evades detection dilutes the recovery of legitimate Class members and diminishes the value of the relief this Court is asked to approve. Sealing therefore serves—rather than defeats—the interests the presumption of access exists to protect: the integrity of the judicial process and the Court's ability to ensure that settlement proceeds reach the people entitled to them. Fed. R. Civ. P. 23(e)(2); Fed. R. Civ. P. 23(d)(1)(A), (E).

Courts routinely find these concerns sufficient to warrant sealing. In *Bungie, Inc. v. Bansal*, the court sealed a declaration in its entirety because it disclosed non-public information concerning the software for developing a video game, and could allow for the creations for "cheats" of the game, as well as give competitors an unfair competitive advantage. *Bungie, Inc. v. Bansal*, No. 2:21-CV-01111-TL, 2023 WL 3292510, at *1 (W.D. Wash. May 5, 2023). Courts have protected information describing an institution's investigative procedures on the grounds that disclosure would create a security risk. *See, e.g., Purcell v. Gilead Scis., Inc.,* 415 F. Supp. 3d 569, 577-78 (E.D. Pa. 2019) (sealing government investigative procedures because disclosure could jeopardize ongoing investigations and injure non-parties). The rationale applies with full force here: a detection protocol that is publicly catalogued is a detection protocol that no longer works. Critically, this is exactly the circumstance in which the public record "might have become a vehicle for improper purposes." *Bruce*, 389 F. Supp. 3d at 727. Unsealed, the Declaration would function as a compliance manual for claim fraud, aimed at this settlement and every future settlement Epiq administers.

CASE NO. 5:19-CV-00835-FMO-SP

### ii.    The materials are Epiq's trade secrets and proprietary confidential work product.

Independently, the fraud-detection protocols described in the Declaration qualify as trade secrets. A trade secret "may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Burten v. Milton Bradley Co.*, 763 F.2d 461, 463 (1st Cir. 1985) (quoting *J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc.*, 357 Mass. 728, 736–737, 260 N.E.2d 723 (1970)); *see In re Electronic Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (granting mandamus and directing that trade-secret exhibit be sealed). Epiq's protocols were developed and refined over years of administering claims across hundreds of settlements, are maintained in confidence, are not publicly known or readily ascertainable, and give Epiq a competitive advantage in a market in which fraud-mitigation capability is a principal basis on which administrators compete. Public disclosure would hand that investment to competitors at no cost while simultaneously destroying its value to Epiq. That is precisely the "harm [to] a litigant's competitive standing" the Ninth Circuit recognizes as a compelling reason. *Center for Auto Safety*, 809 F.3d at 1097.

Epiq's interest as a non-party weighs in favor of sealing. Epiq is an administrator that has no stake in the merits and submitted this information solely to assist the Court in evaluating the administration of the settlement. Requiring it to disclose its proprietary methods as the price of that assistance would discourage the candor courts depend on from administrators in discharging their Rule 23(e) obligations.

### iii.    No countervailing public interest is served by disclosure.

The public's interest here lies in understanding how the claims process was administered, what fraud was detected, and how it affected the distribution—not in the internal mechanics by which Epiq made those determinations. Plaintiffs have

already provided a more general understanding of this process in Azari Declaration, and in the unredacted portions in the instant Declaration, and only request to seal those portions with much more specific fraud protocols. The public and the Class thus retain every piece of information needed to evaluate the fairness and administration of the settlement. What is withheld is the operational detail whose only marginal value to the public is the value it would have to those seeking to defeat it.

**B. The request is narrowly tailored.**

Consistent with L.R. 79-5.2.2(a)(ii)–(iv), Plaintiffs do not seek to seal the Declaration in full. Plaintiffs seek to seal only portions of paragraphs 9 and 10, and paragraphs 11-25, which contain the specific detection techniques, fraud indicators, and thresholds described above, and have submitted a proposed order listing each portion in table form, a conspicuously labeled redacted version, and an unredacted version with the proposed redactions highlighted. Every other portion of the declaration—including the administrator's qualifications, the notice program, claim volumes, and other information that does not implicate the fraud-detection process—will be filed on the public docket.

III.   **CONCLUSION**

Because public disclosure of Epiq's fraud-detection protocols would enable circumvention of safeguards that exist to protect the Class, and because those protocols are Epiq's trade secrets and proprietary confidential information, compelling reasons overcome the presumption of public access as to the Declaration. Plaintiffs respectfully request that the Court grant leave to file the Declaration under seal.

Respectfully submitted,

Dated: August 6, 2026

/s/ *Matthew D. Schultz*
Matthew D. Schultz (*pro hac vice*)
mschultz@levinlaw.com
**LEVIN PAPANTONIO**
316 S. Baylen St., Suite 600

- 5 -

CASE NO. 5:19-CV-00835-FMO-SP

Pensacola, FL 32502
Telephone: (850) 435-7140
Facsimile: (850) 436-6140

Adam A. Edwards (*pro hac vice*)
aedwards@milberg.com
**MILBERG COLEMAN BRYSON
   PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

Daniel L. Warshaw
dwarshaw@pwfirm.com
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

*Attorneys for Plaintiffs
and the Certified Class*

CASE NO. 5:19-CV-00835-FMO-SP

## CERTIFICATE OF SERVICE

I, Matthew D. Schultz, hereby certify that on August 6, 2026, I caused a true and correct copy of the foregoing Plaintiffs' Unopposed Application for Leave to File Under Seal the Declaration of Stephanie Amin-Giwner Regarding Settlement Administration to be served upon the following by electronic mail:

Kathy J. Huang (SBN 240677) (kathy.huang@alston.com)
John E. Stephenson, Jr. (john.stephenson@alston.com)
Scott A. Elder (scott.elder@alston.com)
Jason D. Rosenberg (jason.rosenberg@alston.com)
Jenny A. Hergenrother (jenny.hergenrother@alston.com)
Alan F. Pryor (alan.pryor@alston.com)
Kara L. McCall (kara.mccall@alston.com)
Joshua A. Glikin (jglikin@shulmanrogers.com)

*Attorneys for Defendants*

/s/ *Matthew D. Schultz*
Matthew D. Schultz

*Attorney for Plaintiffs*
*and the Certified Class*

- 7 -                    CASE NO. 5:19-CV-00835-FMO-SP