Adam A. Edwards (*pro hac vice*)
aedwards@milberg.com
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

Daniel L. Warshaw
dwarshaw@pwfirm.com
PEARSON WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

[Additional Counsel Listed
on Signature Page]

*Attorneys for Plaintiffs*
*and the Certified Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JUSTIN LYTLE and CHRISTINE MUSTHALER,

Plaintiffs,

vs.

NUTRAMAX LABORATORIES, INC. and NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC.,

Defendants.

Case No. 5:19-cv-00835-FMO-SP

Assigned to: Hon. Fernando M. Olguin

**PLAINTIFFS' UNOPPOSED APPLICATION FOR LEAVE TO FILE UNDER SEAL PORTIONS OF THE SUPPLEMENTAL DECLARATION OF STEPHANIE AMIN-GIWNER REGARDING SETTLEMENT ADMINISTRATION**

Pursuant to Civil Local Rules 5.2 and 79-5, the Stipulated Protective Order entered in this case on January 2, 2020 (ECF. No. 65), and Federal Rule of Civil Procedure 26(c), Plaintiffs Justin Lytle and Christine Musthaler ("Plaintiffs") submit this Unopposed Application for Leave to File Under Seal the Supplemental Declaration of Stephanie Amin-Giwner Regarding Settlement Administration. This Application is accompanied by a proposed order.

## I. INTRODUCTION

In their Motion for Final Approval, Plaintiffs indicated that they would provide a supplement prior to the Final Approval Hearing of the status of Epiq Class Action and Claims Solution, Inc.'s ("Epiq") fraud review of all submitted claims. *See* ECF No. 220, at 2 n.3. Accordingly, Plaintiffs provided the Declaration of Stephanie Amin-Giwner (" First Amin-Giwner Declaration") for the Court's consideration, and now submit this Supplemental Declaration Stephanie Amin-Giwner ("Declaration") to further explain Epiq's fraud analysis of the submitted claims. This Declaration is submitted to provide a more detailed and specific report to the Court of Epiq's fraud analysis and determinations beyond what was previously provided in the Declaration of Carmon R. Azari, Esq. Regarding Implementation and Adequacy of Notice Plan executed on July 13, 2026 (the "Azari" Declaration") and the First Amin-Giwner Declaration.

Plaintiffs request that this Declaration be filed under seal just like the First Amin-Giwner Declaration to protect the integrity of Epiq's fraud detection protocols. This Court granted Plaintiffs' motion to seal previously for the same purpose. *See* ECF 224. Disclosure would reveal the specific techniques, indicators, and thresholds Epiq uses to identify fraudulent activity — information that, if made public, could be used by bad actors to evade these safeguards and undermine the integrity of the claims process. In addition, these materials reflect Epiq's proprietary and confidential work product, developed and refined over years of claims administration experience.

## II. ARGUMENT

Although there is a strong presumption in favor of public access to judicial records, that presumption is not absolute. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006). Where the material a party seeks to seal is filed in connection with a motion that is more than tangentially related to the merits of a case, the movant must demonstrate "'a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture.'" *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1096–97 (9th Cir. 2016) (quoting *Kamakana*, 447 F.3d at 1179). Where the underlying filing is only tangentially related to the merits, a "particularized showing" of good cause under Rule 26(c) suffices. *Kamakana*, 447 F.3d at 1180.

"In general, compelling reasons sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Bruce v. Azar*, 389 F. Supp. 3d 716, 727 (N.D. Cal. 2019), *aff'd*, 826 F. App'x 643 (9th Cir. 2020) (quoting *Kamakana*, 447 F.3d at 1179) (internal quotations omitted). The Court must ground its ruling in articulable facts rather than "hypothesis or conjecture," *Id.* and the request must be narrowly tailored to seal only sealable material, C.D. Cal. L.R. 79-5.2.2(a)(ii). Plaintiffs assert that the claims administration process should be analyzed according to the "good cause" standard, because it is not related to the merits of the case, but nevertheless address the compelling reasons standard because it is the more demanding of the two. Should the Court conclude that the Declaration is only tangentially related to the merits, the showing below satisfies the good cause standard.

### A. Compelling Reasons Justify Sealing the Fraud-Detection Portions of the Declaration

**i. Public disclosure would supply a roadmap for evading the very safeguards designed to protect the Class.**

This Declaration, just like the First Amin-Giwner Declaration, describes, in operational detail, the specific techniques, indicators, and quantitative thresholds Epiq applies to identify and reject fraudulent claims, but this time as specifically applied to the instant matter. These are not general descriptions of quality-control practices; they are the working mechanics of the safeguard itself. If disclosed publicly, they would inform bad actors precisely which patterns are flagged, which data points are cross-referenced, and at what point suspicious activity crosses a detection threshold— and, correspondingly, how to structure fraudulent submissions to avoid detection. The harm is neither speculative nor abstract. Fraudulent claim submissions in class action settlements have increased dramatically in recent years, with administrators reporting settlements in which a substantial share of claims were determined to be fraudulent. Every fraudulent claim that evades detection dilutes the recovery of legitimate Class members and diminishes the value of the relief this Court is asked to approve. Sealing therefore serves—rather than defeats—the interests the presumption of access exists to protect: the integrity of the judicial process and the Court's ability to ensure that settlement proceeds reach the people entitled to them. Fed. R. Civ. P. 23(e)(2); Fed. R. Civ. P. 23(d)(1)(A), (E).

This Court sealed the First Amin-Giwner Declaration on the same basis, and so do other courts. See ECF 224 (granting motion to seal for the Declaration of Amin-Giwner; *see also Bungie, Inc. v. Bansal*, No. 2:21-CV-01111-TL, 2023 WL 3292510, at *1 (W.D. Wash. May 5, 2023); *Purcell v. Gilead Scis., Inc.,* 415 F. Supp. 3d 569, 577-78 (E.D. Pa. 2019) (sealing government investigative procedures because disclosure could jeopardize ongoing investigations and injure non-parties). Just as this Court granted Plaintiff's motion to Seal the First Amin-Giwner Declaration, so too should it find this Declaration warrants sealing.

**ii. The materials are Epiq's trade secrets and proprietary confidential work product.**

Independently, the fraud-detection protocols described in the Declaration qualify as trade secrets. A trade secret "may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Burten v. Milton Bradley Co.*, 763 F.2d 461, 463 (1st Cir. 1985) (quoting *J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc.*, 357 Mass. 728, 736–737, 260 N.E.2d 723 (1970)); *see In re Electronic Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (granting mandamus and directing that trade-secret exhibit be sealed). Epiq's protocols were developed and refined over years of administering claims across hundreds of settlements, are maintained in confidence, are not publicly known or readily ascertainable, and give Epiq a competitive advantage in a market in which fraud-mitigation capability is a principal basis on which administrators compete. Public disclosure would hand that investment to competitors at no cost while simultaneously destroying its value to Epiq. That is precisely the "harm [to] a litigant's competitive standing" the Ninth Circuit recognizes as a compelling reason. *Center for Auto Safety*, 809 F.3d at 1097.

Epiq's interest as a non-party weighs in favor of sealing. Epiq is an administrator that has no stake in the merits and submitted this information solely to assist the Court in evaluating the administration of the settlement, as specifically applied to the claims submitted for this matter. Requiring it to disclose its proprietary methods as the price of that assistance would discourage the candor courts depend on from administrators in discharging their Rule 23(e) obligations.

**iii. No countervailing public interest is served by disclosure.**

The public's interest here lies in understanding how the claims process was administered, what fraud was detected, and how it affected the distribution—not in the internal mechanics by which Epiq made those determinations. Plaintiffs have already provided a more general understanding of this process in Azari Declaration,

and in the unredacted portions in the First Amin-Giwner Declaration, and now only request to seal those portions of this Declaration that applies Epiq's Fraud protocols to the submitted claims. The public and the Class thus retain every piece of information needed to evaluate the fairness and administration of the settlement. What is withheld is the operational detail whose only marginal value to the public is the value it would have to those seeking to defeat it.

**B. The request is narrowly tailored.**

Consistent with L.R. 79-5.2.2(a)(ii)–(iv), Plaintiffs do not seek to seal the Declaration in full. Plaintiffs seek to seal only portions of paragraphs 6-9, and paragraphs 10, which contain the specific application of fraud protocols to the submitted claims and how Epiq made its fraud determinations, and have submitted a proposed order listing each portion in table form, a conspicuously labeled redacted version, and an unredacted version with the proposed redactions highlighted. Every other portion of the declaration—all other information that does not implicate the fraud-detection process—will be filed on the public docket.

## III. CONCLUSION

Because public disclosure of Epiq's fraud-detection protocols would enable circumvention of safeguards that exist to protect the Class, and because those protocols are Epiq's trade secrets and proprietary confidential information, compelling reasons overcome the presumption of public access as to the Declaration. Plaintiffs respectfully request that the Court grant leave to file the Declaration under seal.

Respectfully submitted,

Dated: August 28, 2026

/s/ *Matthew D. Schultz*

Matthew D. Schultz (*pro hac vice*)
mschultz@levinlaw.com
**LEVIN PAPANTONIO**
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Telephone: (850) 435-7140

Facsimile: (850) 436-6140

Adam A. Edwards (*pro hac vice*)
aedwards@milberg.com
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

Daniel L. Warshaw
dwarshaw@pwfirm.com
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

*Attorneys for Plaintiffs and the Certified Class*

**CERTIFICATE OF SERVICE**

I, Matthew D. Schultz, hereby certify that on August 28, 2026, I caused a true and correct copy of the foregoing Plaintiffs' Unopposed Application for Leave to File Under Seal the Supplemental Declaration of Stephanie Amin-Giwner Regarding Settlement Administration to be served upon the following by electronic mail:

Kathy J. Huang (SBN 240677) (kathy.huang@alston.com)
John E. Stephenson, Jr. (john.stephenson@alston.com)
Scott A. Elder (scott.elder@alston.com)
Jason D. Rosenberg (jason.rosenberg@alston.com)
Jenny A. Hergenrother (jenny.hergenrother@alston.com)
Alan F. Pryor (alan.pryor@alston.com)
Kara L. McCall (kara.mccall@alston.com)
Joshua A. Glikin (jglikin@shulmanrogers.com)

*Attorneys for Defendants*

/s/ *Matthew D. Schultz*
Matthew D. Schultz

*Attorney for Plaintiffs*
*and the Certified Class*