**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUSTIN LYTLE, et al., Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>NUTRAMAX LABORATORIES, INC., et al.,<br><br>Defendants. | Case No. ED CV 19-00835 FMO (SPx)<br><br>**ORDER RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

Having reviewed and considered all the briefing filed with respect to plaintiffs' Motion for Final Approval of Class Settlement (Dkt. 220, "Motion"), and Motion for Attorneys' Fees, Costs, and Class Representative Service Awards (Dkt. 219, "Fee Motion"), and the oral argument presented during the final fairness hearing held on August 13, 2026, the court concludes as follows.

## BACKGROUND

On October 11, 2019, Justin Lytle ("Lytle") and Christine Musthaler ("Musthaler") (collectively, "plaintiffs"), on behalf of themselves and all others similarly situated, filed the operative Second Amended Complaint ("SAC") against Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. (collectively, "Nutramax" or "defendants"), asserting claims for violations of: (1) California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; and (2) various state consumer protection laws. (See Dkt. 53, SAC at ¶¶ 142-169).

Defendants research, develop, manufacture, and sell supplements for both humans and household pets, including Cosequin canine joint health supplements that contain glucosamine and chondroitin ("Gl/Ch") as the main active ingredient. (See Dkt. 53, SAC at ¶¶ 2, 17). Plaintiffs allege that in marketing Cosequin, defendants "make incomplete and inaccurate claims – both in advertising and on the packaging and packages – that would mislead and have in fact misled reasonable consumers into purchasing, using, and continuing to use [Cosequin] Products." (Id. at ¶ 1). According to plaintiffs, defendants' joint health claims "are refuted by peer-reviewed, randomized, controlled clinical trials[.]" (Id.). Also, defendants' claims that Cosequin products "enhance joint flexibility and mobility and [] support or restore joint health" are unsupported "by any reliable science." (Id. at ¶ 5). Neither plaintiff "saw improvements in their pets" after giving them Cosequin. (Id. at ¶ 128). If not for defendants' misrepresentations, plaintiffs and the putative class members either "would not have bought" Cosequin or were charged a "price premium" above comparable generic products. (Id. at ¶ 123).

On May 6, 2022, the court granted plaintiffs' motion for class certification, (see Dkt. 146, Court's Order of May 6, 2022, at 35), and certified the following class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure[1] with respect to plaintiffs' claim under the CLRA:

> All persons residing in California who purchased during the limitations period the following canine Cosequin products for personal use: Cosequin DS Maximum Strength Chewable Tablets; Cosequin DS Maximum Strength Plus MSM Chewable Tablets; and Cosequin DS Maximum Strength Plus MSM Soft Chews.

(See id.).[2] The court appointed Lytle and Musthaler as class representatives, and Milberg Coleman Bryson Phillips Grossman, PLLC and Levin Papantonio as class counsel. (See id.). Following certification, defendants appealed the court's class certification order pursuant to Rule

---

[1] Unless otherwise indicated, all "Rule" references are to the Federal Rules of Civil Procedure.

[2] The court excluded from the class: defendants; defendants' officers, directors, agents or affiliates; defendants' past and present employees; and the judge who presides over the case. (See Dkt. 146, Court's Order of May 6, 2022, at 36).

23(f). (See Dkt. 220, Motion at 3-4); (Dkt. 147, Order of the Ninth Circuit) (granting petition for permission to appeal). After briefing and oral argument, the Ninth Circuit affirmed the court's order granting class certification.[3] See Lytle v. Nutramax Laboratories, Inc., 114 F.4th 1011 (9th Cir. 2024).

The parties participated in a mediation on April 10, 2025, (see Dkt. 220, Motion at 4), and plaintiffs filed a Notice of Settlement on April 15, 2025. (See Dkt. 196, Notice of Settlement). Pursuant to the settlement, defendants will pay a non-reversionary gross settlement amount of $11.5 million, (see Dkt. 217-1, Exh. A, Agreement at § 2.33), which will be used to pay the class members, the class representatives' service awards, and attorney's fees and costs. (Id. at §§ 2.33, 4.1, 10.1, 10.5). The settlement provides for up to 33.33% of the gross settlement amount in attorney's fees, (id. at § 10.1), and an incentive payment of $7,500 for each plaintiff. (See id. at § 10.5). The settlement administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), will be paid by defendants directly. (See id. at §§ 2.2, 4.1, 6.4). The applicable class period is from May 3, 2016, through May 6, 2022 ("Class Period"). (Id. at §§ 1.2, 2.10).

Class members who timely submit valid claim forms may receive up to $25.00 per unit of Cosequin products purchased during the Class Period, with a maximum recovery of $150 for multiple Cosequin products purchased. (Dkt. 217-1, Exh. A, Agreement at § 5.1.2). Recovery is limited to one claim per household, which is defined as "all persons residing at the same physical address." (Id. at § 5.1.3). Class members may elect to receive their settlement compensation by physical check, electronic check, or direct deposit. (Id. at § 5.1.4). If the amount of valid claims exceeds the amount of the settlement fund, each payment will be reduced pro rata. (See id. at § 5.2). Any such pro rata adjustment will be calculated before settlement funds are distributed. (See id.). In the event there are remaining funds, the Agreement provides that the remaining balance be donated to the proposed cy pres recipient, Valor Service Dogs.[4] (See id. at § 5.3).

---

[3] Defendants also filed a petition for a writ of certiorari, which was denied by the U.S. Supreme Court. (See Dkt. 220-1, Declaration of Adam A. Edwards ("Edwards Decl.") at ¶ 16).

[4] "Valor Service Dogs is a national, non-profit organization that 'helps wounded post-9/11 veterans and first responders regain their independence, return to civilian life, and maintain

In addition, the settlement provides for injunctive relief. (See Dkt. 217-1, Exh. A, Agreement at § 4.6). Under the settlement, defendants agree that they will not include the following statements on future packaging for the Cosequin products: "(1) Mobility, Cartilage and Joint Health Support;" (2) "Supports Mobility for a Healthy Lifestyle;" and (3) "Use Cosequin to help your pet Climb stairs, Rise and Jump!" (Id.). Defendants may use the statement, "Joint Health Supplement" on Cosequin products. (Id.).

On February 2, 2026, the court granted preliminary approval of the settlement, and appointed Epiq as the settlement administrator. (See Dkt. 218, PAO at 13). Epiq implemented the notice program approved by the court. (See Dkt. 220-2, Declaration of Cameron Azari Regarding Implementation of Notice Plan ("Azari Decl.") at ¶¶ 8, 12-28, 37-38); (Dkt. 217-1, Exhs. A-1, A-2, & A-3) (Class Notices). Epiq did not receive any requests for exclusion, (see Dkt. 220-2, Azari Decl. at ¶ 32), and no objections were filed. (See, generally, Dkt.) (no objections received by the court). As of August 27, 2026, Epiq received 1,092,841 claim forms.[5] (See Dkt. 229-1, Supplemental Declaration of Stephanie Amin-Giwner ("Amin-Giwner Supp. Decl.") at ¶ 5). After conducting a detailed fraud analysis, Epiq concluded that there were 88,225 valid claim forms that will proceed to final eligibility review.[6] (See id. at ¶ 8). The number of Cosequin units purchased for which valid claim forms were submitted totals approximately 447,948, resulting in an average settlement value per unit of $17.17, and an average award per claimant of $90.37 based on the average of 5.26 units purchased per claim. (See id. at ¶ 9).

Plaintiffs now seek (1) final approval of the settlement; (2) attorney's fees and costs; and (3) incentive payments for plaintiffs. (See Dkt. 220, Motion at 2); (Dkt. 219, Fee Motion at 2).

---

successful partnerships through the training and placing of mobility assistance and PTSD service dogs.'" (See Dkt. 220-1, Edwards Decl. at ¶ 34).

[5] The deadline for class members to submit a claim form was July 21, 2026. (See Dkt. 220-2, Azari Decl. at ¶ 34); (Dkt. 220, Motion at 6); (Dkt. 217-1, Exh. A, Agreement at § 2.6).

[6] Epiq estimates that there will be approximately 85,099 total valid claims following the final eligibility review. (See Dkt. 229-1, Amin-Giwner Supp. Decl. at ¶ 9).

## LEGAL STANDARD

Federal Rule of Civil Procedure 23[7] provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Courts reviewing class action settlements must ensure that unnamed class members are protected from unjust or unfair settlements affecting their rights, while also accounting for the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." Campbell v. Facebook, Inc., 951 F.3d 1106, 1121 (9th Cir. 2020) (internal quotation and alteration marks omitted). A "district court has a fiduciary duty to look after the interests of . . . absent class members[,]" Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015), and must examine the settlement for "overall fairness[.]" In re Hyundai & Kia Fuel Econ. Litig., 926 F.3d 539, 569 (9th Cir. 2019) (en banc). The court may not "delete, modify or substitute certain provisions." Id. (internal quotation marks omitted). "The settlement must stand or fall in its entirety." Dennis v. Kellogg Co., 697 F.3d 858, 868 (9th Cir. 2012) (internal quotation marks omitted).

Approval of a class action settlement requires the court to conduct a two-step inquiry.[8] First, the court must determine whether the notice requirements of Rule 23(c)(2)(B) have been satisfied. Second, it must conduct a hearing to determine whether the settlement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2). In determining whether a settlement is fair, reasonable, and adequate, the court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing

---

[7] All further "Rule" references are to the Federal Rules of Civil Procedure.

[8] If the class action is governed by CAFA, the court must also assess whether CAFA's notice requirements have been met. See 28 U.S.C. § 1715(d). Here, CAFA notice was provided to appropriate state and federal agencies, and no responses were received. (Dkt. 220, Motion at 18); (See Dkt. 220-2, Azari Decl. at ¶¶ 6-7).

> class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Id.; McKinney-Drobnis v. Oreshack, 16 F.4th 594, 607 (9th Cir. 2021) ("In 2018, Congress amended Rule 23(e)(2) to provide specific factors for a district court to consider in determining whether a settlement is 'fair, reasonable, and adequate.'").

Whether the settlement agreement is negotiated prior to or after class certification, the court must apply a "higher level of scrutiny for evidence of collusion or other conflicts of interest[.]" In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011); see McKinney-Drobnis, 16 F.4th at 608 (same); Briseño v. Henderson, 998 F.3d 1014, 1022 (9th Cir. 2021) ("Under the newly revised Rule 23(e)(2), courts should apply the Bluetooth factors even for post-class certification settlements.") (formatting omitted); id. at 1025 (holding that "courts must apply Bluetooth's heightened scrutiny to post-class certification settlements in assessing whether the division of funds between the class members and their counsel is fair and 'adequate'") (citing Fed. R. Civ. P. 23(e)(2)(C)). Courts should look for signs of collusion, subtle or otherwise, including "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a 'clear sailing' arrangement[;]"[9] and "(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]" Bluetooth, 654 F.3d at 947 (internal quotation marks and citations omitted); Campbell, 951 F.3d at 1125 (same).

/ / /

---

[9] The Ninth Circuit defines a "clear sailing" agreement as one "providing for the payment of attorneys' fees separate and apart from class funds," Bluetooth, 654 F.3d at 947, and also as one where "the defendant agrees not to oppose a petition for a fee award up to a specified maximum value." Id. at 940 n. 6; Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035, 1049 (9th Cir. 2019) (defining a clear sailing agreement as "an arrangement where defendant will not object to a certain fee request by class counsel") (internal quotation marks omitted).

## DISCUSSION

I. FINAL APPROVAL OF CLASS SETTLEMENT.

A. Class Certification.

The Agreement adopts and incorporates the certified class definition in the Court's Order of May 6, 2022.[10] (See Dkt. 217-1, Exh. A, Agreement at § 1.1). The applicable Class Period is from May 3, 2016, through May 6, 2022. (Id. at §§ 1.2, 2.10). Given the court's prior determination, (see Dkt. 146, Court's Order of May 6, 2022, at 35), and that "no . . . significant developments have occurred[,]" (Dkt. 220, Motion at 20), the court need not revisit its prior certification order. See, e.g., Carter v. Anderson Merchandisers, LP, 2010 WL 1946784, *5 (C.D. Cal. 2010) ("The Court's certification of the Rule 23 California class was a final certification, and thus the Court need not revisit the certification of that class, absent any evidence suggesting a change in the Rule 23 factors."); Munoz v. Giumarra Vineyards Corp., 2017 WL 1293240, *5 (E.D. Cal. 2017) ("Because the Court previously determined the Rule 23 requirements were satisfied by these classes, and there has not been any change in circumstances, the Court need not re-evaluate the Rule 23 requirements, and simply affirms its prior orders."); Adoma v. University of Phoenix, Inc., 913 F.Supp.2d 964, 974 (E.D. Cal. 2012) (same).

B. Rule 23(c) Notice Requirements.

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2), which require the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

Here, after undertaking the required examination, the court approved the form of the Class Notices and the notification procedures. (See Dkt. 218, PAO at 11-13). As discussed above, the notice program was implemented by Epiq. (See Dkt. 220-2, Azari Decl. at ¶¶ 8, 12-28, 37-38);

---

[10] Plaintiffs note that, consistent with defendants' label changes over time, additional products beyond those listed in the certified class definition were sold as Cosequin products. (See Dkt. 220, Motion at 5 n. 4). Accordingly, under the settlement, class members may submit claim forms for purchases of any Cosequin product listed in the settlement agreement during the Class Period. (See id.); (Dkt. 217-1, Exh. A, Agreement at § 2.37).

(Dkt. 217-1, Exhs. A-1, A-2, & A-3) (Class Notices). Based on the record and its prior findings, the court finds that the Class Notices, (see Dkt. 217-1, Exhs. A-1, A-2, & A-3), and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, and the class members' right to object to the proposed settlement. See Fed. R. Civ. P. 23(c)(2)(B).

C. Whether the Class Settlement Is Fair, Adequate, and Reasonable.

1. **Adequate Representation and Arm's-Length Negotiations**.

Rule 23(e)(2) requires the court to consider whether "the class representatives and class counsel have adequately represented the class" and whether the settlement "was negotiated at arm's length[.]" Fed. R. Civ. P. 23(e)(2)(A)-(B); see McKinney-Drobnis, 16 F.4th at 607. The court previously addressed the adequacy of counsel and the arm's-length negotiation factors in connection with the motion for preliminary approval. (See Dkt. 218, PAO at 7); (Dkt. 146, Court's Order of May 6, 2022, at 21-22). With respect to the latter factor, the court noted that the mediator "offered a reasonable, unbiased analysis of each Party's arguments, claims, and defenses . . . which in turn assisted the parties in reaching a settlement." (Dkt. 218, PAO at 7) (citation and internal quotation marks omitted). The court also found that "[t]he parties had a sound basis for measuring the terms of the settlement against the risks of continued litigation, and there [was] no evidence that the settlement [was] the product of fraud or overreaching by, or collusion between, the negotiating parties." (Id.). Based on the record before the court, and the court's previous findings, the court finds these factors weigh in favor of granting final approval.

2. **The Relief Provided to the Class is Adequate**.

In evaluating whether the relief provided to the class is adequate, the court considers: (i) "the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv).

/ / /

a. *Costs, Risks, and Delay*.

In granting preliminary approval, the court found that the class recovery was fair and reasonable, "particularly when viewed in light of the risks, costs, and time associated with protracted litigation." (Dkt. 218, PAO at 8). It is significant that class members will receive monetary and injunctive relief "by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Medina v. Evolve Mortg. Servs., LLC, 718 F.Supp.3d 1162, 1173 (C.D. Cal. 2023) (internal quotation marks omitted); see also Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted). In short, the court finds the costs, risks, and delay of trial and appeal support approval of the settlement.

b. *Method of Distribution*.

Rule 23(e) directs the court to consider the "effectiveness of any proposed method of distributing relief to the class[.]" Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, class members who submitted a valid claim form will receive their settlement compensation by physical check, electronic check, or direct deposit. (See Dkt. 217-1, Exh. A, Agreement at § 5.1.4); (Dkt. 220-2, Azari Decl. at ¶ 33). Beyond the completed claim form, no additional documentation is required. (See id. at § 5.1.2); (Dkt. 217-1, Exh. A-4, Claim Form). Under the circumstances, the court is persuaded that the method of distribution is fair and is intended "to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 Newberg and Rubenstein on Class Actions § 13:53 at 557 (6th ed. 2022) ("Newberg"). Thus, this factor weighs in favor of final approval.

c. *Attorney's Fees*.

Rule 23(e) requires the court to consider "the terms of any proposed award of attorney's fees, including timing of payment" in determining whether the settlement is fair, adequate, and reasonable. See Fed. R. Civ. P. 23(e)(2)(C)(iii). This factor "impos[es] an obligation on district courts to examine whether the attorneys' fees arrangement shortchanges the class." McKinney-

Drobnis, 16 F.4th at 607 (internal quotation marks omitted). Courts "must balance the proposed award of attorney's fees vis-à-vis the relief provided for the class[.]" Id. (internal quotation marks omitted). This requires a court to assess the proposed attorney's fees award under the Bluetooth factors. See, e.g., id. at 608 ("If we conclude that the district court did not adequately consider the Bluetooth factors, and therefore did not adequately consider signs that the parties had negotiated an unreasonable amount of attorneys' fees in assessing settlement fairness in the first instance, then we must vacate and remand the Approval Order [in addition to the attorneys' fee award], so that the court may appropriately factor this into its Rule 23(e) analysis.") (internal quotation marks omitted) (alteration in original).

Here, application of the Bluetooth factors to the proposed attorney's fees award does not undermine the fairness of the settlement. First, the settlement provides for up to 33.33% of the gross settlement amount in attorney's fees, (see Dkt. 217-1, Exh. A, Agreement at § 10.1), which, although it is above the 25% benchmark used in the Ninth Circuit, is still within the one-third range commonly awarded. See Hernandez v. Burrtec Waste & Recycling Servs., LLC, 2023 WL 5725581, *6 (C.D. Cal. 2023) ("California courts routinely award attorneys' fees of one-third of the common fund.") (internal quotation marks omitted). Thus, counsel would not be receiving a disproportionate share of the settlement since class members will be receiving a meaningful monetary payment. Second, the settlement does not include an explicit clear sailing provision, (see, generally, Dkt. 217-1, Exh. A, Agreement at § 10.1) (indicating Nutramax "retains the right to object or otherwise oppose" class counsel's fee motion), and any fees not awarded will not revert to defendants; instead, the fees will be added to the net settlement fund, from which payments to class members will be made. (See, e.g., id. at §§ 4.1 & 5.3).

d. *Additional Agreements*.

This factor considers "any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C)(iv). No such agreements are at issue in this case. (See Dkt. 230-1, Declaration of Class Counsel in Support of Final Approval at ¶¶ 3-5).

/ / /

**3. Equitable Treatment of Class Members.**

Rule 23(e)(2) requires the court to consider whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit." 4 Newberg § 13:48, at 518.

In granting preliminary approval, the court noted the allocation plan, and did not find any issues of concern. (See Dkt. 218, PAO at 10-11). Here, the settlement treats class members equitably relative to each other in that class members who submit a claim form will be entitled to payment on a claims-made basis. (See Dkt. 217-1, Exh. A, Agreement at §§ 5.1 & 5.1.2). Thus, this factor also weighs in favor of final approval.

**4. The Reaction of Class Members to the Proposed Settlement.**

The reaction of the class members to the proposed settlement has been very positive. There were no objections and no requests for exclusion. (See Dkt. 220, Motion at 17); (Dkt. 220-2, Azari Decl. at ¶ 32); (see, generally, Dkt.). The lack of objections or requests for exclusion further support approval of the settlement. See, e.g., Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16 (E.D. Cal. 2012) (settlement approved when less than two percent of the class members opted out and no objections were received); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *4 (S.D. Cal. 2009) (finding this factor weighed in favor of approval of settlement when there were only 56 opt-outs out of 2,385 class members and there were no objections).

In short, the court finds that the settlement is fair, reasonable, and adequate, and not the product of collusion.

II. ATTORNEY'S FEES, COSTS, AND SERVICE AWARD.

A. Attorney's Fees.

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Attorney's fees in class actions are determined "using either the lodestar method or the percentage-of-recovery method." In re Hyundai, 926 F.3d at 570; Bluetooth, 654

F.3d at 942 (noting that where a "[class action] settlement produces a common fund[,] . . . courts have discretion to employ either the lodestar method or the percentage-of-recovery method"). The court's discretion in choosing between these two methods "must be exercised so as to achieve a reasonable result." Bluetooth, 654 F.3d at 942. The lodestar method is typically utilized when the relief obtained is "not easily monetized," such as when injunctive relief is part of the settlement. See id. at 941. The percentage-of-recovery method is typically used when a common fund is created. See id. at 942. "Whichever method is chosen, courts often employ the other method as a cross-check that the award is reasonable." In re Apple Inc. Device Performance Litig., 50 F.4th 769, 784 (9th Cir. 2022).

The court will utilize the percentage-of-the-fund method, as it is the most likely to achieve a reasonable result. See Bluetooth, 654 F.3d at 942 ("Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result."). Under the "percentage-of-the-fund" or "percentage-of-recovery" method, the "court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee, using 25% as a benchmark."[11] In re Hyundai, 926 F.3d at 570 (internal quotation marks omitted). The 25% benchmark "can be adjusted upward or downward, depending on the circumstances." Id.; Bluetooth, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990) ("The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage

---

[11] Under the lodestar method, the court multiplies the number of reasonable hours expended by a reasonable hourly rate. See In re Hyundai, 926 F.3d at 570. Once the lodestar has been calculated, the court may "adjust the resulting figure upward or downward to account for various factors, including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment[.]" Id. (internal citation omitted). However, "adjustments to the lodestar [calculation] are the exception rather than the rule." Stanger v. China Elec. Motor, Inc., 812 F.3d 734, 738 (9th Cir. 2016) (internal quotation marks omitted).

recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors.").

Here, class counsel seek attorney's fees exceeding the 25% benchmark. (See Dkt. 219, Fee Motion at 7); Bluetooth, 654 F.3d at 942 (noting benchmark is a reasonable fee award); In re Hyundai, 926 F.3d at 570-71 (recognizing 25% benchmark and noting that the percentage method is "a rough approximation of a reasonable fee"). In determining whether to depart from the 25% benchmark, courts consider "all of the circumstances of the case[,]" including: (1) the results achieved for the class; (2) the risk of litigation; (3) the skill required and quality of the work; (4) the contingent nature of the fee; and (5) awards in similar cases. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002); Viceral v. Mistras Grp., Inc., 2017 WL 661352, *3 (N.D. Cal. 2017) (utilizing similar factors); see also In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 955 (9th Cir. 2015) (explaining that "there are no doubt many factors that a court could apply in assessing an attorneys' fees award" and that "Vizcaino does not purport to establish an exhaustive list").

Under the circumstances of this case, the court is persuaded that a departure from the 25% benchmark is warranted. First, the settlement amount, constituting 67.2% of the estimated calculated damages is significant. (See Dkt. 220, Motion at 16). Second, counsel has litigated this case for nearly seven years on a contingency basis. (See Dkt. 219, Fee Motion at 9). Class counsel has also litigated this case with a high degree of skill and quality. (See id. at 5-6, 9-11). Therefore, the court finds that the requested $3,409,054.03 in attorney's fees, (see id. at 4-5), which equates to 29.64% of the fund, and amounts to a negative lodestar multiplier, (see id. at 16), constitutes a reasonable fee. See Hernandez, 2023 WL 5725581, at *6 ("California courts routinely award attorneys' fees of one-third of the common fund.") (internal quotation marks omitted); see, e.g., Elkies v. Johnson & Johnson Servs., Inc., 2020 WL 10055593, *8 (C.D. Cal. 2020) (finding a 33% attorney's fee award reasonable in a false advertising case).

/ / /

/ / /

B. Costs.

Class counsel seek $385,945.97 in costs. (See Dkt. 219, Fee Motion at 4-5). The court finds that the costs incurred by class counsel over the course of this litigation are reasonable, and therefore awards costs in the amount of $385,945.97.

C. Class Representatives Service Awards.

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003); see also Wren v. RGIS Inventory Specialists, 2011 WL 1230826, *31 (N.D. Cal. 2011) ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards."). In its order granting preliminary approval of the settlement, the court undertook an examination of the fairness and adequacy of the service award at issue, applying the careful scrutiny required in this Circuit. (See Dkt. 218, PAO at 10-11); Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013) (instructing "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives"). Based on its review of the record, the court previously determined that a service award of $7,500 to plaintiff was reasonable. (See Dkt. 218, PAO at 10-11). The court sees no reason to depart from its previous determination.

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiffs' Motion for Final Approval of Class Settlement **(Document No. 220)** is **granted** upon the terms and conditions set forth in this Order.

2. Plaintiffs' Motion for Attorneys' Fees, Costs, and Class Representative Service Awards **(Document No. 219)** is **granted** as set forth in this Order.

3. The court hereby **grants final approval** of the parties' Settlement Agreement (Document No. Dkt. 217-1, Exh. A). The court finds that the settlement is fair, adequate and reasonable, appears to be the product of arm's-length and informed negotiations, and treats all members of the class fairly. The parties are ordered to perform their obligations pursuant to the terms of the Settlement Agreement and this Order.

4. The form, manner, and content of the Class Notices meet the requirements of Federal Rule of Civil Procedure 23(c)(2).

5. Plaintiffs Justin Lytle and Christine Musthaler shall each be paid a service award of $7,500.00 in accordance with the terms of the Settlement Agreement and this Order.

6. Class counsel shall be paid $3,409,054.03 in attorney's fees, and $385,945.97 in costs in accordance with the terms of the Settlement Agreement and this Order.

7. Epiq shall be paid its fees and expenses in accordance with the terms of the Settlement Agreement and this Order.

8. All class members who did not validly and timely request exclusion have released their claims against the released parties (as defined in the Settlement Agreement) as set forth in the PAO, this Order, and the Settlement Agreement.

9. Except as to any class members who have validly and timely requested exclusion, this action is dismissed with prejudice, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of the court.

10. Without affecting the finality of this Order, the court hereby retains jurisdiction over the parties, including the class members, for the purpose of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

11. Judgment shall be entered accordingly.

Dated this 2nd day of November, 2026.

/s/
Fernando M. Olguin
United States District Judge